Michael Critchley, Esq.
Amy Luria, Esq.
Armando B. Suárez, Esq.
CRITCHLEY, KINUM & LURIA, LLC
75 Livingston Avenue, Suite 303
Roseland, NJ  07068
(973) 422-9200 (tel)
(973) 422-9700 (fax)

*Attorneys for Defendant Carmine Mattia*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.  21-cr-576 (KM) |
| v. | Oral Argument Requested |
| CARMINE MATTIA | |

## DEFENDANT CARMINE MATTIA'S
## BRIEF IN SUPPORT OF HIS OMNIBUS MOTION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................6

    I.   Rule 17(c) Subpoenas Are Necessary And Appropriate...............................7

    II.  A Bill Of Particulars Is Necessary.................................................................8

    III. Striking Of Surplusage .................................................................................10

    IV. Rule 16, *Brady*, *Giglio*, 404(b), Agent Rough Notes ...................................11

    V.  Expert Witnesses ..........................................................................................12

    VI. Suppression of Materials Obtained Pursuant To An 18 U.S.C. § 2703(d) Order ..............................................................................................................13

    VII. Abuse Of The Grand Jury...........................................................................13

ARGUMENT ..........................................................................................................15

    I.   Rule 17(c) Subpoenas Are Necessary And Appropriate.............................15

        A.    Individual-1's Medical Records.............................................................15

        B.    Individual-1's Mental Health Records...................................................19

    II.  A Bill Of Particulars Is Necessary..............................................................20

        A.    The Prescriptions And The Alleged False And Fraudulent Insurance Claims...................................................................................................24

        B.    Definition of "Medically Unnecessary" And The Source Of The Definition...............................................................................................26

        C.    Cash and Check Payments ...................................................................28

        D.    The "Others" With Whom Mr. Mattia Allegedly Conspired..............30

    III. The Striking of Surplusage Is Necessary.....................................................33

        A.    The Term "Others" Should Be Stricken From The Superseding Indictment As Prejudicial Surplusage If The Government Is Unable To Identify The "Others" With Whom Mr. Mattia Allegedly Conspired................................................................................................33

        B.    The Reference To "Cash and Check Payments"..................................34

        C.    Additional Surplusage .........................................................................35

    IV. *Brady*, Rule 16, *Giglio*, Rule 404(b) And Agent Rough Notes ...................36

V.   Expert Witnesses ...................................................................................42

VI.  Suppression Of Materials Obtained Pursuant To The Overbroad
     18 U.S.C. § 2703(d) Order ..................................................................44

VII. Abuse Of The Grand Jury Mandates Suppression ........................................46

CONCLUSION ...........................................................................................49

## TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) .................................................36

*Daubert v. Merrell Dow Pharmaceutic*als, Inc., 509 U.S. 579 (1993)..................43

*Giglio v. United States*, 405 U.S. 150 (1972) .................................................36

*In re Grand Jury Proceedings,* 632 F.2d 1033 (3d Cir. 1980)..............................47

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) .................................................43

*King v. United States*, 402 F.2d 289 (10th Cir. 1968) ......................................23

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)........................................43

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001)........................................ 38, 39

*U.S. v. Higgs*, 713 F.2d 39 (3d Cir. 1983) .................................................37

*U.S. v. Starusko*, 729 F.2d 256 (3d Cir. 1984)..............................................37

*United States v. Abbound,* 438 F.3d 554 (6th Cir. 2006)....................................46

*United States v. Abrams,* 615 F.2d 541 (1st Cir. 1981)......................................45

*United States v. Addonizio,* 451 F.2d 49 (3d Cir 1971)......................................22

*United States v. Agurs,* 427 U.S. 97 (1976)........................................... 36, 37

*United States v. Allocco,* 801 F. Supp. 1000 (E.D.N.Y. 1992)..............................32

*United States v. Alsugair,* 256 F. Supp. 2d 306 (D.N.J. 2003)..............................33

*United States v. Ammar,* 714 F.2d 238 (3d Cir.1983) .......................................41

*United States v. Bagley,* 473 U.S. 667 (1985) ........................................ 36, 37

*United States v. Barrentine,* 591 F.2d 1069 (5th Cir. 1979).................................32

*United States v. Bortnovsky,* 820 F.2d 572 (2d Cir. 1987) ..................................28

*United States v. Carboni,* 204 F.3d 39 (2d Cir. 2000)......................................40

*United States v. Coburn,* 439 F. Supp. 3d 361 (D.N.J. 2020) ..............................29

*United States v. Cooks,* 489 F.3d 173 (5th Cir. 2009)......................................43

*United States v. Eufrasio,* 935 F.2d 553 (3d Cir. 1991) .....................................22

*United States v. Feola,* 651 F. Supp. 1068 (S.D.N.Y. 1987)................................32

*United States v. Gallo,* 653 F. Supp. 320 (E.D.N.Y. 1986)................................37

*United States v. Gatto,* 746 F. Supp. 432 (D.N.J. 1990)................................ 31, 37

*United States v. Gil,* 297 F.3d 93 (2d Cir. 2002)...........................................37

*United States v. Harra,* 985 F.3d 196 (3d Cir. 2021)........................................17

*United States v. Hedgepath,* 434 F.2d 609 (3d Cir. 2006)...................................33

*United States v. Higgs,* 713 F.2d 39 (3d Cir. 1983)..........................................37

*United States v. Holman,* 490 F. Supp. 755 (E.D. Pa. 1980)................................31

*United States v. Jacobson,* 4 F. Supp. 3d (E.D.N.Y. 2014)..................................46

*United States v. Jeter,* 2015 WL 114118 (D.M.D. Jan. 7, 2015) ............................48

4

*United States v. Kow,* 58 F.3d 423 (9th Cir. 1995).................................................45

*United States v. Mariani*, 90 F. Supp. 2d 574 (M.D. Pa. 2000) ...........................31

*United States v. McCarthy*, 292 F.Supp. 937 (S.D.N.Y. 1968)..............................29

*United States v. McGuinness*, 764 F.Supp. 888 (S.D.N.Y. 1991)..........................29

*United States v. McLaughlin,* 910 F. Supp. 1054 (E.D. Pa. 1995)..........................48

*United States v. Montoya*, 716 F.2d 1340 (10th Cir. 1983)....................................36

*United States v. Nachamie*, 91 F. Supp. 2d 552 (S.D.N.Y. 2000)..........................25

*United States v. Nixon*, 418 U.S. 683 (1974)................................................. 16, 17

*United States v. Ramos*, 27 F.3d 65 (3d Cir. 1994) ..............................................41

*United States v. Robinson*, 702 F.3d 22 (2d Cir. 2012)..........................................40

*United States v. Rogers*, 617 F. Supp. 1024 (D. Colo. 1985)................................32

*United States v. Rosa*, 891 F.2d 1063 (3d Cir. 1989) ............................................23

*United States v. Sampson*, 448 F. Supp. 2d 692 (E.D.V.A. 2006) .................... 36, 37

*United States v. Siddiqi*, 2007 WL 549420 (S.D.N.Y. Feb. 21, 2007)....................28

*United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985)............................................23

*United States v. Starusko*, 729 F.2d 256 (3d Cir. 1984) ........................................37

*United States v. Thevis*, 474 F. Supp. 117 (N.D. Ga. 1979)...................................32

*United States v. Triumph Capital Group, Inc.*, 544 F.3d 149 (2d Cir. 2008)..........37

*United States v. (Under Seal),* 714 F.2d 347 (4th Cir. 1983) .................................47

*United States v. Vaid*, 2017 WL 3891695 (S.D.N.Y. Sept. 5, 2017)......................25

*United States v. Vastola*, 670 F. Supp. 1244 (D.N.J. 1987) ...................................31

