UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Hon. Kevin McNulty |
| v. | : | |
| | : | Criminal No. 21-576 |
| CARMINE MATTIA | : | |
| | : | |

---

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S PRETRIAL MOTIONS AND REQUEST FOR RECIPRICOL
DISCOVERY

---

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700


On the Brief:

EMMA SPIRO
Assistant U.S. Attorney

## TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES** ........................................................................iii

**PRELIMINARY STATEMENT** .................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................... 2

ARGUMENT ................................................................................................ 3

I.     MATTIA'S MOTION TO DISMISS COUNTS 1-4 OF THE INDICTMENT BECAUSE THEY ARE VOID FOR VAGUENESS SHOULD BE DENIED. ... 4

II.    MATTIA'S MOTION TO DISMISS COUNTS 1-4 OF THE INDICTMENT BECAUSE THEY DO NOT ALLEGE CRIMES SHOULD LIKEWISE BE DENIED. ................................................................................................ 9

III.   MATTIA'S REQUEST FOR RULE 17(C) SUBPEONAS SHOULD BE DENIED. .............................................................................................. 12

IV.   MATTIA'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED. .............................................................................................. 14

     A.     A Bill of Particulars is not warranted because the Superseding Indictment and discovery give Mattia sufficient information about the charged crimes ........................................................................... 15

     B.     Defendant's specific requests for particulars are unnecessary. ........... 19

          1.     Requests encompassing prescriptions, claims and defining medical necessity. ...................................................... 19

          2.     Cash and check payments ........................................... 21

          3.     The identity of Mattia's co-conspirators. ................................... 22

V.     MATTIA'S MOTION TO STIKE SURPLUSAGE IN THE SUPERSEDING INDICTMENT SHOULD BE DENIED. .......................................... 24

VI.   MATTIA'S *BRADY*, *GIGLIO* AND RELATED DISCOVERY MOTIONS SHOULD BE DENIED. ...................................................... 25

VII.  MATTIA'S MOTION FOR AN EXPERT REPORT FROM DR. AGRESTI SHOULD BE DENIED. .................................................... 27

VIII.   MATTIA'S REQUEST TO SUPRESS MATERIALS OBTAINED
        PURSUANT TO AN 18 U.S.C. § 2703(d) ORDER SHOULD BE
        DENIED. ..................................................................................................... 29

IX.     MATTIA'S MOTION FOR GRAND JURY MATERIALS SHOULD BE
        DENIED BECAUSE HE HAS NOT MADE A PRELIMINARY SHOWING
        OF ABUSE OF THE GRAND JURY PROCESS. ............................................ 32

X.      THE GOVERNMENT MOVES FOR RECIPROCAL DISCOVERY. .............. 35

CONCLUSION.................................................................................................... 36

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(S)**

*Amobi v. D.C. Dep't of Corrections,*
   257 F.R.D. 8 (D.D.C. 2009) ................................................................................. 13

*Bansal v. Russ,*
   513 F. Supp. 2d 264 (E.D. Pa. 2007) ................................................................... 31

*Brady v. Maryland,*
   373 U.S.  (1963) ................................................................................................... 25

*Buehl v. Vaughn,*
   166 F.3d 163 (3d Cir. 1999) .................................................................................. 26

*Carpenter v. United States,*
   138 S. Ct. 2206 (2018) .......................................................................................... 30

*Colautti v. Franklin,*
   439 U.S. 379 (1979) ................................................................................................ 4

*Fecho v. Eli Lilly & Co.,*
   914 F. Supp. 2d 130 (D. Mass. 2012) .................................................................. 29

*In re Grand JuryProc.,*
   632 F.2d 1033 (3d Cir. 1980) ................................................................................ 34

*N. Jersey Media Grp. Inc. v. United States,*
   836 F.3d 421 (3d Cir. 2016) .................................................................................. 18

*Resol. Tr. Corp. v. Thornton,*
   41 F.3d 1539 (D.C. Cir. 1994) .............................................................................. 33

*United States v. Aldissi,*
   758 F. App'x 694 (11th Cir. 2018) .......................................................................... 5

*United States v. Alsugair,*
   256 F. Supp. 2d 306 (D.N.J. 2003) ................................................................. 24, 25

*United States v. Arberry,*
   No. 06-CR-278, 2007 WL 964354 (E.D. Wis. Mar. 27, 2007) ............................. 33

*United States v. Atwell,*
   Crim. No. 13-560, 2015 WL 2092687 (D.N.J. May 5, 2015) ........................... 18, 23

*United States v. Avenatti,*
    432 F. Supp. 3d 354 (S.D.N.Y. 2020) ........................................................ 5

*United States v. Beech-Nut Nutrition Corp.,*
    659 F. Supp. 1487 (E.D.N.Y. 1987) .................................................. 16, 17

*United States v. Bergrin,*
    650 F.3d 257 (3d Cir. 2011) .......................................................... 10

*United States v. Bertram,*
    900 F.3d 743 (6th Cir. 2018) ........................................................... 6

*United States v. Bissell,*
    954 F. Supp. 841 (D.N.J. 1996), *aff'd,* 142 F.3d 429 (3d Cir. 1998) ................ 33, 34

*United States v. Boffa,*
    513 F. Supp. 444 (D. Del. 1980) *aff'd in part, rev'd in part on other grounds,*
    688 F.2d 919 (3d Cir. 1982) ......................................................... 18, 21

*United States v. Bucuvalas,*
    970 F.2d 937 (1st Cir. 1992) ........................................................... 31

*United States v. Budzanoski,*
    462 F.2d 443 (3d Cir. 1972) ............................................................ 33

*United States v. Cafaro,*
    480 F. Supp. 511 (S.D.N.Y. 1979) ...................................................... 20

*United States v. Capozzi,*
    486 F.3d 711 (1st Cir. 2007) ........................................................... 33

*United States v. Carroll,*
    510 F.2d 507 (2d Cir. 1975) ............................................................ 21

*United States v. Caruso,*
    948 F. Supp. 382 (D.N.J. 1996) .................................................... 16, 18

*United States v. Chalker,*
    966 F.3d 1177 (11th Cir. 2020) .......................................................... 8

*United States v. Coffey,*
    361 F. Supp. 2d 102 (E.D.N.Y. 2005) .................................................... 24

*United States v. Coles,*
    No. 1:16-CR-212, 2021 WL 65992 (M.D. Pa. Jan. 7, 2021) ................................ 26

iv

*United States v. Cook,*
  No. 3:16CR312, 2018 WL 1744682 (M.D. Pa. April 11, 2018) ............................... 23

*United States v. Deerfield Specialty Papers, Inc.,*
  501 F. Supp. 796 (E.D. Pa. 1980) ........................................................................... 15

*United States v. Delle Donna,*
  552 F. Supp. 2d 475 (D.N.J. 2008) ......................................................................... 23

*United States v. Depiro,*
  No. 10-CR-851 DMC, 2013 WL 663303 (D.N.J. Feb. 20, 2013) ............................ 23

*United States v. Diaz,*
  236 F.R.D. 470 (N.D. Ca. 2006) ....................................................................... 32, 33

*United States v. Fieger,*
  No. 07-20414, 2007 WL 4098149 (E.D. Mich. Nov. 17, 2007) ............................... 32

*United States v. Flemmi,*
  245 F.3d 24 (1st Cir. 2001) ...................................................................................... 34

*United States v. Fontaine,*
  697 F.3d 221 (3d Cir. 2012) ....................................................................................... 4

*United States v. Garcia,*
  No. 21-1415, 2022 WL 1535378 (7th Cir. May 16, 2022) .......................................... 7

*United States v. Giampa,*
  No. 92-CR-437, 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ......................... 12, 13, 14

*United States v. Gonzalez,*
  834 F.3d 1206 (11th Cir. 2016) .................................................................................. 8

*United States v. Grasso,*
  173 F. Supp. 2d 353 (E.D. Pa. 2001) ...................................................................... 17

*United States v. Hedgepeth,*
  434 F.3d 609 (3d Cir. 2006) ..................................................................................... 24