*United States v. Vella*, 562 F.2d 275 (3d Cir. 1977)...............................................41

## Statutes

18 U.S.C. § 1347...................................................................................................15

18 U.S.C. § 1349...................................................................................................15

18 U.S.C. § 2703(d) ..............................................................................................44

## Rules

Federal Rule of Criminal Procedure 7(d) ..............................................................33

Federal Rule of Criminal Procedure 7(f)...............................................................22

Federal Rule of Criminal Procedure 17(c)....................................................... 16, 22

Federal Rule of Evidence 404(b) ..........................................................................40

Federal Rule of Evidence 702................................................................................42

Rule 16 .................................................................................................................36

Rule 17(c)............................................................................................................7, 8

## PRELIMINARY STATEMENT

Carmine Mattia was a Verizon union representative and former Verizon employee with absolutely no medical training. (Sup. Ind. Pg. 1 ¶ 1a). Count 1 charges him with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, for conspiring to cause the submission of "false and fraudulent insurance claims" to a prescription benefits manager ("PBM") for compounded prescription medications for only one person -- Individual-1. (Sup. Ind. Pg. 3 ¶ 3). The conspiracy count charges that the insurance claims for Individual-1 were "false and fraudulent" because the compounded medications for Individual-1 were "medically unnecessary." (Sup. Ind. Pg. 4 ¶ 4d).

Counts 2 – 4 allege that Mr. Mattia violated 18 U.S.C. § 1347 based on the same premise involving three specific prescriptions for compounded medications prescribed to Individual-1. (Sup. Ind. Pg. 7). Thus, to be clear, according to the express language of the Superseding Indictment, the conspiracy and substantive health care fraud counts pertain to compounded medications prescribed to and obtained by only one person -- **Individual-1**. Hence, this is a health care fraud case that centers around one person -- **Individual-1**.

In addition, according to the express language of the Superseding Indictment, the witness tampering charge (Count 5) and the obstruction charge (Count 6) pertain

to one instance, "on or about July 17, 2019," when Mr. Mattia allegedly tried to influence **Individual-1's** statements to law enforcement. (Sup. Ind. Pgs. 8 & 9).

Despite the very limited scope of this case, the Government has failed to produce certain critical discovery. (*See* Luria Cert. Exs. 2, 3, 6, 7). For example, the Government has failed to produce any insurance claims; has failed to produce any medical records for Individual-1; and has failed to produce any prescriptions for Individual-1 beyond the three prescriptions referenced in Counts 2 – 4. (*See* Luria Cert. Exs. 2, 3, 6, 7). The sparse discovery produced has led to countless issues that must be addressed through pre-trial motions, in addition to numerous other issues that also must be addressed through pre-trial motions.

## I.    Rule 17(c) Subpoenas Are Necessary And Appropriate

The Court should grant Mr. Mattia's request for several Rule 17(c) subpoenas to Individual-1, his medical providers and his employer, ███████, for his medical records, including his mental health records.

The crux of the Government's health care fraud conspiracy and substantive health care fraud charges (Counts 1 – 4) is the Government's assertion that certain prescriptions for Individual-1 were "medically unnecessary." Yet, the Government has failed to provide a single medical record for Individual-1 and **states that it has none**. (*See* Luria Cert. Ex. 7). Absent any medical records for Individual-1, it is

7

impossible for Mr. Mattia to challenge the Government's assertion that the compounded medications prescribed to Individual-1 were "medically unnecessary."

In addition, in order to properly test Individual-1's memory of certain events, given the extensive amount of medical leave taken by Indivdiual-1 in the past decade (*see* Luria Cert. Ex. 1), some of which we understand relates to mental health issues, Mr. Mattia must be given access to Individual-1's mental health records, including medications he has been prescribed and has taken.

Thus, Mr. Mattia respectfully requests that the Court grant Mr. Mattia's request to serve Rule 17(c) subpoenas on Individual-1, his medical providers (which Individual-1 must identify) and his employer (████) for his medical and mental health records, so that Mr. Mattia, and any necessary experts retained on his behalf, have an opportunity to review, analyze and utilize such records sufficiently in advance of trial.

## II.    A Bill Of Particulars Is Necessary

A bill of particulars is also necessary. Unfortunately, the sparse discovery produced by the Government, and the language of the Superseding Indictment, do not provide certain critical information. Thus, we are requesting a bill of particulars for the following:

(1) identification of all of the prescriptions for Individual-1 that the Government contends were for medications that were "medically unnecessary," and why the medications were "medically unnecessary";

(2) identification of all of the "insurance claims" that the Government contends are "false and fraudulent;"

(3) given that no insurance claims were produced, what specifically in the insurance claims does the Government contend is "false and fraudulent;"

(4) what is the definition of "medically unnecessary" utilized by the Superseding Indictment, and what is the source of that definition;

(5) what "cash" "payments" (dates and amounts) were allegedly provided by Mr. Mattia to Individual-1, as referenced in the Superseding Indictment (Sup. Ind. Pg. 5 ¶ 4(g));

(6) other than the one check produced, what additional "check payments" does the Government content Mr. Mattia provided to Individual-1, as referenced in the Superseding Indictment (Sup. Ind. Pg.5 ¶ 4(g)); and

(7) who are the "others" with whom the Superseding Indictment alleges Mr. Mattia conspired. (Sup. Ind. Pg. 3 ¶ 2).

## III.    Striking of Surplusage

If the Government cannot or refuses to identify the "others" with whom Mr. Mattia allegedly conspired, that language should be stricken from the Superseding

Indictment.    In addition, if the Government cannot identify any alleged cash payments to Individual-1, that language must be stricken from the Indictment. Moreover, if the Government cannot identify more than one alleged check payment to Individual-1, reference to multiple "check payments" must also be stricken from the Superseding Indictment.

Furthermore, certain additional surplusage must also be stricken from the Superseding Indictment.    Specifically, the Superseding Indictment references "individuals," **beyond Individual-1**, who Mr. Mattia allegedly "recruited" to obtain "compounded medications."  (Sup. Ind. Pg. 4 ¶ 4(b)).  And, the Indictment alleges that Mr. Mattia was "paid" "a percentage for compounded medication that [he] caused to be billed to a paying health plan" for these **additional** "individuals." (Sup. Ind. Pg. 4 ¶ 4(c)).  Whether Mr. Mattia "recruited" "individuals," beyond Individual-1, to receive compounded medications, and got paid for doing so, is mere surplusage because the conspiracy (as explicitly set forth in the Indictment), and all of the substantive health care fraud counts (as explicitly set forth in the Indictment), are **limited to the prescriptions for Individual-1**.  Accordingly, Paragraphs 4(b) and 4(c) on Page 4 of the Superseding Indictment must be stricken or limited to Individual-1.

10

## IV.   Rule 16, *Brady*, *Giglio*, 404(b), Agent Rough Notes

Mr. Mattia is very concerned, given the extremely sparse discovery production by the Government of pertinent materials, that all *Brady* and *Rule 16* discovery has not been produced. (*See* Luria Cert. Exs. 2, 3, 6, 7). While Mr. Mattia is not questioning the credibility of the Assistant U.S. Attorneys on the case, it seems implausible that in a health care fraud case, the Government would have failed to acquire any medical records for the patient at issue – Individual-1. Similarly, it seems implausible that, in a health care fraud case involving "false and fraudulent insurance claims," the Government would fail to obtain any of these insurance claims, and would fail to obtain some of the very prescriptions on which these insurance claims are based.

Accordingly, Mr. Mattia asks that the Court order that all *Brady* and Rule 16 materials be produced immediately. Similarly, Mr. Mattia asks that the Court order the production of all *Giglio* material, and the identification of all 404(b), material at least 8 weeks before trial, to ensure that there is no delay in the commencement of the trial.