*United States v. Higgs,*
  713 F.2d 39 (1983) ............................................................................................. 26, 27

*United States v. Jacobson,*
  4 F. Supp. 3d 515 (E.D.N.Y. 2014) ......................................................................... 31

*United States v. Kemp,*
  500 F.3d 257 (3d Cir. 2007) ..................................................................................... 10

*United States v. Klecker,*
  348 F.3d 69 (4th Cir. 2003) ................................................................. 7

*United States v. Knight,*
  No. 12–0367, 2013 WL 3367259  (E.D.P.A. July 3, 2013) ..................... 23

*United States v. Kogan,*
  politi F. Supp. 3d 127 (S.D.N.Y. 2017) ................................................. 20

*United States v. Larracuente,*
  740 F. Supp. 160 (E.D.N.Y.1990) .......................................................... 20

*United States v. Leung,*
  40 F.3d 577 (2d Cir. 1994) ..................................................................... 34

*United States v. Li,*
  No. 3:16-CR-194, 2017 WL 590275 (M.D. Pa. Feb. 14, 2017) ............... 26

*United States v. Mariani,*
  7 F. Supp. 2d 556 (M.D. Pa. 1998) ........................................................ 23

*United States v. Mazurie,*
  419 U.S. 544 (1975) ........................................................................... 4, 5

*United States v. McLean,*
  715 F.3d 129 (4th Cir. 2013) ........................................................ 7, 8, 9

*United States v. Milani,*
  739 F. Supp. 216 (S.D.N.Y. 1990) ........................................................... 5

*United States v. Moyer,*
  674 F.3d 192 (3d Cir. 2012) .................................................................. 16

*United States v. Munoz,*
  736 F. Supp. 502 (S.D.N.Y. 1990) ......................................................... 16

*United States v. Nachamie,*
  91 F. Supp. 2d 552 (S.D.N.Y. 2000) ...................................................... 12

*United States v. Nelson,*
  712 F.3d 498 (11th Cir. 2013) ................................................................. 4

*United States v. Nixon,*
  418 U.S. 683 (1974) ............................................................................... 12

*United States v. Oms-Rivera,*
  422 F. Supp. 3d 482 (D.P.R. 2019) ........................................................ 28

*United States v. Panarella,*
   277 F.3d 678 (3d Cir. 2002) ...................................................................... 10

*United States v. Papia,*
   399 F. Supp. 1381 (E.D. Wis. 1975) ....................................................... 20

*United States v. Perrine,*
   518 F.3d 1196 (10th Cir. 2008) ............................................................... 31

*United States v. Pharis,*
   298 F.3d 228 (3d Cir. 2002) ...................................................................... 24

*United States v. Pleasant,*
   Crim. No. 17-62, 2018 WL 4252632 (E.D. Pa. Sept. 5, 2018) ................ 30

*United States v. Politi,*
   334 F. Supp. 1318 (S.D.N.Y. 1971), *aff'd*, 516 F.2d 897 (2d Cir. 1975). .......... 21, 22

*United States v. Raineri,*
   670 F.2d 702 (7th Cir. 1982) .................................................................... 13

*United States v. Rankin,*
   870 F. 2d 109 (3d Cir. 1989) ..................................................................... 10

*United States v. Ray,*
   337 F.R.D. 561 (S.D.N.Y. 2020) .............................................................. 12

*United States v. Roque,*
   No. CRIM. 12-540 KM, 2013 WL 2474686 (D.N.J. June 6, 2013) ........ 10

*United States v. Rosa,*
   891 F.2d 1063 (3d Cir. 1989) .................................................................... 15

*United States v. Sachakov,*
   812 F. Supp. 2d 198 (E.D.N.Y. 2011) ....................................................... 7

*United States v. Sampson,*
   No. 4:11–CR–155, 2012 WL 214707 (M.D. Pa. Jan. 24, 2012) ......... 23, 24

*United States v. Shea,*
   Crim. No. 20-412-4, 2022 WL 1443918 (S.D.N.Y. May 6, 2022) ............. 5

*United States v. Skelos,*
   Crim. No. 15-317, 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ............. 17

*United States v. Smith,*
   776 F.2d 1104 (3d Cir. 1985) ................................................................ 17, 18

*United States v. Smith,*
    123 F.3d 140 (3d Cir. 1997) ..................................................................... 32

*United States v. Smith,*
    155 F.3d 1051 (9th Cir. 1998) ................................................................. 31

*United States v. Smukler,*
    330 F. Supp. 3d 1050 (E.D. Pa. 2018) .................................................... 23

*United States v. Triumph Capital Grp., Inc.,*
    211 F.R.D. 31 (D. Conn. 2002) ............................................................... 31

*United States v. Urban,*
    404 F.3d 754 (3d Cir. 2005) ............................................................. 15, 16

*United States v. Vaid,*
    No. 16 CR. 763, 2017 WL 3891695 (S.D.N.Y. Sept. 5, 2017) ................. 22

*United States v. Wabo,*
    290 F. Supp. 2d 486 (D.N.J. 2003) .......................................................... 18

*United States v. Wadlington,*
    233 F.3d 1067 (8th Cir. 2000) ................................................................. 34

*United States v. Whitted,*
    No. CR 05-598-02, 2007 WL 9754085 (E.D. Pa. Apr. 11, 2007) ............. 26

*United States v. Zolp,*
    659 F. Supp. 692 (D.N.J. 1987) ............................................................... 15

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) .................................................................................. 7

*Weese v. Schukman,*
    98 F.3d 542 (10th  Cir. 1996) .................................................................. 28

## **Statutes**

18 U.S.C. § 1518 ......................................................................................... 3

18 U.S.C. § 1347 ................................................................................. *passim*

18 U.S.C. § 1349 .......................................................................... 1, 3, 4, 5

18 U.S.C. § 1512(b)(3) ................................................................................. 3

18 U.S.C. § 2703(c) .................................................................................... 29

18 U.S.C. § 2703(d) ........................................................................ 1, 29, 30, 31

18 U.S.C. § 2708 ..................................................................................... 31

18 U.S.C. § 3771(a)(8) ............................................................................ 14

## **Rules**

Fed. R. Crim. P. 6(e) ............................................................................ 32

Fed. R. Crim. P. 6(e)(3)(E)(ii) .............................................................. 33

Fed. R. Crim. P. 7 ........................................................................... 1, 20, 21

Fed. R. Crim. P. 7(c)(1) ................................................................... 10, 11

Fed. R. Crim. P. 7(d) ............................................................................ 25

Fed. R. Crim. P. 12(b)(3)(B)(v) ............................................................ 10

Fed. R. Crim. P. 16 ......................................................................... *passim*

Fed. R. Crim. P. 16(b) ..................................................................... 35, 36

Fed. R. Crim. P. 16(b)(1)(A) ................................................................. 35

Fed. R. Crim. P. 16(b)(1)(B) ................................................................. 35

Fed. R. Crim. P. 17(c) ................................................................ 1, 12, 13, 14

Fed. R. Crim. P. 404(b) ..................................................................... 1, 27

Fed. R. Crim. P. 602 ............................................................................. 28

Fed. R. Crim. P. 701 ....................................................................... 27, 28

## **Other Authorities**

Third Circuit Model Crim. Jury Instr. 6.18.1347 ................................... 5, 11

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Carmine Mattia's pretrial motions filed on May 19, 2022. Mattia makes the following motions: (1) for Rule 17(c) subpoenas; (2) for a bill of particulars; (3) to strike surplusage in the Superseding Indictment; (4) for *Brady* and *Giglio* material, Rule 404(b) disclosure, and agent notes; (5) for production of an expert witness report; (6) for suppression of material pursuant to a § 2703(d) Order; (7) for production of grand jury materials; and (8) to dismiss Counts 1-4 of the Superseding Indictment because he argues that 18 U.S.C. §§ 1347 and 1349 are void for vagueness as applied and do not allege crimes. The Court should deny these motions for the following reasons: (1) the requested Rule 17(c) subpoenas are not relevant and are overbroad; (2) the request for a bill of particulars is baseless in light of the detailed indictment, voluminous discovery, and in-person briefing of the proofs that the Government has provided to the defendant; (3) the defendant has not met the onerous burden to strike language from a charging document; (4) the Government has produced all Rule 16 and *Brady* material, and *Giglio* Material as well as Rule 404(b) material will be produced pre-trial; (5) the Government does not need to disclose an expert report for expected lay testimony; (6) the § 2703(d) material should not be suppressed because the Government's order laid out specific and articulable facts justifying the application and suppression is not an appropriate remedy; (7) the Defendant has not articulated a particularized need warranting disclosure of grand jury material; and (8) Counts 1-4 should not be dismissed because (1) they meet the standard of Rule 7; (2) the as-applied challenge is

premature; and (3) the statues are not vague as-applied.  Separately, the Court should grant the Government's request for reciprocal discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

Mattia was an employee of a telecommunications company (the "Company"). Sup. Ind. ¶ 1a.  Mattia also worked as a sales representative at a marketing company and various compounding pharmacies that marketed and filled prescription compounded medications (the "Mattia Compounding Pharmacies").