Furthermore, it appears that the Government is unable to locate many federal agent rough notes that underly many of the FBI's 302s produced to date, which allegedly memorialize Mr. Mattia's statement to law enforcement and witness

11

statements to law enforcement. (*See* Luria Cert. Exs. 8, 9). These misplaced rough notes include those for FBI 302s that contain clear *Brady* information. Accordingly, Mr. Mattia asks that the Court order the production of these rough notes, immediately. If the Government is unable or refuses to do so, Mr. Mattia respectfully requests that he be permitted to file subsequent motions regarding the appropriate remedy.

## V.    Expert Witnesses

The Government has not identified any "expert witnesses." (*See* Luria Cert. Ex. 5). However, it has advised that it intends to elicit testimony from Dr. Robert Agresti -- Mr. Mattia's alleged co-conspirator -- on a number of topics that clearly constitute expert testimony. (*See* Luria Cert. Ex. 5). For example, the Government advised that it intends to have Dr. Agresti testify as to the "nature of compounded medications," based on his "personal knowledge, [medical] **education and experience as a physician.**" (*See* Luria Cert. Ex. 5 (emphasis added)).

Accordingly, we respectfully request that the Court order the Government to produce the appropriate expert report from Dr. Agresti and produce the appropriate curriculum vitae for Dr. Agresti. Then, if necessary, we request that the Court schedule a *Daubert* hearing. Furthermore, the Court should order the Government to identify any other proposed experts it intends to utilize (as the Court-ordered date for doing so has already passed (*see* ECF # 19), produce such expert reports and

12

curriculum vitaes as required, and schedule a *Daubert* hearing for such proposed experts (to the extent necessary).

### VI. Suppression Of Materials Obtained Pursuant To An 18 U.S.C. § 2703(d) Order

While failing to obtain certain critical materials, the Government did utilize 18 U.S.C. § 2703(d) to obtain certain information regarding the e-mail account "██████████████████████." (*See* Luria Cert. Ex. 10). Specifically, it applied for and obtained an order (hereinafter, "the Order"), pursuant to which Yahoo's service provider was required to produce, and did produce to the Government, the "date," "to" and "from" for all e-mails for the account, which spanned a time-period from May 2005 to June 2019 (a fourteen year period) for "██████████████████████." (*See* Luria Cert. Ex. 10). However, the Government failed to provide to the Court, in support of its application for the Order, "specific and articulable facts showing that there are reasonable grounds to believe that the . . . information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the materials acquired pursuant to the Order should be suppressed.

### VII. Abuse Of The Grand Jury

Finally, certain documents should also be suppressed if they were obtained by the Government through abuse of the grand jury. It appears that the Government may have abused the grand jury process by issuing grand jury subpoenas with return

13

dates that **post-dated** the expiration of the statute of limitations on the health care fraud-related counts (Counts 1 – 4) and **post-dated** the return of the original Indictment. (ECF # 1). In addition, it appears that the Government received certain grand jury subpoena returns **after** expiration of the statute of limitations on the health care fraud-related counts (Counts 1 – 4) and **after** the return of the original Indictment. (ECF # 1).

While we know that this occurred with regard to at least one grand jury subpoena (*see* Luria Cert. Ex. 11), the Government has refused to produce other grand jury subpoenas where we believe this may have occurred. (*See* Luria Cert. Exs. 4, 6, 7). Accordingly, the Government should be ordered to: (1) produce all of the subpoenas it issued that had return dates after the expiration of the statute of limitations on the health care fraud-related counts and/or after return of the original Indictment; and (2) identify what grand jury subpoena returns it received after the expiration of the statute of limitations and/or after return of the original Indictment. Moreover, the Court should suppress any items the Government received through abuse of the grand jury process.

## ARGUMENT

Count 1 of the Superseding Indictment asserts that Mr. Mattia conspired with others to submit Individual-1's "false and fraudulent insurance claims," and that the claims were "false and fraudulent" because they were for compounded medications

14

that were "medically unnecessary," in violation of 18 U.S.C. § 1349. (Sup. Ind. Pg. 3 ¶ 3, Pg. 4 ¶ 4(d)). Similarly, Counts 2 – 4, charge substantive health care fraud violations of 18 U.S.C. § 1347, relating to three specific prescriptions for compounded medications prescribed for Individual-1. (Sup. Ind. Pg. 7). Thus, liability on Counts 1 - 4 hinges on: (1) whether these various compounded medications, prescribed by two different physicians to Individual-1, were, in fact, "medically unnecessary"; and (2) whether Carmine Mattia, a lay person with absolutely no medical training, knew that these compounded medications were "medically unnecessary."

## I.    Rule 17(c) Subpoenas Are Necessary And Appropriate

### A. Individual-1's Medical Records

As noted above, Counts 1- 4 turn on whether the medications prescribed to Individual-1 were "medically unnecessary." Yet, not a single medical record has been produced for Individual-1. (*See* Luria Cert. Ex. 2, 6, 7). Even more surprisingly, the Government has asserted that it does not have any medical records for Individual-1. (*See* Luria Cert. Ex. 7).

Common sense dictates that it is impossible for Mr. Mattia to challenge the Government's assertion of a lack of medical necessity absent Individual-1's medical records. Hence, Mr. Mattia, and any medical expert retained by him, must be afforded an opportunity to review Individual-1's medical records. And, since the

15

Government professes not to have any medical records for Individual-1 (*see* Luria Cert. Ex. 7), Mr. Mattia must be able to subpoena them from other sources, sufficiently in advance of trial.

Federal Rule of Criminal Procedure 17(c) provides for the use of subpoenas in criminal matters, by either a defendant or the government, to obtain documentary evidence as follows:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c). The issuance of a Rule 17(c) subpoena is left to the sound discretion of the district court. *See United States v. Nixon*, 418 U.S. 683, 702 (1974). Issuance of a Rule 17(c) subpoena requires a showing that: (1) "the documents are evidentiary and relevant"; (2) the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence"; (3) the defendant "cannot properly prepare for trial without such production and inspection in advance of trial and that the failure" to obtain the documents may "unreasonably delay the trial"; and (4) "the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

16

When a defendant makes an application for a Rule 17(c) subpoena on a third party, the subpoena must be "(1) reasonable, construed using the general discovery notion of 'material to the defense;' and (2) not unduly oppressive for the producing party to respond." *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000).

Here, Individual-1's medical records are necessary, and must be provided sufficiently in advance of trial, so that Mr. Mattia can have a medical expert review the medical records, opine as to whether the medications prescribed could be, in his/her opinion, medically appropriate, and, if necessary, prepare a report and testify at trial. An evaluation in advance of trial is crucial because, if the medications could be medically appropriate in that expert's opinion, that alone may well destroy the Government's case as to Counts 1 - 4, because criminal liability simply cannot rest on a difference of opinion between medical experts regarding the appropriateness of a prescribed medication. *See United States v. Harra*, 985 F.3d 196 (3d Cir. 2021)("The Government must show not merely that a defendant subjectively intended to lie, but also that the statement in question was objectively false.")

Individual-1's medical records may be in his own possession and in the possession of his past and present physicians. In addition, Individual-1's employer, ███████, will likely have information regarding Individual-1's medical conditions and history given the extraordinary amount of medical leave taken by Individual-1

17

over the last decade, as evidenced by the limited discovery produced by the Government regarding Individual-1. (*See* Luria Cert. Ex. 1). For example, in 2015, Individual-1 took 64 days of medical leave; in 2016, Individual-1 took 77 days of medical leave; in 2017, Individual-1 took **115 days of medical leave**; and in 2018, Individual-1 took 91 days of medical leave. (*See* Luria Cert. Ex. 1).