Compounded medications—such as scar creams, pain creams, and metabolic supplements—were generally prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient.  *Id.* ¶ 1i.  For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction.  *Id.*

Mattia participated in this scheme as a sales representative who worked for the Mattia Compounding Pharmacies.  *Id.* ¶ 4a.  As part of this scheme, Mattia received a commission for every prescription for a compounded medication that Mattia obtained, sent to the pharmacy, and generated a reimbursement.  *Id.* ¶ 4c. From April 2016 through July 2016, Mattia recruited Individual-1, also a Company employee, to receive medically unnecessary compounded medications, including by paying him to receive those medications.  *Id.* ¶ 4g.  In addition, Mattia and his co-conspirators secured the signature of Dr. Robert Agresti on the prescriptions for Individual-1 without Agresti and Individual-1 having a doctor-patient relationship,

without Agresti determining that the compounded medications were medically necessary for Individual-1, and without Agresti conducting an examination of Individual-1. *Id.* ¶ 4f.

After Mattia learned that there was a federal criminal investigation into this fraudulent scheme, he directed Individual-1 to provide false information to federal agents in order to conceal Mattia's participation. *Id.* ¶ 4h. On or about July 17, 2019, Mattia directed Individual-1 to falsely tell federal agents that the payments that Mattia had made to Individual-1 were for work that Individual-1 performed on Mattia's kitchen. In reality, and as Mattia knew, Individual-1 had never performed any work on Mattia's kitchen, and Mattia's payments to Individual-l were bribes to induce Individual-1 to obtain medically unnecessary prescriptions. *Id.*

As a result of this conduct, on July 23, 2021, a federal grand jury returned an Indictment charging Mattia with one count of conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, and three counts of substantive healthcare fraud. D.E. 1. Subsequently, on April 8, 2022, a federal grand jury returned a Superseding Indictment against Mattia, adding charges of witness tampering (18 U.S.C. § 1512(b)(3)) and obstruction of a healthcare investigation (18 U.S.C. § 1518). D.E. 15.

## **ARGUMENT**

I.      **MATTIA'S MOTION TO DISMISS COUNTS 1-4 OF THE INDICTMENT BECAUSE THEY ARE VOID FOR VAGUENESS SHOULD BE DENIED.**

Mattia contends that the healthcare fraud statute (18 U.S.C. § 1347), and conspiracy to commit healthcare fraud (18 U.S.C. § 1349), are void for vagueness as applied to the facts of this case.  Def. MTD Br. at 7-13.  As part of this argument, Mattia contends that the term "medically unnecessary" is not defined in the health care fraud statute, and therefore he could not have been on notice of what conduct is prohibited.  *Id*. at 13.  This argument is completely without merit and should be denied.

A criminal statute is void for vagueness if it "'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' or is so indefinite that 'it encourages arbitrary and erratic arrests and convictions.'" *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal citations omitted).  However, this doctrine "does not mean that [a] statute must define every factual situation that may arise."  *United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013)).

First, this type of "as-applied" challenge is premature at the pre-trial motion stage.  This is because an as-applied challenge must be reviewed in light of the specific conduct and facts of the case.  *United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.");  *United States v. Fontaine*, 697 F.3d 221, 226 (3d Cir. 2012) (same).  Therefore, such a motion is premature at the pretrial motion stage, since it would

require judicial review of a factual record which has not yet been created.  *See, e.g.*, *Mazurie*, 419 U.S. at 550; *United States v. Shea*, Crim. No. 20-412-4, 2022 WL 1443918, at *5 (S.D.N.Y. May 6, 2022) ("Because it is assessing an as-applied challenge, the Court must determine what [the defendant] *did* before determining whether the statute fairly apprised him that his conduct was prohibited" and therefore the Court "must await conclusion of the trial" to determine whether the statute was vague as applied); *United States v. Milani*, 739 F. Supp. 216, 218 (S.D.N.Y. 1990) ("On the issue of whether the statute might be unconstitutional as applied in a particular case, we must await conclusion of the trial."); *see also United States v. Avenatti*, 432 F. Supp. 3d 354, 366 (S.D.N.Y. 2020) (denying vagueness as-applied motion as premature when made before trial).

Further, "a challenge for vagueness will fail where a defendant's actions clearly fall within the intended reach of the ... statute." *United States v. Aldissi*, 758 F. App'x 694, 704 (11th Cir. 2018).  A person commits a crime under 18 U.S.C. § 1349 if the following two elements are met: (1) Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime (such as healthcare fraud); and (2) the defendant knew the unlawful purpose of the plan and willfully joined in it.  *See* Third Circuit Model Crim. Jury Instr. 6.18.1347 (stating that § 1349 "makes it a crime to attempt or conspire to commit any of the federal fraud offenses").  The health care fraud statute further makes it a crime to "knowingly and willfully execute[ ] ... a scheme ... (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent ... representations

5

... any of the money ... [of] any health care benefit program ... in connection with the delivery of or payment for health care benefits, items, or services."  18 U.S.C. § 1347.

Here, Mattia's actions are clearly within the reach of the healthcare fraud statute. The Superseding Indictment alleges that Mattia caused Individual-1 to receive medically unnecessary compounded medications and that the Company's health care plan was then billed for these medications.  Sup. Ind. ¶ 4(d).  It goes on to explain exactly how this happened: Mattia recruited Individual-1 to obtain these prescriptions and secured Dr. Agresti's signature on them: "(a) without Robert Agresti and Individual-1 having a doctor/patient relationship, (b) without Robert Agresti determining that Individual-1 had a medical necessity for the compounded medications selected, and (c) without Robert Agresti conducting an examination of Individual-1."  *Id*. ¶ 4(f).  Mattia also paid Individual-1 "cash and check payments to further induce Individual-1" to obtain those medications.  *Id*. ¶ 4(g).

This conduct falls squarely within the healthcare fraud statute.  The fact that Mattia recruited Indivdiual-1 to receive compounded medication instead of their FDA-equivalent—but much less expensive—version and paid him bribes to do so strongly indicates that they were not medically necessary medications.  Mattia also obtained Agresti's fraudulent signature on Individual-1's prescriptions, and Mattia caused those false prescriptions to be billed to insurance.  This conduct is more than sufficient to meet the elements of healthcare fraud.  Courts have routinely rejected vagueness challenges to the healthcare fraud statute, including those revolving around a lack of medical necessity.  *See, e.g.*, *United States v. Bertram*, 900 F.3d 743,

6

747 (6th Cir. 2018) (upholding conviction of five defendants who ran a urinalysis testing company because a "reasonable jury could find that the defendants violated the health care fraud statute by requesting reimbursement for tests that were not medically necessary"); *United States v. McLean*, 715 F.3d 129, 136 (4th Cir. 2013) ("As applied here, [§ 1347] prohibited McLean from knowingly and willfully defrauding insurers by falsely certifying that the stents he placed in arteries with little to no blockage were reasonable and medically necessary in order to obtain reimbursement.").