Failure to order the Rule 17(c) subpoenas now will result in unreasonable delay of the trial. If Mr. Mattia does not receive these medical records until the start of the trial, pursuant to a trial subpoena, Mr. Mattia and any expert retained by him with have to review and analyze the records after the commencement of trial, which could take months, unnecessarily and unreasonably delaying the trial. Furthermore, if Individual-1, Individual-1's physicians, or ██████ files a motion to quash trial subpoenas for these medical records, the motion practice will also further unreasonably delay the trial.

Finally, this application is being made in good faith and is not intended as a fishing expedition. Individual-1's medical records are critical to the preparation of Mr. Mattia's defense. While it is surprising that the Government has not obtained any medical records for Individual-1 in a health care fraud case premised on "medically unnecessary" prescriptions for Individual-1, Mr. Mattia's defense cannot be hampered by the Government's failure to obtain critical materials.

18

### B. Individual-1's Mental Health Records

It is important to understand that much of the Government's case turns on the memory of Individual-1, not only with regard to the health care fraud-related counts, but also with regard to the witness tampering and obstruction counts (Counts 5 and 6, respectively). However, the records produced by the Government indicate that Individual-1 has taken an inordinate amount of medical leave from his job over the past decade (*see* Luria Cert. Ex. 1), some of which may well be related to mental health issues. And, if Individual-1 suffers from mental health issues, and if he takes (and/or has taken) medication to treat those conditions, that could well impact his memory. Accordingly, Mr. Mattia must have access to such information sufficiently in advance of trial, so that Mr. Mattia can retain an expert to review these records and opine as to whether Individual-1's memory could be impaired due to a mental illness or medication, and then, if necessary and appropriate, prepare a report and testify at trial. Furthermore, upon receipt of these materials, it may become apparent that a psychiatric evaluation of Individual-1 may well be necessary. Much like with regard to Individual-1's medical records, Mr. Mattia cannot wait to receive these materials until the commencement of trial.

Accordingly, Mr. Mattia respectfully requests that the Court: (1) order Individual-1 to identify all of the medical and mental health professionals/providers who have treated Individual-1 from 2010-present; and (2) permit Mr. Mattia to issue

19

Rule 17(c) subpoenas to Individual-1, these medical and mental health professionals/providers, and ▓▓▓▓▓ for records from 2010-2022 for Individual-1's medical and mental health records. Furthermore, Mr. Mattia requests that the return date on these subpoenas be for a date in August 2022, so that any expert retained by Mr. Mattia has sufficient time to review, analyze and opine regarding same.

## II.    A Bill Of Particulars Is Necessary

A bill of particulars is also necessary and appropriate. While the Government has produced thousands of pages of discovery, only a very small fraction of the discovery produced pertains to anything even remotely relevant to the charges in this case. In fact, the sparse Superseding Indictment and discovery produced do not provide certain critical documents. For example, the Government has not produced any insurance claims, making it impossible for Mr. Mattia to discern what misstatements or omissions may exist on these claims that could form the basis for health care fraud liability. In addition, as noted above, the Government has not produced any medical records for Individual-1. And, the Government has failed to produce any prescriptions for compounded medication for Individual-1 beyond the three prescriptions referenced in Counts 2 – 4, making it impossible for Mr. Mattia to even discern what ingredients were prescribed to Mr. Mattia in any of the other prescriptions he received for compounded medications.

20

Thus, a bill of particulars is desperately needed in this case to identify: (1) all of the insurance claims the Government will allege are false or fraudulent, and what statement(s) or omission(s) within each claim is false or fraudulent; (2) all of the prescriptions for Individual-1 the Government will allege were for medications that were "medically unnecessary," and why they were "medically unnecessary;" (3) the definition of the term "medically unnecessary," and the source of that definition; (4) the "cash" payments Mr. Mattia allegedly made to Individual-1; (5) the "check payments" Mr. Mattia allegedly made to Individual-1; and (6) the "others" with whom Mr. Mattia allegedly conspired.

The discovery and Superseding Indictment simply do not adequately inform Mr. Mattia of basic facts relating to the charges against him in sufficient detail to enable him to effectively prepare his defense and avoid surprise at trial. (*See* Luria Cert. Exs. 3, 6). Thus, Mr. Mattia's motion for a bill of particulars is not a device to force the Government to provide wholesale discovery or to disclose the details of its evidence prior to trial. Rather, the purpose of this request is to obtain only that information which is essential for Mr. Mattia to conduct his own investigation to adequately prepare to defend against the charges at trial and avoid surprise at trial.

The Federal Rules of Criminal Procedure provide that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). If the indictment does not sufficiently

21

apprise defendants of the essential facts of the crimes of which they have been accused, the Court may direct the Government to provide a bill of particulars. Fed. R. Crim. P. 7(f). The purpose of a bill of particulars "'is to inform the defendant of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.'" *United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir. 1971), *cert. denied*, 405 U.S. 936 (1972) (quoting *United States v. Tucker*, 262 F. Supp. 305 (S.D.N.Y. 1966)).

The Third Circuit has noted that the 1966 amendment to Rule 7(f) was "'designed to encourage a more liberal attitude by the courts towards bills of particulars'" without taking away the discretion of the courts, which has contributed to "a desirable decline in the 'sporting theory' of criminal justice." *Id.* at 64 (quoting Notes of Advisory Committee on Rules, 18 U.S.C. Rule 7(f)). The granting of a bill of particulars is within the discretion of the trial judge. *United States v. Eufrasio*, 935 F.2d 553, 575 (3d Cir. 1991), *cert. denied*, 502 U.S. 925 (1991). However, a motion for a bill of particulars "should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).

A trial court should review a motion for a bill of particulars "with an awareness that an indictment may be sufficient on its face to state an offense, yet insufficient to adequately inform the accused of the charge against him to enable him to properly prepare his defense and, at least, to avoid prejudicial surprise." *King v. United States*, 402 F.2d 289, 292 (10th Cir. 1968) (citing *Will v. United States*, 389 U.S. 90 (1967)). In considering a motion for a bill of particulars, a trial judge must strike a:

> prudent balance between the defendants' legitimate interest in securing information concerning the government's case and numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit to a specific version of the facts before it is in a position to do so. *Rosa*, 891 F.2d at 1066.

A bill of particulars is intended to provide a defendant with the "amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (emphasis in original).

As discussed in detail below, the Superseding Indictment fails to provide Mr. Mattia with the most basic information needed to conduct an adequate pre-trial investigation. Moreover, the Government's dump of thousands of pages of irrelevant material is virtually useless. As such, the Government should be ordered to provide the particulars referenced below immediately.

### A. *The Prescriptions And The Alleged False And Fraudulent Insurance Claims*

Beyond the three prescriptions for Individual-1 specifically referenced in Counts 2, 3 and 4 of the Superseding Indictment, the Government has **not produced any other prescriptions** for compounded medications prescribed to Indivdiual-1, despite that it appears that additional prescriptions for compounded medications were prescribed, by another physician, for Individual-1, during the relevant time-period set forth in the Superseding Indictment. (Sup. Ind. Pg. 5 ¶ 4(g); Luria Cert. Ex. 7). A bill of particulars detailing which prescriptions for compounded medications for Individual-1 the Government will allege were "medically unnecessary," as well as why the medications were medically unnecessary (given that in some instances we do not even know what ingredients were prescribed) is appropriate. Without such information, Mr. Mattia will be unable to prepare for his defense.

**Even more problematic** is that the Government has **failed to produce a single insurance claim**, despite that the fraud counts rest on the premise that "false and fraudulent insurance claims" were submitted. Similarly, the Government has **failed to identify any specific insurance claims** that it will seek to demonstrate were false. And, the Government has **failed to identify what statements or omissions within the claims are false and fraudulent**. A refusal to produce the allegedly fraudulent insurance claims, nor identify the fraudulent insurance claims

24

it will seek to present at trial, nor identify what statements or omissions within the insurance claims are false and fraudulent, is in stark contrast to court orders in other health care fraud cases involving the submission of fraudulent claims to health benefit programs.