The statute's scienter requirement—that the Defendant's conduct be knowing and willful—itself avoids criminalizing innocent errors caused by a mistaken interpretation of the definition of "medical necessity". *United States v. Sachakov*, 812 F. Supp. 2d 198, 213 (E.D.N.Y. 2011) (rejecting claim that the statute, as applied, was vague because it incorporated Medicare rules and definitions); *see United States v. Garcia*, 2022 U.S. App. LEXIS 13088, at *3-4, 2022 WL 1535378 (7th Cir. 2022) (unpublished) (finding that vagueness challenge to healthcare fraud counts would have been "frivolous"); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." (footnote omitted)); *United States v. Klecker,* 348 F.3d 69, 71 (4th Cir. 2003) ("[An] intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement." (citation omitted)).

In *United States v. McLean*, a cardiologist was convicted of healthcare fraud based on a "scheme to defraud insurers by submitting claims for medically unnecessary stent procedures." 715 F.3d at 132. There, the defendant argued that the health care fraud statute was unconstitutionally vague as applied to him. Specifically, he argued there was "no clear standard" of medical necessity which governed the use of coronary artery stents. *Id*. at 136. The Fourth Circuit rejected this argument, finding that statute's *mens rea* requirement mitigated any ambiguity arising from the lack of clear medical guidance. *Id*. at 137. Since the defendant could only be convicted if the government proved beyond a reasonable doubt that he acted "knowingly and willfully" to defraud insurers, that "would necessarily entail proof that he knew the stent procedures were medically unnecessary." *Id*. Thus, this requirement eliminated any "fair notice concerns" raised by the defendant. *Id*.; *see also United States v. Chalker*, 966 F.3d 1177 (11th Cir. 2020) (rejecting vagueness challenge to indictment alleging defendant was engaged in healthcare fraud conspiracy to bill medically unnecessary compounded drugs and finding that evidence at trial was sufficient to support defendant's involvement in a scheme to defraud insurers by filling "medically unnecessary" prescriptions for patients who neither wanted nor needed them).

Simply put, "[a] person makes a false claim if the treatments that were billed were not medically necessary or were not delivered to the patients." *United States v. Gonzalez*, 834 F.3d 1206, 1214 (11th Cir. 2016). Here, the Superseding Indictment alleges that Mattia made such a false claim. Mattia willfully sought out and recruited

Individual-1 to receive compounded medications in exchange for money. Mattia knew that Dr. Agresti's prescriptions were fabricated: they were not medically necessary because Agresti and Individual-1 had no doctor-patient relationship. Thus, Mattia acted knowingly and willfully, both to recruit Individual-1 and to procure fraudulent prescriptions, and this "necessarily entails proof that he knew" the prescriptions were unnecessary. *McLean*, 715 F.3d at 137.

## II. MATTIA'S MOTION TO DISMISS COUNTS 1-4 OF THE INDICTMENT BECAUSE THEY DO NOT ALLEGE CRIMES SHOULD LIKEWISE BE DENIED.

Mattia argues that Counts 1-4 should be dismissed because they "fail to allege crimes." Def. MTD Br. at 16. According to Mattia, a scheme to defraud must involve "fraudulent misrepresentations or omissions" and the Superseding Indictment fails to identify any misstatements or omissions. *Id.* at 16-18.

This is just another version of the same argument. Mattia overlooks that bribing a patient to receive medications and inducing a doctor to sign prescriptions for those medications without (1) an exam; (2) any doctor-patient relationship; or (3) any determination of medical necessity necessarily constitutes a "fraudulent misrepresentation or omission" when the prescription is submitted to the insurer for reimbursement. After all, the insurance company only paid for the medication because of Mattia's implicit representations that the prescriptions were legitimate. But those representations were false because they were based on bribes and bogus prescriptions.

9

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits a defendant to move to dismiss an indictment for failure "to state an offense." Thus, a district court must find that "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002). In making that evaluation, the court must take the factual allegations in the Indictment at face value. *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011); *United States v. Roque*, 2013 WL 2474686, at *3 (D.N.J. June 6, 2013).

Federal Rule of Criminal Procedure 7(c)(1) states that an indictment must contain only a "plain, concise and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). An indictment is sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). Moreover, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy." *United States v. Rankin*, 870 F. 2d 109, 112 (3d Cir. 1989).

Here, the Superseding Indictment goes well beyond tracking the statutory language. It lays out the broad scheme: that Mattia worked for the Company, which

provided health care coverage, including for compounded medications, and that Mattia also worked for the Mattia Compounding Pharmacies and was paid a commission on every compounded medication he caused to be billed. Sup. Ind. ¶¶ 1(a), (d), 4(a)-(c). It further articulates the goal of the scheme: for Mattia and his co-conspirators to obtain money by causing the submission of Individual-1's fraudulent insurance claims and receiving a commission from the same. *Id*. ¶ 3. Finally, the Superseding Indictment lays out each element of the crime: that Mattia convinced Individual-1 to get prescriptions through bribes and secured Dr. Agresti's signature on those prescriptions without any doctor-patient relationship. *See* Third Circuit Model Crim. Jury Instr. 6.18.1347 (the first element of healthcare fraud is "that the defendant knowingly participated in a scheme to defraud an insurance company and to obtain by false or fraudulent pretenses, representations or promises, any money or property under the control of the insurance company").[1] As discussed, the Superseding Indictment describes the scheme, explains the goal of the scheme, and lays out Mattia's role. That role includes causing fraudulent prescriptions to be submitted to an insurance company, that were based on (1) bribes to Indivdiual-1; and (2) no doctor-patient relationship with the prescribing physician. Thus, the Superseding Indictment clearly lays out facts over and above what is required by Fed. R. Crim. P. 7(c)(1), and Mattia's motion to dismiss for failure to state a claim should be denied.

---

[1] Since Mattia only appears to be contesting element one, that is the Government's focus.

### III.   MATTIA'S REQUEST FOR RULE 17(C) SUBPEONAS SHOULD BE DENIED.

Mattia next argues for the issuance of Rule 17(c) subpoenas to obtain Individual-1's medical and mental health records.  Mattia Omnibus Mot. at 15-19.

Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas *duces tecum* in federal criminal proceedings. *United States v. Nixon*, 418 U.S. 683, 697–98 (1974).  For the issuance of a Rule 17(c) subpoena, the requesting party must show relevancy, admissibility, and specificity.  *Id.* at 700.  Specifically, its issuance requires a showing that: (1) "the documents are evidentiary and relevant"; (2) the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence"; (3) the defendant "cannot properly prepare for trial without such production and inspection in advance of trial and that the failure" to obtain the documents may "unreasonably delay the trial"; and (4) "the application is made in good faith and is not intended as a general 'fishing expedition.'"  *Id.* at 699-700.  When a defendant makes an application for a Rule 17(c) subpoena on a third party, the subpoena must be "(1) reasonab[ly] construed using the general discovery notion of 'material to the defense;' and (2) not unduly oppressive for the producing party to respond."  *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000).

In *United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020), the court held that the Government could move to quash subpoenas issued for the records of non-parties as long as it was on the basis of the Government's own legitimate interests and not on the basis of the non-parties' interest. *See also United States v. Giampa*,

12

No. 92-CR-437, 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (holding Government had standing to move to quash Rule 17(c) subpoenas to a non-party witness based on the Government's "interest in preventing any undue lengthening of the trial, any undue harassment of [the witness] and his family, and any prejudicial over-emphasis on [the witness's] credibility…"); *see also United States v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982) (standing exists "if the subpoena infringes upon the movant's legitimate interests"); *Amobi v. D.C. Dep't of Corrections,* 257 F.R.D. 8, 10 (D.D.C. 2009) ("[A] party may have standing to move to quash a subpoena directed to a third party where that subpoena infringes on the moving party's rights.").