For example, in *United States v. Nachamie*, 91 F. Supp. 2d 565, 574 (S.D.N.Y. 2000), the Southern District of New York held, in a Medicare fraud prosecution, that the Government had to identify in a bill of particulars each-and-every one of the "false and misleading" claims.

Similarly, the decision in *United States v. Vaid*, 2017 WL 3891695 (S.D.N.Y. Sept. 5 2017) is instructive.  In *Vaid*, the Honorable Loran G. Schofield, Federal District Judge for the Southern District of New York, granted the defendants' request for a bill of particulars explaining that "[i]n cases involving fraud, courts have required the Government to specify through a bill of particulars which document or transactions it intends to prove are fraudulent if this information is not ascertainable; otherwise, in effect, the burden of proof impermissibly may shift to the defendant to prove the documents or transactions are not fraudulent."  *Id.* at *21 (internal quotation marks omitted).

Also useful is the holding in *United States v. Sampson*, 448 F. Supp.2d 692 (E.D.V.A. 2006), wherein the Eastern District of Virginia held that "[i]n the case of fraud or perjury, it is critical that the government identify in the indictment the dates

25

of the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the documents." *Id.* at 696 (citing *States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).

Here, Mr. Mattia is simply asking for the Government to identify: **(1) which "insurance claims" it is going to assert are "false and fraudulent"; and (2) what specific statements or omissions it is going to assert are "false and fraudulent" within those claims.** (*See* Luria Cert. Ex. 3, 6). Such information is necessary for Mr. Mattia to properly prepare his defense, especially given that the Government has not produced any insurance claims, has produced only three prescriptions for Individual-1, and has not produced any health records for Individual-1.

### B. Definition Of "Medically Unnecessary" And The Source Of The Definition

This is a curious case because the Superseding Indictment asserts that the medications prescribed to Individual-1 were "medically unnecessary," yet, as discussed extensively in Mr. Mattia's papers in support of his motion to dismiss, found at ECF # 22 (which Mr. Mattia relies upon and incorporates herein), nowhere is that term defined in any statute, rule, or regulation as it relates to the crimes of federal health care fraud or conspiracy to commit health care fraud. Furthermore, it appears that nowhere, in the discovery provided by the Government, is that term ever defined. And, as discussed extensively in the motion to dismiss papers, the term is a vague term utilized internally by insurance companies, each of which has

26

its own definitions and applications that oftentimes are not publicly known. *See Department of Health and Human Services, Medical Necessity in Private Health Plans,* available at https://publichealth.gwu.edu/departments/healthpolicy/DHP_Publications/pub_upl oads/dhpPublication_3A45C497-5056-9D20-3DAA24F165B5678A.pdf (2003)(last visited May 10, 2022); National Academy for State Health Policy, *State Definitions of Medical Necessity under the Medicaid EPSDT Benefit*, available at https://www.nashp.org/medical-necessity/ (published April 23, 2021)(last visited May 10, 2022).

Mr. Mattia simply cannot prepare his defense if he does not know the meaning of the term "medically unnecessary" being utilized in the charges against him, and does not know why the Government contends the medications prescribed to Individual-1 are "medically unnecessary." Without such information, Mr. Mattia will not be able to "identify with sufficient particularity the nature of the charge pending against him." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). Moreover, how could an expert retained by Mr. Mattia opine as to whether the medications prescribed to Individual-1 were "medically unnecessary" without knowing the definition of "medically unnecessary," and without knowing why the Government contends the medications prescribed are "medically unnecessary"?

27

Mr. Mattia is entitled to know what definition the Government is utilizing for the term "medically unnecessary," as well as the source of that definition. He cannot be left in the dark as to the charges against him.

### C. Cash And Check Payments

The Superseding Indictment states explicitly that Mr. Mattia "gave Individual-1 cash and check payments to induce Individual-1 to obtain medically unnecessary medications that were filled by [the] . . . Pharmacies, including, but not limited to, prescriptions that were filled on or about April 4, 2016, April 29, 2016, June 28, 2016 and July 25, 2016." (Sup. Ind. Pg. 5 ¶ 4(g)).[1]

Yet, the Government refuses to identify the dates and amounts of any of the alleged "cash" payments Mr. Mattia allegedly made to Individual-1, despite that courts routinely "have required the Government to prepare a bill of particulars specifying the date and amount of [allegedly] unlawful payments." *United States v. Siddiqi*, 2007 WL 549420 (Feb. 21, 2007 S.D.N.Y.) (citing *United States v. Lino*, 00 CR. 632(WHP), 2001 WL 8356, at *4 (S.D.N.Y. Dec. 29, 2000) (requiring Government to provide bill of particulars specifying "whom [the defendant] agreed to bribe, the pension fund with which the bribe recipient was affiliated, and the amount of the bribe"); *United States v. McGuinness*, 764 F.Supp. 888, 892-93, 894

---

[1] The Government has not produced any of the insurance claims for any of these prescriptions, nor has it produced the prescriptions for the medications allegedly filled on April 4, 2016 and April 29, 2016.

(S.D.N.Y.1991) (holding that Government must provide defendant bill of particulars listing approximate date and amount of payments allegedly made in violation of Taft-Hartley Act, and identity of maker of such payments); *United States v. McCarthy,* 292 F.Supp. 937, 941 (S.D.N.Y.1968) (directing Government to comply with its promise to disclose "the dates, times and places" of the charged bribery payments, and ordering Government to provide "the names of those who paid money to defendants")).

In fact, just recently, in *United States v. Coburn*, 439 F. Supp. 3d 361 (D.N.J. 2020), the Honorable Kevin McNulty, United States District Court Judge, "directed the government attorneys to point the defense to records sufficient to identify the relevant payments" in a case that "ar[ose] from allegations that the defendants engaged in a scheme to bribe officials of a foreign government."

Here, because there is nothing in the record regarding dates or amounts of cash payments (*see* Luria Cert. Ex. 2, 3, 6), we respectfully request that the Government simply identify the **dates and amounts** of any cash payments referenced in the Superseding Indictment about which it will seek to introduce evidence at trial.

Mr. Mattia also respectfully requests that the Court order the Government to identify all "check payments" referenced in the Superseding Indictment, (Sup. Ind. Pg. 5 ¶ 4(g)), about which it will seek to introduce evidence at trial. To date, the

29

Government has identified and produced only one check from Mr. Mattia to Individual-1. (*See* Luria Cert. Ex. 2, 3, 6). To the extent that the Government is relying on checks beyond that one, we respectfully request, for the reasons discussed above, that the Court order the Government to identify such checks.

### D. The "Others" With Whom Mr. Mattia Allegedly Conspired

The Superseding Indictment states that Mr. Mattia conspired with "others" to have false and fraudulent claims for Individual-1 submitted. (Sup. Ind. Pg. 2 ¶ 2). The Superseding Indictment references only two people beyond Mr. Mattia – Dr. Agresti and Individual-1. The Superseding Indictment states that Dr. Agresti was a "co-conspirator." (Sup. Ind. Pg. 1 ¶ 1(c)). However, it appears that the Government does not view Individual-1 as a co-conspirator. (Sup. Ind. Pg. 1 ¶ 1(b)). Thus, the Superseding Indictment does not clarify who the "others" were beyond Dr. Agresti with whom Mr. Mattia allegedly conspired. Thus, for Mr. Mattia to properly prepare his defense and to avoid surprise at trial, Mr. Mattia respectfully requests that the Court order the Government to identify the "others," with whom Mr. Mattia allegedly conspired.