Here, the documents requested are neither evidentiary nor relevant.  They are also overbroad.  First, this case involves the procurement of prescriptions for compounded medications where there was **no** doctor-patient interaction.  Thus, whether Individual-1 happened to have any underlying medical conditions that could have justified a prescription is not relevant because no doctor or other prescriber examined his records in connection with the charged scheme.  Therefore, Individual-1's medical records are completely irrelevant to the determination of whether a doctor made the determination that the prescriptions at issue were medically necessary.

Second, the request for mental health records of Individual-1 to determine his "memory" is nothing more than a fishing expedition and should likewise be denied. *See* Def. Omnibus Br. at 19-20.  Mattia attempts to justify this request based on the fact that "Individual-1 has taken an inordinate amount of medical leave from his job over the past decade."  *Id*. at 19.  With no proof of any memory loss, mental health

13

condition, or other memory-related issue, Mattia attempts to use a Rule 17(c) subpoena to fish for possible ways he could impeach Individual-1. This is inappropriate, would deter victims and witnesses from reporting crimes,[2] and is irrelevant to this case. Diving into Individual-1's mental health records would create a prejudicial side-show at trial, and there is no basis in law to do so. *Giampa*, 1992 WL 296440, at *1 (holding Government had standing to move to quash Rule 17(c) subpoenas to a non-party witness based on the Government's "interest in preventing . . . any prejudicial over-emphasis on [the witness's] credibility). Each of Mattia's requests for subpoenas should therefore be denied.

## IV. MATTIA'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED.

Next, Mattia seeks a bill of particulars. He argues that, despite its length and detailed description of the alleged crimes, the Superseding Indictment fails to apprise him of facts he must be prepared to defend against at trial. Mattia seeks particulars regarding the following: (1) a description of all the prescriptions for Individual-1 that the Government contends were for medications that were "medically unnecessary" and why they were "medically unnecessary"; (2) identification of all the insurance claims that the government contends were "false and fraudulent"; (3) what specifically in the insurance claim does the Government contend is false and fraudulent; (4) what is the definition of medically unnecessary and the source of that

---

[2] 18 U.S.C. § 3771(a)(8), governing crime victims' rights, affords a victim "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy."

definition; (5) what cash payments were provided by the Defendant to Indivdiual-1; (6) what additional check payments were provided by the Defendant to Indivdiual-1; and (7) Mattia's "other" co-conspirators as alleged in the Superseding Indictment.  *See* Def. Br. at 8-9.  In light of the detail in the Superseding Indictment, the wealth of information available through discovery, and the supplemental disclosures that the Government has provided to Mattia, this motion should be denied.

### A.   A Bill of Particulars is not warranted because the Superseding Indictment and discovery give Mattia sufficient information about the charged crimes.

Mattia seeks far more than the law permits.  A bill of particulars is required only when an indictment is too vague to permit the defendant to (a) understand the charges and prepare a defense, (b) avoid unfair surprise, and (c) assert a claim of double jeopardy where appropriate.  *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005).  "Only where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,]' will we find that a bill of particulars should have been issued."  *Id.* (internal citations omitted).  As long as the indictment enables the defendant to understand the accusations against him and the central facts that the Government will present at trial, a bill of particulars is unwarranted.  *See United States v. Rosa*, 891 F.2d 1063, 1066-67 (3d Cir. 1989); *United States v. Zolp*, 659 F. Supp. 692, 706 (D.N.J. 1987); *United States v. Deerfield Specialty Papers, Inc.*, 501 F. Supp. 796, 809-10 (E.D. Pa. 1980).

15

Here, the Superseding Indictment goes well beyond what is required of a charging document and is sufficiently detailed for Mattia to understand the charges against him and prepare a defense. It provides a detailed overview of the compounding fraud conspiracy and describes Mattia's role in it. Sup. Ind. ¶¶ 2-4. The Superseding Indictment also contains details regarding the victim health benefit programs, specifies the time period of the conspiracy, defines key medical and healthcare industry terminology, and identifies the manner and means of the conspiracy through which Mattia, Dr. Agresti, and others obtained fraudulent compounded prescriptions. *Id*. ¶¶ 1-4. Thus, "the specificity with which" the Superseding Indictment identifies the time period, events, and transactions at issue make it "highly unlikely" that Mattia might be "unfairly surprised with . . . unfamiliar" allegations at trial. *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012).

Furthermore, the Third Circuit has emphasized that a bill of particulars is unnecessary in those cases where, as here, the Government supplements a detailed charging document with substantial discovery. *Urban*, 404 F.3d at 772; *see also United States v. Munoz*, 736 F. Supp. 502, 504 (S.D.N.Y. 1990) (provision of substantial discovery weighs against ordering bill of particulars). Where, as here, "discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines." *United States v. Caruso*, 948 F. Supp. 382, 393 (D.N.J. 1996); *United States v. Beech-Nut Nutrition Corp.*, 659 F. Supp. 1487,

16

1499-1500 (E.D.N.Y. 1987) (extensive discovery "must have answered a great many, if not all, of defendants' requests" for discovery and a bill of particulars).

Discovery in this case has been extensive, well beyond what is required by Rule 16, and "provided in an organized and comprehensible fashion." *United States v. Skelos*, Crim. No. 15-317, 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015). The discovery here has included, among other categories of information: (1) Individual-1's prescriptions; (2) records showing a monetary payment made by Mattia to Individual-1; and (3) subpoena returns indicating the timing of the prescriptions procured by Mattia and the amount that was paid by insurance. In addition, the Government has provided Mattia with over 30 different summaries of witness statements ("302s") and agent notes of those interviews. These 302s and corresponding agent notes are *Jencks* and *Giglio* material and are generally not produced until immediately preceding trial. Nonetheless, the Government produced these documents with its Rule 16 discovery to permit Mattia to better understand the extent of the investigation and evidence against him. Mattia thus has "'that minimum amount of information necessary'" for his "'own investigation'" such that "there is no need to order the bill of particulars requested by Defendant." *United States v. Grasso*, 173 F. Supp. 2d 353, 367 (E.D. Pa. 2001) (quoting *Smith*, 776 F.2d at 1111). In addition, the Government plans to furnish defendant with a comprehensive exhibit list 30 days before trial, which will lend additional insight into the allegations the Government intends to prove. Thus, Mattia need not rely solely on the allegations in the Superseding Indictment to

17

prepare his defense; he can use the extensive discovery that the Government has furnished.

The Government has even gone a step further than simply providing discovery. It delivered to Mattia and his counsel an in-person briefing on the proofs against him during a reverse proffer. In other words, the Government has more than satisfied its discovery obligations in this case. The Government is not required at this early stage to reveal the identities of its witnesses or "furnish a three-dimensional colored motion picture of the prosecution's proof prior to trial." *Caruso*, 948 F. Supp. at 395 (Ackerman, J.) (citations omitted) (denying motion for bill of particulars).

A bill of particulars is not only unnecessary, it may have a detrimental effect on the Government's proofs. A bill of particulars potentially "narrows the government's case at trial in the same way as the formal charging document: 'there can be no variance between the notice given in a bill of particulars and the evidence at trial.'" *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016) (quoting *Smith*, 776 F.2d at 1111). As a result, district courts are understandably reluctant at the pretrial stage to "unduly freeze [the government] to its proofs at trial." *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980).

The Superseding Indictment, discovery, and supplemental information provided during the Government's reverse proffer clearly provide "sufficient factual and legal information for the defense to prepare its case." *United States v. Wabo*, 290 F. Supp. 2d 486, 490 (D.N.J. 2003); *see also United States v. Atwell*, Crim. No. 13-560, 2015 WL 2092687, at *5 (D.N.J. May 5, 2015) (Wolfson, J.) ("[D]iscovery, combined

with the sufficiency of the allegations contained in the Superseding Indictment, negates the need for a bill of particulars.").

### B.   Defendant's specific requests for particulars are unnecessary.

Although it is obvious that the individual requests of Mattia go beyond what is required to be disclosed in a bill of particulars, the Government responds below to each one in turn.