The case law in the Third Circuit and the District of New Jersey is clear that, unless the Government can show that identifying a certain co-conspirator may endanger him/her, the Government should provide the defendant with the identities of his co-conspirators. *See United States v. Gatto*, 746 F. Supp. 432, 477 (D.N.J.

30

1990) rev'd on other grounds, 924 F.2d 491 (3d Cir. 1991) ("The government has represented to the court that it has supplied the defendants with a list of 76 coconspirators. Nonetheless, the government must disclose the names of the participants in the alleged offenses unless it can show that the disclosure might endanger the safety of specific witnesses. To the extent the Indictment alleges that 'others' were involved, the government must specify who the 'others' are."); *United States v. Vastola*, 670 F. Supp. 1244, 1270 (D.N.J. 1987) ("the names of all coconspirators or participants in the alleged offenses should be provided, 'except insofar as the Government can show, in camera, that such disclosures might endanger the safety of prospective witnesses.'" (citation omitted)); *United States v. Mariani*, 90 F. Supp. 2d 574, 592 (M.D. Pa. 2000) (granting bill of particulars identifying unnamed co-conspirators and other participants); *United States v. Holman*, 490 F. Supp. 755, 762 (E.D. Pa. 1980) (granting bill of particulars for "the names of all co-conspirators or participants in the alleged offenses known to the Government and their addresses at the time of their alleged participation, except insofar as the Government can show, in camera, that such disclosures might endanger the safety of prospective witnesses"); *See also United States v. Allocco*, 801 F. Supp. 1000, 1003 (E.D.N.Y. 1992) aff'd, 29 F.3d 620 (2d Cir. 1994) (finding that the government must provide defendant with the names of "the others" referenced in the indictment); *United States v. Feola*, 651 F. Supp. 1068, 1131–34

31

(S.D.N.Y.1987) aff'd without op., 875 F.2d 857 (2d Cir.1989) (granting bill of particulars for unidentified co-conspirators for conspiracy lasting under a year); *United States v. Thevis*, 474 F. Supp. 117, 125–27 (N.D. Ga. 1979) aff'd, 665 F.2d 616 (5th Cir. 1982) (government ordered to disclose unidentified co-conspirators and individuals who could be unindicted aiders and abettors); *United States v. Barrentine*, 591 F.2d 1069, 1077–79 (5th Cir. 1979) (observing that it is "not uncommon for the trial judge to require the government to disclose [unindicted coconspirators'] names when information is necessary in a defendant's preparation for trial"); *United States v. Rogers*, 617 F. Supp. 1024, 1028 (D. Colo. 1985) (citing cases). The above-cited cases also make clear that it is unfair for a defendant to be surprised by the untimely identification of alleged co-schemers whose conduct could legally bind him in a criminal charge.

Thus, we respectfully request that the Court enter an order for a bill of particulars providing the information requested by Mr. Mattia in these motion papers.

### III.   The Striking Of Surplusage Is Necessary

Pursuant to *Fed. R. Crim. P. Rule 7(d),* "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." The related Advisory Committee Notes explain that the rule "introduces a means of protecting the Defendant against immaterial or irrelevant allegations in an indictment . . . which

32

may . . . be prejudicial." A decision to strike surplusage is left to the trial judge's sound discretion. *United States v. Hedgepath*, 434 F.3d 609, 611 (3d Cir. 2006). The Court may strike surplusage from the indictment when it is both irrelevant (or immaterial) and prejudicial. *Id.* at 612.

### A. The Term "Others" Should Be Stricken From The Superseding Indictment As Prejudicial Surplusage If The Government Is Unable To Identify The "Others" With Whom Mr. Mattia Allegedly Conspired

Here, if there are not, in fact, "others" beyond Dr. Agresti with whom Mr. Mattia allegedly conspired, the term "others" should be stricken from the Superseding Indictment because it makes the alleged scheme appear far broader than the scheme charged, which is prejudicial to Mr. Mattia.

The case of *United States v. Alsugair*, 256 F. Supp.2d 306, 317-18 (D.N.J. 2003) is instructive on this point. In *Alsugair*, the Honorable Stephen M. Orlofsky ordered that the term "others" be stricken from the Superseding Indictment as prejudicial surplusage. In *Alsugair*, the defendant was charged with mail fraud based on a scheme to defraud that "Educational Testing Service, Inc., by using imposters to take the Test of English as a Foreign Language [] on behalf of other students." *Id.* at 309. Two other individuals were specifically alleged to have conspired with the defendant. *Id.* at 317. In several counts, however, the defendant was also alleged to have committed the fraud with "others," which the defendant moved to strike. *Id.*

Judge Orlofsky agreed and ordered that the word "others" be stricken from the indictment. *Id.* at 317-18. Judge Orlofsky reasoned that the many references to "others" (in the various counts) indicated that there were more persons involved in the scheme, which could leave the jury with the false impression that the scope of illegal activity was much broader than that actually charged, thereby potentially prejudicing the defendant. *Id.* at 317.

Like in *Alsugair*, if there are not, in fact, "others" with whom the Government believes Mr. Mattia allegedly conspired, then the term "others" should be stricken from the Superseding Indictment as prejudicial surplusage.

### B. The Reference To "Cash And Check Payments"

Furthermore, the Court should strike any reference to cash payments if the Government fails to identify the dates and amounts of any specific cash payments made by Mr. Mattia to Individual-1. (Sup. Ind. Pg. 5 ¶ 4(g)). Moreover, the Court should strike the reference to multiple "check payments" if the Government is unable to identify only one check from Mr. Mattia to Individual-1. (Sup. Ind. Pg. 5 ¶ 4(g)).

### C. Additional Surplusage

Additional surplusage must also be stricken from the Superseding Indictment. Specifically, the Superseding Indictment references "individuals," beyond Individual-1, who Mr. Mattia allegedly "recruited" to obtain "compounded medications." (Sup. Ind. Pg. 4 ¶ 4(b)). The Superseding Indictment further alleges

that Mr. Mattia was "paid" "a percentage for compounded medication that [he] caused to be billed to a paying health plan" for these additional "individuals." (Sup. Ind. Pg. 4 ¶ 4(c)).

However, whether Mr. Mattia "recruited" "individuals," beyond Individual-1, to receive compounded medications, and got paid for doing so, is mere surplusage because the conspiracy (as explicitly set forth in the Superseding Indictment), and all of the substantive health care fraud counts (as explicitly set forth in the Superseding Indictment), are limited to the prescriptions **for Individual-1**. Because the above-referenced information and language set forth in the Superseding Indictment is not relevant to any elements of the Government's case, it is clear that they appear in the Superseding Indictment only to show **propensity**, which is impermissible and prejudicial to Mr. Mattia. Accordingly, Paragraphs 4(b) and (c) must be stricken or limited to Individual-1.

## IV.    *Brady*, Rule 16, *Giglio*, Rule 404(b) and Agent Rough Notes

This is a health care fraud case premised on the submission of "false and fraudulent insurance claims" for "medically unnecessary" compounded medications prescribed to Individual-1. Yet, the Government has produced only three prescriptions for Individual-1. The Government has not produced any insurance claims. And, the Government has not produced any medical records for Individual-1. (*See* Luria Cert. Ex. 7). Accordingly, it leaves us to question whether there is

35

additional Rule 16 or *Brady* material that has not been produced by the Government. (*See* Luria Cert. Exs. 2, 3, 6, 7).

Accordingly, Mr. Mattia requests a Court order requiring the government to produce all documents and materials to which he is entitled pursuant to Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). It is well established that the Government has a duty under the Due Process Clause and the doctrine of *Brady v. Maryland* to disclose evidence that is favorable to the accused and/or material to either guilt or punishment. *United States v. Bagley*, 473 U.S. 667 (1985). This disclosure obligation applies to both case-in-chief and rebuttal witnesses called by the Government. *United States v. Montoya*, 716 F.2d 1340 (10th Cir. 1983).