Mattia requests the following: (1) a description of all the prescriptions for Individual-1 that the Government contends were for medications that were "medically unnecessary" and why they were "medically unnecessary"; (2) identification of all the insurance claims that the government contends were "false and fraudulent"; (3) what specifically in the insurance claim does the Government contend is false and fraudulent; (4) what is the definition of medically unnecessary and the source of that definition; (5) what cash payments were provided by Mattia to Individual-1; (6) what additional check payments were provided to Individual-1 by Mattia; and (7) Mattia's "other" co-conspirators as alleged in the Superseding Indictment. *See* Def. Omnibus Br. at 8-9, 20-32.

### 1.   Requests encompassing prescriptions, claims and defining medical necessity.

The following requests are meritless, not required by law, and should be denied:

- The prescriptions and the alleged false and fraudulent insurance claims, including which insurance claims are false and fraudulent and what specific statements/omissions are false and fraudulent within those claims; and

19

- The definition of medically unnecessary and the source of the definition.

In essence, Mattia is seeking a more detailed description of the Government's theory of this case. The Government, however, is not obligated to reveal the precise means by which that conspiracy was carried out or its legal theory regarding defendant's guilt. *United States v. Cafaro*, 480 F. Supp. 511, 517 (S.D.N.Y. 1979) (Rule 7 "does not require the Government either to reveal the means by which a crime has been carried out" or "to disclose details that would unduly restrict its presentation of proof at trial"); *United States v. Papia*, 399 F. Supp. 1381, 1384 (E.D. Wis. 1975) ("What the defendants request, in essence, by this motion are the details of the Government's case, and a motion for a bill of particulars cannot be used to achieve this end.").

The Government has provided very clear details concerning why the prescriptions at issue were not medically necessary in the Superseding Indictment. *See* Sup. Ind. ¶¶ 4(a)-(g). Mattia is not entitled to any additional information concerning the Government's theory of the case. *See United States v. Larracuente*, 740 F. Supp. 160, 163 (E.D.N.Y.1990) ("A bill of particulars is not to be viewed as a discovery device to seek and compel disclosure of the Government's evidence prior to trial."); *see also United States v. Kogan*, 283 F. Supp. 3d 127, 133 (S.D.N.Y. 2017) ("Because the [charging instrument] and discovery provide a clear explanation of the fraudulent schemes with which the Defendants are charged, ordering a bill of particulars is not necessary.").

20

Mattia claims to be confused about which prescriptions are "false and fraudulent."  But the Government laid out the false and fraudulent claims clearly in the Superseding Indictment.  *See* Sup. Ind. ¶ 4(g).  The Government also produced the underlying prescriptions for these precise claims.  Of course, the Government is not required to lay out each and every fraudulent act within the timeframe of a conspiracy.  *See United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge.").  Nonetheless, the Government has in fact laid out numerous examples of false and fraudulent prescriptions.  *See* Sup. Ind. ¶ 4(g) (listing prescriptions filled on April 4, 2016, April 29, 2016, June 28, 2016, and July 25, 2016).

Thus, Mattia has been put on notice of his alleged conduct.  Forcing the Government to provide a bill of particulars would serve no purpose but to "unduly limit" the government's evidence at trial.  *See United States v. Politi*, 334 F. Supp. 1318, 1321 (S.D.N.Y. 1971), *aff'd*, 516 F.2d 897 (2d Cir. 1975).

### 2.    Cash and check payments

Mattia again seeks information far beyond what Rule 7 requires.  As already explained, there is no requirement for the Government to spell out every overt act of the defendant during the timeframe of the conspiracy.  *See Carroll*, 510 F.2d at 509.  In the same vein, the Government need not particularize the precise role played by the defendant in the formation or execution of a conspiracy.  *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980), *aff'd in part, rev'd in part on other grounds*, 688

F.2d 919 (3d Cir. 1982) ("[N]or is it necessary for the Government to disclose in a bill of particulars the precise details that a defendant and his alleged co-conspirators played in forming and executing a conspiracy or all the overt acts the Government will prove in establishing the conspiracy"); *see also United States v. Politi*, 334 F. Supp. 1318, 1321 (S.D.N.Y. 1971), *aff'd*, 516 F.2d 897 (2d Cir. 1975) (a request for specific involvement of each conspirator is "evidentiary" and granting such a request would "unduly limit" the government).

Here, Mattia seeks specific amounts and dates on which he paid bribes to Individual-1. The Government has already produced in discovery at least one example of a monetary payment made by Mattia to Individual-1.  Nothing else is required by law.  *United States v. Vaid*, No. 16 CR. 763, 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017) (denying defendants' request for the amount of money allegedly paid as kickbacks and the date of each payment because they impermissibly seek evidentiary detail or an attempt to use the bill of a particulars as a general investigative tool).  Thus, Defendant's request for additional particulars should be denied.

### 3.    The identity of Mattia's co-conspirators.

Mattia also seeks the identity of all persons alleged to have participated in the conspiracy with him.  Def. Omnibus Br. at 30-32.  Virtually all of this information is contained in the thorough and organized discovery that has already been produced.  Those materials include FBI 302s that provide the unredacted names of potential witnesses.

Additionally, to the extent that not all of the co-conspirators are identified through the discovery already produced, the law does not require such information in a bill of particulars. "'It is well settled that courts are 'highly reluctant to require a bill of particulars when defendants have asked for specific identities of coconspirators.'" *United States v. Smukler*, 330 F. Supp. 3d 1050, 1066 (E.D. Pa. 2018) (citation omitted). One court specifically declined the defendants' request "to require the government to make legal conclusions as to numerous individuals who were peripherally involved in this matter." *United States v. Mariani*, 7 F. Supp. 2d 556, 560-61 (M.D. Pa. 1998). Numerous other courts in this circuit have denied requests that the government identify unindicted co-conspirators or persons identified as "others" in the indictment. *See, e.g., United States v. Cook*, 2018 WL 1744682, at *2 (M.D. Pa. April 11, 2018) ("We find that from the indictment, the defendant knows fully, directly and expressly, without any uncertainty or ambiguity ... all the elements necessary to constitute the offence intended to be punished" and denying defendant's request for the identities of co-conspirators) (internal quotation marks omitted); *Atwell*, 2015 WL 2092687, at *5; *United States v. Depiro*, 2013 WL 663303, at *5 (D.N.J. Feb. 20, 2013) (declining request for "the identity of all unindicted co-conspirators and aiders and abettors"); *United States v. Knight*, 2013 WL 3367259, at *4-5 (E.D.P.A. July 3, 2013) (rejecting request to identify co-conspirators and persons identified as "others" in the indictment); *United States v. Delle Donna*, 552 F. Supp. 2d 475, 498 (D.N.J. 2008) (declining request for bill of particulars identifying all persons who participated in the offenses); *United States v. Sampson*, 2012 WL

214707, at *3 (M.D. Pa. Jan. 24, 2012) (denying request because defendant had witness interviews and plea agreements of several co-conspirators); *see also United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others involved."). This request should be denied as well.

## V. MATTIA'S MOTION TO STIKE SURPLUSAGE IN THE SUPERSEDING INDICTMENT SHOULD BE DENIED.

Here, Mattia seeks to strike the following language from the Superseding Indictment: (1) references to "others"; (2) references to cash payments and any check payments not specifically identified; and (3) references to any individuals beyond Individual-1 who Mattia recruited to obtain compounded medications. Def. Omnibus Br. at 9-10. Again, this motion should be denied.

Motions to strike surplusage are rarely granted. *United States v. Alsugair*, 256 F. Supp. 2d 306, 317 (D.N.J. 2003); *see also United States v. Pharis*, 298 F.3d 228, 248 (3d Cir. 2002) (Cowen, J., dissenting) ("[T]he scope of a district court's discretion to strike material from an indictment is narrow." (internal quotation marks omitted)). Only in extremely rare instances where language is both irrelevant and immaterial, may a district court strike it. *See United States v. Hedgepeth*, 434 F.3d 609, 611-12 (3d Cir. 2006).