The disclosure principles of *Brady* are grounded in the constitutional guarantee of due process of law contained in the Fifth and Fourteenth Amendments of the Constitution. *See United States v. Agurs*, 427 U.S. 97 (1976). The essence of the *Brady* rule is the proposition that nondisclosure of material evidence favorable to the defendant violates the defendant's due process right to a fair trial. *Bagley*, 473 U.S. at 674. The principle of *Brady* acknowledges "that the prosecutor's role transcends that of an adversary" because the prosecutor, acting as the representative of the sovereign, has an obligation to ensure "not that it shall win a case, but that justice shall be done." *Bagley*, 473 U.S. at 675 n.6.

36

As noted by the Second Circuit in *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 162 (2d Cir. 2008), material need not be admissible to be discoverable under *Brady*. Instead, information is subject to *Brady* if it could lead to admissible evidence or it would be an effective means during cross-examination of disciplining witnesses, including by refreshing recollection or other manner. *Id.* (citing *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002)).

Any question regarding production should be resolved in favor of Mr. Mattia. *United States v. Gatto*, 746 F. Supp. 432, 475–76 (D.N.J. 1990)("In accordance with the Third Circuit's policy favoring disclosure, the government should resolve any questionable issues in favor of disclosure to defendants.") (citing *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984) and *United States v. Agurs*, 427 U.S. 97, 106 (1976)); *see also United States v. Higgs*, 713 F.2d 39 (3d Cir. 1983); *United States v. Gallo*, 653 F. Supp. 320, 329 (E.D.N.Y. 1986) ("Doubt as to both evidence-in-chief and evidence on credibility must be resolved in favor of revelation [to defendant] before trial.")

Obviously, the Government cannot intentionally withhold such information, but neither can it fail to produce it through negligent oversight or because of a good faith mistake. *Id.* Equally important as **what** discovery is provided to the defense is **when** such discovery is produced. In order for disclosure to be meaningful, it must be made sufficiently in advance of trial so that the defense has a real

opportunity to review, use, and (if necessary) conduct additional investigation regarding it. *See Leka v. Portuondo*, 257 F.3d 89, 100–01 (2d Cir. 2001) (noting that the extent or timing of disclosure of *Brady* material will depend on the facts and circumstances of each case).

There is no bright-line rule providing a precise timeframe for the disclosure of *Brady* and *Giglio* material. However, the disclosure of *Brady* and *Giglio* material must be sufficiently in advance of trial to afford the defense a fair opportunity to use it effectively. A subjective analysis of the circumstances of each particular case is necessary to determine whether a defendant is afforded adequate time to use such *Brady* and *Giglio* information. The Government typically states that it is aware of its obligation in an effort to dismiss defendants' continued requests for *Brady* and *Giglio*. However, the court is the gatekeeper of the timing of production, and the timing must be dictated by how long is necessary for a defendant to effectively use the materials to prepare for trial.

For example, in reversing a conviction for a *Brady* violation, the Second Circuit in *Leka v. Portuondo*, 257 F.3d 89, 101–03 (2d Cir. 2001) concluded:

> When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into the case.
>
> . . .

38

> The opportunity for the use under *Brady* is the opportunity for a responsible lawyer to use the information with some degree of calculation and forethought.

Accordingly, we respectfully request that the Court order the **immediate** production of all *Brady* and Rule 16 discovery. Furthermore, in light of the paucity of discovery, and the belief that the Government's case is, thus, going to rest primarily (if not completely) on the testimony of Dr. Agresti and Individual-1, we respectfully request the production of all *Giglio* material (and *Jencks*) material at least **8 weeks in advance of trial**. As there are not safety concerns, and the Government has already produced some, but seemingly not all, witness statements for Dr. Agresti and Individual-1 (and others), this should not be an issue for the Government.

Moreover, to avoid unnecessary delay at trial, we respectfully request that the Court order the Government to disclose/identify all **Rule 404(b) material and all uncharged criminal acts evidence**, at least 8 weeks in advance of trial. Federal Rule of Evidence 404(b) states that the Government must provide reasonable notice in advance of trial of the general nature of any evidence it intends to introduce at trial regarding other crimes, wrongs, or acts. *Fed.R.Evid.* 404(b). Eight weeks provides the necessary reasonable notice.[2]

---

[2] Importantly, uncharged criminal act evidence is different and completely distinct from 404(b) material. "Evidence of uncharged criminal conduct is not evidence of 'other crimes, wrongs, or acts' under Rule 404(b) if that conduct 'arose out of the

Finally, it appears that the Government may have misplaced some federal agent rough notes that underly some of the FBI's 302s produced to date.  Below is a list of the FBI 302s that have been produced to-date, for which the underlying rough notes have not been produced, despite repeated requests (*see* Luria Cert. Ex. 8, 9):

(1) Carmine Mattia's 6/25/2019 interview;

(2) Individual-1's 8/27/2018 interview[3];

(3) ███████████ 9/18/2018, 9/21/2018 and 6/12/2019 interviews; and

(4) ██████████ 8/20/2018 interview (the notes provided do not capture the vast majority of the FBI 302).

These misplaced rough notes include those for FBI 302s that contain clear *Brady* information and those for Mr. Mattia's alleged statements to law enforcement. Accordingly, Mr. Mattia asks that the Court order the production of these rough notes, immediately.  If the Government is unable or refuses to do so, Mr. Mattia

---

same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 1481 (U.S. 2013) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).

[3] In addition, curiously, the Government has produced rough notes for the witness interviews of Individual-1 on 8/13/2018 and 7/16/2021, but not the FBI 302s. We also seek the production of the FBI 302s for these witness interviews of Individual-1.

respectfully requests that he be permitted to file subsequent motions regarding the appropriate remedy.

As this Court knows, the Government is required to preserve such rough notes. *See United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977) (holding that "the rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to the [defendant] under the rule of Brady . . . or the Jencks Act.") (emphasis added), *cert. denied*, 434 U.S. 1074 (1978); 18 U.S.C. 3500(e)(2) (defining potentially discoverable "statement" as including "a stenographic, mechanical, electrical, or other record, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement"); *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994) (affirming the validity of *Vella*). Likewise, rough drafts of law enforcement agents' reports must also be preserved. *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983).

## V.     Expert Witnesses

The Government has not identified any "expert witnesses" it intends to call at trial whose testimony would be subject to Fed. R. Evid. 702. (*See* Luria Cert. Ex. 5). However, the Government has asserted that it intends to call Dr. Agresti "to testify as to the nature of compounded medications." (*See* Luria Cert. Ex. 5). In

41

addition, the Government asserts that it intends to have Dr. Agresti testify to the following (*see* Luria Cert. Ex. 5):

(1) "Compounding was a practice where a licensed pharmacist or licensed physician combined, mixed, or altered ingredients of a drug to create a medication tailored to the needs of an individual patient."

(2) "Compounded drugs were not approved by the U.S. Food and Drug Administration."

(3) "Compounded drugs are used when, for example, a patient is unable to tolerate an FDA-approved medication."

The Government has indicated that Dr. Agresti's "testimony will be based on Dr. Agresti's personal knowledge, education, and experience as a physician." (*See* Luria Cert. Ex. 5).

In light of the above, it is clear that Dr. Agresti's testimony is the very definition of "expert testimony," subject to Fed. R. Evid. 702. Dr. Agresti will not be testifying as a "lay witness," but rather will be providing "expert testimony," based on his specialized education, training and experience as a physician. This is the very essence of expert testimony. "The distinction between lay and expert testimony is that expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Cooks*, 489 F.3d 173, 180 (5th Cir. 2009).