None of Mattia's requests meet the Third Circuit's standard to strike information from a charging document. First, there will be evidence at trial sufficient

to support each of the following contentions: (1) that Mattia worked with other unnamed co-conspirators, (2) that Mattia made multiple payments to Individual-1; and (3) that Mattia obtained a commission on any medications ordered by individuals he recruited. As to #3, the Government is not contending that Mattia engaged in the charged fraud scheme with respect to other individuals. However, the payment structure he had with the Mattia Compounding Pharmacies was not dependent on only Individual-1 and therefore the paragraphs outline that structure more generally and refer to "individuals" as plural. This language is not prejudicial or irrelevant, and thus should not be stricken. *Alsugair*, 256 F. Supp. 2d at 317 ("The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment.").

## VI.  MATTIA'S *BRADY*, *GIGLIO* AND RELATED DISCOVERY MOTIONS SHOULD BE DENIED.

Mattia requests an order directing the Government to disclose all Rule 16 discovery, *Giglio* and *Brady* material in its possession. Def. Omnibus Br. at 36. The Government is well aware of its obligations under *Brady v. Maryland*, 373 U.S. 8 (1963), which requires the Government to turn over, at the earliest possible time, any "evidence favorable to an accused . . . material either to guilt or to punishment." *Id.* at 87. The Government's productions to date have included all materials in its possession that could arguably constitute *Brady* material. Should any additional exculpatory material come into the Government's possession, it will be disclosed promptly. No order requiring the Government to meet its obligations is necessary.

Similarly, the Government has gone above and beyond the requirements of Federal Rule of Criminal Procedure 16. As defense counsel is no doubt aware, agent notes of witness interviews, unless they constitute *Brady* material, do not fall under Rule 16. In fact, these notes and their corresponding 302s would not be discoverable unless the agent who wrote them testifies at trial pursuant to the Jencks Act. *See United States v. Whitted*, No. CR 05-598-02, 2007 WL 9754085, at *3 (E.D. Pa. Apr. 11, 2007). Nonetheless, the Government has produced dozens of reports and agent notes, above and beyond what Rule 16 requires. This Court should not require the Government to comply with defense counsel's incorrect interpretation of Rule 16. *United States v. Li*, No. 3:16-CR-194, 2017 WL 590275, at *7 (M.D. Pa. Feb. 14, 2017) (finding that "the Government cannot be compelled to disclose Jencks material before the relevant government witness testifies on direct examination" and denying Defendant's request that the Government produce "notes made by witnesses or government agents which do not constitute either Jencks or *Brady* material.").

Finally, the Government is also well aware of its obligation to disclose any *Giglio* information that goes to the credibility of prosecution witnesses. *See Buehl v. Vaughn*, 166 F.3d 163, 181 (3d Cir. 1999). Consistent with these obligations and an anticipated final scheduling order setting forth a date for *Giglio* disclosures, *see* Standing Order 15-2 at ¶ 19, the Government will disclose any *Giglio* material related to Government witnesses at the appropriate time. Generally, *Giglio* material must be turned over "in time for its effective use at trial." *United States v. Coles*, No. 1:16-CR-212, 2021 WL 65992, at *6 (M.D. Pa. Jan. 7, 2021) (quoting *United States v. Higgs*,

26

713 F.2d 39, 42 (1983)). "For material that will primarily be used to challenge witness credibility on cross-examination, the government meets its obligation if 'disclosure is made **the day** that the government witnesses are scheduled to testify in court.'" *Id.* (internal citations omitted) (emphasis added). Nonetheless, the Government intends to disclose any *Giglio* material in its possession at least two weeks prior to trial.[3] Therefore, Mattia's motion for *Giglio* material should be denied as premature, and no order requiring the Government to meet its obligations under either *Brady* or Rule 16 is necessary.

## VII.   MATTIA'S MOTION FOR AN EXPERT REPORT FROM DR. AGRESTI SHOULD BE DENIED.

Mattia argues that the testimony the Government intends to elicit from Dr. Agresti constitutes expert testimony and therefore an expert report should be produced. Def. Omnibus Br. at 12. Specifically, Mattia cites to Dr. Agresti's testimony as to the "nature of compounded medications." *Id.* As discussed below, the Government's anticipated testimony from Dr. Agresti is lay testimony and requires no expert report.

Rule 602 provides that "a witness may testify to a matter only if . . . the witness has personal knowledge of the matter." Under Rule 701, a lay witness may provide opinion testimony if it is "(a) rationally based on the perception of the witness,

---

[3] There is no basis in Third Circuit law for this Court to issue an order directing the Government to turn such material over **8 weeks** in advance of trial, as requested by Mattia. The Government has no objection to providing Rule 404(b) notice to Mattia 8 weeks before trial.

27

(b) helpful to a clear understanding of the witness's testimony or the determination of the fact in issue, and (c) not based on scientific, technical, or other specialized knowledge."

Here, Dr. Agresti is a medical doctor who prescribed compounded medications for years. Through this experience, he learned about the procedures surrounding prescribing compounded medications, including the FDA's rules and pharmacists' practices. Therefore, the Government intends to have Dr. Agresti testify to (1) what he understood compounding to be; and (2) the fact that compounded drugs were not approved by the FDA. He will be testifying about facts based on his personal knowledge. That is clearly permitted under Rules 602 and 701. *See, e.g.*, *Weese v. Schukman*, 98 F.3d 542 (10th Cir. 1996) (defendant physician in medical malpractice action arising from treatment for carbon monoxide poisoning, who admitted he was not an expert on carbon monoxide poisoning, could nonetheless testify as lay witness regarding standard of care and causation; any opinions offered by physician were based on his experience as physician and were clearly helpful to an understanding of his decision-making process in the situation, thus meeting standard for admissibility of lay witness testimony); *United States v. Oms-Rivera*, 422 F. Supp. 3d 482 (D.P.R. 2019) (in criminal prosecution arising out scheme to defraud the Social Security Administration (SSA), proffered testimony from SSA program specialist regarding SSA regulations, template analysis, and loss calculations, and from private insurance representatives regarding billing practices, medical provider contracts, Medicare regulations, and fraud detection, was admissible as lay opinion testimony; testimony

28

did not involve scientific, technical, or other specialized knowledge, but was based on applying familiar reasoning processes to witnesses' job experiences); *Fecho v. Eli Lilly & Co.*, 914 F. Supp. 2d 130 (D. Mass. 2012) (finding surgeon's lay opinion testimony about the standard medical practices in community of sharing warnings with patients could be admissible as habit evidence to show the practice of the small group of doctors in the local community).

Contrary to Mattia's arguments, the Government does not plan to elicit *any* expert testimony from Dr. Agresti. Instead, it plans to elicit factual information about his knowledge of the drugs that he prescribed. The Government reserves its right to elicit lay opinion from Dr. Agresti and other medical professionals, if necessary, consistent with the Rules of Evidence. This Court should therefore deny Mattia's motion.[4]

## VIII. MATTIA'S REQUEST TO SUPRESS MATERIALS OBTAINED PURSUANT TO AN 18 U.S.C. § 2703(d) ORDER SHOULD BE DENIED.

18 U.S.C. § 2703(c) allows a governmental entity to obtain information from a service provider by means of a court order if it "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." *Id.* § 2703(d) [the "Stored

---

[4] Additionally, given that Mattia has not provided expert notice in this matter, the Government respectfully requests that the Court reserve ruling on all expert issues until after Mattia has decided whether he will call an expert. At that time, the Government may wish to bring in a rebuttal expert.

Communications Act"]. This statutory standard, however, "falls well short of the probable cause required for a warrant." *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018); *United States v. Pleasant*, Crim. No. 17-62, 2018 WL 4252632, at *1 (E.D. Pa. Sept. 5, 2018).

Here, the Government sought a § 2703(d) order of Mattia's Yahoo account based on the following facts:

- "Through the investigation, law enforcement has learned that Carmine Mattia ("Mattia") paid individuals to obtain prescriptions for compounded medications that they did not need. Mattia was himself paid by the compounding pharmacies as well as by other co-conspirators who had recruited him to the scheme for each prescription that resulted from his efforts. Law enforcement has also learned that Mattia used the Target Account in furtherance of the scheme." Exhibit 1, ¶ 5.