Given that Dr. Agresti's testimony clearly will constitute "expert testimony" that requires specific expertise, the Government must be ordered to produce the necessary expert report by Dr. Agresti and Dr. Agresti's curriculum vitae. If the Government fails to provide the necessary curriculum vitae and expert report for Dr. Agresti, we submit that his expert testimony should be barred.

Furthermore, to the extent necessary, a *Daubert* hearing may be necessary with regard to Dr. Agresti's testimony.[4] At the *Daubert* hearing, we may have to address:

(1) The subject matter of Dr. Agresti's testimony;

(2) The conclusions set forth by Dr. Agresti in his report; and

(3) The expert qualifications of Dr. Agresti.

In addition, it is respectfully submitted that the Court should order the Government to promptly disclose any additional expert witnesses (as the date for doing so passed on May 16, 2022 (*see* ECF # 19)), if any, and order the Government to produce the requisite expert reports and curriculum vitaes for these experts

---

[4] Rule 702 was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceutical*s, Inc., 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *Daubert* assigned a gatekeeping function to trial judges to exclude unreliable scientific expert testimony. *Kumho* extended this gatekeeping function to all expert testimony, not just scientific testimony. It is also pertinent to note that the Government bears the burden of proving that the proffered testimony from experts is sufficiently reliable and admissible under Rule 702. *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) *amended*, 199 F.3d 158 (3d Cir. 2000).

43

immediately. After same, Mr. Mattia will determine whether he believes he must seek a *Daubert* hearing with regard to any additional "experts" identified by the Government.

Finally, any and all expert testimony that does not qualify under Rule 702 and *Daubert* should be barred from trial.

**VI.    Suppression Of Materials Obtained Pursuant To The Overbroad 18 U.S.C. § 2703(d) Order**

18 U.S.C. § 2703(d) provides, in pertinent part, that the Government may obtain a court order for certain information from an electronic communication service, only "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."

Here, on or about June 10, 2019, the Government utilized 18 U.S.C. § 2703(d) to obtain a court order for certain information regarding the e-mail account "███████████████." (*See* Luria Cert. Ex. 10). Specifically, it applied for and obtained an order, which required that Yahoo's electronic communications service provider produce to the Government the "date," "to" and "from" for all e-mails in the account, without any time limitation/restriction. (*See* Luria Cert. Ex. 10). This resulted in production of e-mail information for all e-mails from in or around May 2005 through in or around June 2019 (a fourteen year period) for "███████████████." (*See* Luria Cert. Ex. 10).

44

The only statement the Government provided in support its application for fourteen-years-worth of e-mail material is that allegedly, on one date, in or around July 2016, Mr. Mattia utilized ██████████████ to e-mail one copy of one individual's insurance card to himself.    (*See* Luria Cert. Ex. 10 at MATTIA_0001886 ¶ 7).  It is impossible to conceive of how one e-mail, in July 2016, regarding a conspiracy that allegedly lasted only approximately four months in 2016, could justify receipt of fourteen-years-worth of information from ██████████████.  The answer is that it simply cannot.

To be clear, the Government failed to "offer[s] specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought" – fourteen-years-worth of e-mail information – "are relevant and material" to criminal conduct that allegedly spanned four months in 2016.  Thus, the materials obtained should be suppressed.  *See e.g. United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995)(warrant "not sufficiently particular" in part because the "government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place"); *United States v. Abrams*, 615 F.2d 541,545 (1st Cir. 1981)(deeming warrant insufficiently particularized and noting, that among other things, "[a] time frame should also have been incorporated into the warrant"); *United States v. Jacobson*, 4 F.Supp. 3d 515,526 (E.D.N.Y. 2014)("a warrant's failure to include a temporal limitation on the things to be seized may, in certain

45

circumstances, render a warrant insufficiently particular"). *United States v. Abbound*, 438 F.3d 554, 576 (6th Cir. 2006)("'[f]ailure to limit broad descriptive terms by relevant dates when such dates are available to the police, will render a warrant overbroad.'" (quoting *United States v. Ford*, 184 *F.3d* 566, 576 (6th Cir. 1999)).

### VII.   Abuse Of The Grand Jury Mandates Suppression

Mr. Mattia was Indicted on Counts 1 – 4 on **July 23, 2021.** (ECF # 1). It appears beyond dispute that the latest the statute of limitations on these health care fraud charges, or any other health care fraud charges related to Individual-1, could have run was **July 25, 2021**, two days later. This is because **July 25, 2016,** was the date on which the last prescriptions were allegedly filled for compounded prescription medications for Individual-1. (Sup Ind. Pg. 7).

Yet, Mr. Mattia knows that the Government issued at least one grand jury subpoena, related to its investigation of the health care fraud, with a return date **after July 30, 2021,** and as a result, the Government did not receive the response until **after July 25, 2021.** (*See* Luria Cert. Ex. 11).

46

| Grand Jury Subpoena Issued To: | Seeking: | Date Issued: | Return Date | Date Documents Produced |
|---|---|---|---|---|
| ▓ | ▓ | July 22, 2021 | July 30, 2021 | July 26, 2021 |

Unfortunately, the Government has refused to produce the other subpoenas that it issued with return dates that postdate the running of the statute of limitations and/or the return of the original Indictment (which is identical to Counts 1 – 4 of the Superseding Indictment). (*See* Luria Cert. Ex. 4, 6, 7). In addition, the Government has refused to identify those subpoena returns it received after the running of the statute of limitations and/or after the return of the original Indictment. (*See* Luria Cert. Ex. 4, 6, 7).

Accordingly, we ask that the Court order the Government to: (1) produce any grand jury subpoenas issued with return dates after the expiration of the grand jury with regard to the health care fraud-related charges; and (2) identify any documents received pursuant to a grand jury subpoena after expiration of the grand jury with regard to the health care fraud-related charges.

This is necessary because a prosecutor may not, once an individual has been indicted, use the grand jury to gather additional evidence against the person for use

at their upcoming trial. *In re Grand Jury Proceedings*, 632 F.2d 1033 (3d Cir.1980). *See also United States v. (Under Seal)*, 714 F.2d 347, 349 (4th Cir. 1983) (recognizing that grand juries "serve[ ] an independent investigatory function and [are] 'not meant to be the private tool of the prosecutor'") (citation omitted). Thus, once a defendant has been indicted, "[a]buse of the grand jury occurs when the government uses it for the 'sole or dominant purpose' of conducting discovery or preparing for trial on a pending indictment." *United States v. McLaughlin*, 910 F. Supp. 1054, 1062 (E.D. Pa. 1995) (citing cases).

Accordingly, post-indictment receipt of any records or other materials in response to grand jury subpoenas, even if issued pre-indictment, is improper. In *United States v. Jeter*, 2015 WL 114118 (D.M.D. Jan. 7, 2015), the Government accepted "property targeted by the pre-indictment subpoena" after defendant Jeter was indicted. The *Jeter* Court held that this post-indictment acceptance of property constituted a "use" of the grand jury, the "sole or dominant purpose of [which] was [to] obtain evidence against Mr. Jeter for use in the criminal proceeding against him." *Id.* at *2. The District Court held that such "post-indictment use of the pre-indictment grand jury subpoena was improper." *Id.* at *1.

Furthermore, Mr. Mattia requests that the Court suppress all materials obtained by the grand jury in violation of the grand jury process.

48

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Mattia respectfully requests that the Court grant the relief he seeks.

Dated: May 19, 2022                   /s/ Amy Luria
                                      Michael Critchley, Esq.
                                      Amy Luria, Esq.
                                      Armando B. Suárez, Esq.
                                      CRITCHLEY, KINUM & LURIA, LLC
                                      75 Livingston Avenue, Suite 303
                                      Roseland, NJ  07068
                                      (973) 422-9200 (tel)
                                      (973) 422-9700 (fax)

                                      *Attorneys for Defendant Carmine Mattia*