- "For example, a confidential source ("CS-1") told law enforcement that Mattia and CS-1 agreed that CS-1 would receive $100 per month per compounded medication that CS-1 agreed to order. CS-1 told law enforcement that Mattia arranged for CS-1 to speak with and meet with doctors, and Mattia told CS-1 that CS-1 should order between three and five compounded medications from the doctors. Mattia also agreed to pay any co-pays CS-1 incurred for the compounded medications in addition to the $100 per medication per month." *Id.* ¶ 6.

- "CS-1 told law enforcement that Mattia asked CS-1 to provide him with a picture of CS-1's insurance card. Law enforcement has obtained an email from Mattia at the Target Account to himself at the Target Account. The email contains a screenshot of CS-1's insurance information." *Id.* ¶ 7.

This information cited above is certainly sufficient to meet the standard for "specific and articulable facts showing that there are reasonable grounds to believe that the . . . information sought, are relevant and material to an ongoing criminal investigation." Moreover, even if this Court did find a violation of the Stored

30

Communications Act, it would not warrant suppression.[5] *See* 18 U.S.C. § 2708 (civil damages and criminal penalties "are the only judicial remedies and sanctions for violations of" the Stored Communications Act); *United States v. Perrine*, 518 F.3d 1196, 1202 (10th Cir. 2008) ("[V]iolations of the [the Stored Communications Act] do not warrant exclusion of evidence."); *see United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (noting that the Stored Communications Act expressly rules out exclusion as a remedy); *Bansal v. Russ*, 513 F. Supp. 2d 264, 282 (E.D. Pa. 2007) ("[T]he exclusionary rule is not a remedy provided for by the Act").   Therefore, there is no basis in law to suppress the evidence obtained from the § 2703(d) order because (1) the Government provided specific and articulable acts justifying the order; (2) a magistrate judge agreed and signed the order; and (3) even if there was a violation, suppression is not a remedy.   Mattia's motion to suppress should be denied.

---

[5] Even if a violation of the ECPA did warrant suppression, which is does not, the lack of a temporal limitation would not be fatal.  *United States v. Bucuvalas*, 970 F.2d 937, 942 n.7 (1st Cir. 1992) (holding that time limitations "are but one method of tailoring a warrant description to suit the scope of the probable cause showing"); *United States v. Jacobson*, 4 F. Supp. 3d 515, 526 (E.D.N.Y. 2014) (warrant without temporal limit upheld under particularity standard); *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 38 (D. Conn. 2002) ("A temporal limitation in a warrant is not an absolute necessity but is only one indicia of particularity.").

## IX.   MATTIA'S MOTION FOR GRAND JURY MATERIALS SHOULD BE DENIED BECAUSE HE HAS NOT MADE A PRELIMINARY SHOWING OF ABUSE OF THE GRAND JURY PROCESS.

Mattia's final argument is that the Government abused the grand jury process and therefore seeks disclosure of otherwise protected grand jury material.   Def. Omnibus Br. at 46-49.   In particular, Mattia notes that there was a grand jury subpoena issued to Verizon Wireless on July 22, 2021, with a return date of July 30, 2021.   The Indictment in this matter was returned on July 26, 2021.   However, as discussed in greater detail below, this subpoena was sent for the investigation related to obstruction charges, which were added to a Superseding Indictment in April 2022. Therefore, this was a proper use of the grand jury process.

The longstanding rules preserving grand jury secrecy are well established. *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997).   Federal Rule of Criminal Procedure 6(e) prohibits the disclosure of any information that would reveal "matters occurring before the grand jury or other grand-jury matters."   Rule 6(e) does not cover all information developed during the course of a grand jury investigation, but only information that would reveal the strategy or direction of the investigation or the nature of the evidence produced before the grand jury.   *Id.*   This includes subpoenas issued to Government witnesses and third parties.   *See United States v. Fieger*, 2007 WL 4098149, *2 (E.D. Mich. 2007) (defendants' discovery demand for grand jury subpoenas issued to banks denied because they were matters occurring before grand jury, and, thus, disclosure controlled by Rule 6(e) and defense made no showing of a "particularized need"); *United States v. Diaz*, 236 F.R.D. 470, 480 (N.D. Ca. 2006)

(defendant not entitled to copy of subpoenas for documents, list of exhibits, or list of persons to whom grand jury materials were disclosed as all are "matters occurring before the grand jury").

Under Rule 6(e)(3)(E)(ii) a court may allow the disclosure of matters occurring before a grand jury "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, a presumption of regularity attaches to grand jury proceedings. *United States v. Capozzi*, 486 F.3d 711, 726-27 (1st Cir. 2007). Thus, a defendant must establish a particularized need of disclosure of grand jury records. *See United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972) (permitting grand jury disclosures only "when it relates to the dismissal of the indictment" "or upon a showing of substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury"); *United States v. Arberry*, No. 06-CR-278, 2007 WL 964354, at *4 (E.D. Wis. Mar. 27, 2007) (holding that a "strong showing of particularized need" is needed to overcome the secrecy of grand jury proceedings and that the party seeking disclosure "must demonstrate more than relevance; he must show necessity to prevent injustice."). Abuse of the grand jury occurs when evidence is obtained "for the primary purpose of strengthening the government's case on a pending indictment or as a substitute for discovery." *Resol. Tr. Corp. v. Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994). A defendant who alleges such inappropriate use of a grand jury bears the burden of demonstrating "that the sole or dominant purpose of seeking the evidence post indictment is to prepare for the pending trial." *United States v. Bissell*, 954 F.

33

Supp. 841, 877 (D.N.J. 1996), *aff'd*, 142 F.3d 429 (3d Cir. 1998) (quoting *In re Grand Jury Proc.*, 632 F.2d 1033, 1041 (3d Cir. 1980)).  However, the grand jury may be used if its investigation is related to a superseding indictment of additional defendants or additional crimes by an indicted defendant.  *Id.*  If the sole or dominant purpose of a post-indictment grand jury subpoena is proper, *i.e.,* is to obtain evidence against uncharged persons or of uncharged crimes, evidence produced pursuant to the subpoena can be used at trial to prove the charges contained in the original indictment. *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001); *see also United States v. Wadlington*, 233 F.3d 1067, 1074 (8th Cir. 2000); *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994).

Mattia's argument rests on the faulty assumption that the subpoena issued with the return date of July 30, 2021, was for the primary purpose of strengthening the already pending indictment.  But his speculation is wrong.  Instead, the primary purpose of the July 30 subpoena was for a superseding indictment on the obstruction-related charges.  The records requested in the subpoena dealt with a date range from September 2016 to September 2019, months after the last prescription was filled on the underlying health care fraud charges.  Moreover, the Government did in fact supersede the Indictment in April 2022 to add two counts for witness tampering and obstruction of a health care investigation.  Sup. Ind. at 8-9.  Thus, there was no abuse of the grand jury process, and Mattia has failed to meet his burden of showing any particularized need for the requested disclosure.

## X.      THE GOVERNMENT MOVES FOR RECIPROCAL DISCOVERY.

In a letter to defense counsel, dated August 11, 2021, the Government sought reciprocal discovery.  The Government's right to such discovery is firmly established in the language of Rules 16(b)(1)(A) and (B).  In particular, Rule 16(b) allows the Government, upon complying with a request by a defendant for similar material, to "[i]nspect and copy or photograph books, papers, documents, photographs, tangible objects . . . which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at trial."  Fed. R. Crim. P. 16(b).

To date, Mattia has not produced any reciprocal discovery in this matter.  The Court should direct Mattia to produce any discovery in its possession under Rule 16(b).

35

## **CONCLUSION**

For the foregoing reasons, this Court should deny Mattia's motions in their entirety.  The Court should grant the Government's request for reciprocal discovery as required by Fed. R. Crim. P. 16(b).

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:    /s/ Emma Spiro
Emma Spiro
Assistant United States Attorney

Dated: August 1, 2022
Newark, New Jersey

cc:    Amy Luria, Esq.
Michael Critchley, Esq.

36