<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CARMINE A. MATTIA, JR., <br><br> Defendant. | Case No. 2:21-cr-00576 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**[1]

Before the Court are two motions: Defendant Carmine A. Mattia, Jr.'s ("Defendant") Motion to Dismiss (ECF No. 22) Counts 1 through 4 of the Superseding Indictment (ECF No. 15), and Defendant's Omnibus Motion (ECF No. 23). The United States of America (the "Government") filed a joint opposition to Defendant's Motion to Dismiss and Defendant's Omnibus Motion. (ECF No. 27.) Defendant filed a reply in further support of his Motion to Dismiss (ECF No. 30), and a separate reply in further support of his Omnibus Motion (ECF No. 31). With the Court's permission, Defendant later filed a supplemental letter in further support of his motions (ECF No. 58), and the Government filed a supplemental letter in further opposition to Defendant's motions (ECF No. 59). Having reviewed the parties' submissions filed in connection with Defendant's motions and having held oral argument,[2] for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss (ECF No. 22) is **GRANTED**, and

---

[1] On October 31, 2023, this action was reassigned to the undersigned from The Honorable Kevin McNulty, U.S.D.J. (ECF No. 48.)

[2] Judge McNulty held oral argument for Defendant's motions back on October 25, 2022. (ECF Nos. 33, 41.) After this action was reassigned to the undersigned on October 31, 2023, with these motions still pending, the Court held a second oral argument for Defendant's motions on April 10, 2024. (ECF Nos. 56, 57.)

Defendant's Omnibus Motion (ECF No. 23) is **DENIED WITHOUT PREJUDICE** and with leave to refile as applicable and in accordance with this Opinion.

I. **BACKGROUND**

On July 23, 2021, a grand jury returned an Indictment against Defendant, charging him with three counts of health care fraud and one count of conspiracy to commit health care fraud. (ECF No. 1.) Subsequently, on April 8, 2022, a grand jury returned a Superseding Indictment against Defendant, charging him with six counts: one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1); three counts of health care fraud in violation of 18 U.S.C. § 1347 and § 2 (Counts 2 through 4); one count of witness tampering in violation of 18 U.S.C. § 1512(b)(3) (Count 5); and one count of obstruction of health care investigation in violation of 18 U.S.C. § 1518 (Count 6). (ECF No. 15.) Specifically, Defendant was charged with "knowingly and intentionally conspir[ing] and agree[ing] with others to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program" by causing "false and fraudulent insurance claims" to be submitted to a health care plan for "medically unnecessary" compounded prescription medications for one person ("Individual-1"). (*Id.*)

For purposes of addressing Defendant's pretrial motions, the Court accepts the factual allegations set forth in the Superseding Indictment as true.³ *See United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). During the time relevant to the Superseding Indictment, Defendant worked both as an employee of, and union representative for, a telecommunications company, and as a sales representative selling various compounded medications for a marketing company and

---

³ However, the Court does not herein discuss the factual allegations related to Counts 5 and 6 of the Superseding Indictment because those counts are not at issue in Defendant's motions.

compounding pharmacies (the "Compounding Pharmacies").[4] (ECF No. 15 at 1, 4.) The Compounding Pharmacies obtained payment from the telecommunications company's health care plan (the "Health Plan"), through a pharmacy benefit management company ("PBM-1"), for compounded medications ordered by individuals whom Defendant recruited. (*Id.* at 2–4.) The Superseding Indictment alleges that "[f]rom at least as early as in or around April 2016 through in or around July 2016," Defendant gave Individual-1 cash and check payments to induce and persuade him to obtain "medically unnecessary" compounded prescription medications from the Compounding Pharmacies, "including, but not limited to, prescriptions that were filled on or about April 4, 2016, April 29, 2016, June 28, 2016 and July 25, 2016."[5] (*Id.* at 3–5.) Defendant allegedly bribed Individual-1 to get these "medically unnecessary" prescriptions in order to increase his profits as a sales representative and receive money from the Compounding Pharmacies. (*Id.*)

The Superseding Indictment also alleges Defendant "secured and caused to be secured" Dr. Robert Agresti's signature on prescription forms for Individual-1[6] even though (1) Individual-1

---

[4] Defendant is not a physician and has no medical training. (*See* ECF No. 15; ECF No. 22-1 at 4, 10.)

[5] Counts 2 through 4 of the Superseding Indictment solely relate to three prescriptions allegedly filled on July 25, 2016. (ECF No. 15 at 7.) The other prescriptions that were allegedly filled in or around April 2016 and June 2016 only appear in Count 1 of the Superseding Indictment. (*See id.* at 1–6.)

[6] It is unclear from the face of the Superseding Indictment specifically how Dr. Agresti's signature came to appear on the prescription forms for Individual-1. For example, the Superseding Indictment does *not* allege Defendant ever had any direct interaction with Dr. Agresti and likewise does *not* allege that Defendant asked or bribed Dr. Agresti to sign these prescriptions. Rather, it simply alleges Defendant "secured and caused to be secured" Dr. Agresti's signature on the prescription forms; it does not explain how Dr. Agresti's signature ended up on the prescription forms or when, *e.g.*, whether this occurred before or after Defendant bribed Individual-1. Further, at the April 10, 2024 oral argument, the Government asserted that its understanding was that Defendant "never personally interacted with either the pharmacy, the doctor, or the benefits manager" but rather Defendant's interactions were just with Individual-1. (ECF No. 57 at 16–17.) Defense counsel similarly represented to the Court that Defendant "did not work for the

3

did not have a "doctor/patient relationship" with Dr. Agresti; (2) Dr. Agresti did not determine Individual-1 had a "medical necessity" for the prescriptions; and (3) Dr. Agresti did not examine Individual-1. (ECF No. 15 at 5.) The Health Plan was subsequently billed for these "medically unnecessary" compounded medications for Individual-1, and Defendant received a percentage of the amount the Health Plan paid for these medications. (*Id.* at 3–4.) The Superseding Indictment further alleges that a goal of the conspiracy was for Defendant and unidentified "others" to fraudulently obtain money through commissions "by causing the submission of Individual-1's false and fraudulent insurance claims for compounded prescription medications to the [Health Plan.]" (*Id.*)

Defendant pleaded not guilty to all six counts in the Superseding Indictment. (ECF No. 18.) On May 19, 2022, Defendant filed a Motion to Dismiss Counts 1 through 4 of the Superseding Indictment. (ECF No. 22.) On the same day, Defendant also filed an Omnibus Motion requesting the Court issue an Order for the following: (1) "[p]ermitting him to serve certain Rule 17(c) subpoenas"; (2) "[r]equiring the production of a bill of particulars"; (3) "[s]triking surplusage from the Superseding Indictment"; (4) "[r]equiring the immediate production of all Rule 16 and *Brady* material"; (5) "[r]equiring the production of all *Giglio* [material] at least eight weeks in advance of the commencement of trial"; (6) "[r]equiring the identification of all 404(b) and uncharged criminal acts evidence at least eight weeks in advance of the commencement of trial"; (7) "[r]equiring the immediate production of the agent rough notes for the FBI 302s already produced by the Government"; (8) "[r]equiring the immediate production of the FBI 302s that correspond with all agent rough notes that have already been produced by the Government"; (9) "[r]equiring

---

pharmacy[,]" he "did not have any interaction with the doctor and he did not have any interaction with the PBM, nor was he the one who submitted any of the prescriptions or any of the claims." (*Id.* at 17.)

the Government to produce an expert report and curriculum vitae for Dr. Robert Agresti"; (10) "[r]equiring the Government to identify all additional expert witnesses immediately, and to immediately produce these experts' reports and curriculum vitae"; (11) "[s]uppressing the materials obtained pursuant to the 18 U.S.C. § 2703(d) order"; (12) "[r]equiring the production of any grand jury subpoenas issued with return dates after the expiration of the grand jury with regard to the health care fraud-related charges"; (13) "[r]equiring the identification of any documents received pursuant to a grand jury subpoena after expiration of the grand jury with regard to the health care fraud-related charges"; and (14) "[s]uppressing all materials obtained by the grand jury in violation of the grand jury process." (ECF No. 23.) On August 1, 2022, the Government filed a joint opposition to Defendant's Motion to Dismiss and Defendant's Omnibus Motion. (ECF No. 27.) On September 21, 2022, Defendant filed a reply in further support of his Motion to Dismiss (ECF No. 30), and separately filed a reply in further support of his Omnibus Motion (ECF No. 31). On October 25, 2022, The Honorable Kevin McNulty, U.S.D.J., held oral argument for these motions. (ECF Nos. 33, 41.) On November 1, 2022, in response to Judge McNulty's request during oral argument, Defendant filed a supplemental letter in further support of his request for a Rule 17(c) subpoena for Individual-1's mental health records (ECF No. 34), and the Government filed a supplemental letter regarding a definition of "medical necessity" and what it intends to prove at trial (ECF No. 35). On November 9, 2022, Defendant and the Government filed letters in response to each other's November 1, 2022 supplemental letters. (ECF Nos. 37, 38.) On October 31, 2023, this action was reassigned to the undersigned from The Honorable Kevin McNulty, U.S.D.J. (ECF No. 48.) Defendant's motions remained pending at the time of this reassignment.

The Court held a second oral argument for Defendant's motions on April 10, 2024. (ECF Nos. 56, 57.) With the Court's permission, on April 24, 2024, Defendant filed a supplemental letter

in further support of his motions (ECF No. 58), and the Government filed a supplemental letter in further opposition to Defendant's motions (ECF No. 59).

**II.    LEGAL STANDARD**

"A motion to dismiss a criminal indictment [or certain counts therein] may be brought at any time before trial." *United States v. Hoffert*, No. 18-00073, 2018 WL 4829032, at *2 (W.D. Pa. Oct. 4, 2018), *aff'd*, 949 F.3d 782 (3d Cir. 2020) (citing Fed. R. Crim. P. 12(b)(3)). "In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *Besmajian*, 910 F.2d at 1154. Federal Rule of Criminal Procedure 7(c)(1) provides an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "While detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1)[.]" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). Rather, the Third Circuit has stated:

> [A]n indictment [is] sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."

*United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (alterations in original) (quoting *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007)). "Moreover, 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)).

Federal Rule of Criminal Procedure 12(b)(3)(B) "permits a criminal defendant to move for

the pre-trial dismissal of an indictment as defective if it, *inter alia*, lacks specificity or fails to state an offense." *United States v. Totoro*, No. 15-00291, 2017 WL 3189216, at *2 (E.D. Pa. July 27, 2017) (citing Fed. R. Crim. P. 12(b)(3)(B)(iii), (v)). "A district court may grant a pretrial motion to dismiss an indictment if the indictment's allegations do not suffice to charge an offense." *United States v. Jones*, 299 F. App'x 187, 189 (3d Cir. 2008). "To determine whether an indictment 'contains the elements of the offense intended to be charged,' a district court may look for more than a mere 'recit[ation] in general terms [of] the essential elements of the offense." *Bergrin*, 650 F.3d at 264 (alterations in original) (citation omitted). "A district court must find that 'a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" *Id.* at 264–65 (citation omitted). Additionally, "if an indictment fails to charge an essential element of the crime, it fails to state an offense." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citing *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979)).

Ordinarily, however, "the court may not predicate such a dismissal upon the insufficiency of the evidence to prove the indictment's charges." *Jones*, 299 F. App'x at 189. "A ruling on a motion to dismiss is not [] 'a permissible vehicle for addressing the sufficiency of the government's evidence.'" *Bergrin*, 650 F.3d at 265 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000)). "'Evidentiary questions'—such as credibility determinations and the weighing of proof—'should not be determined at th[is] stage.'" *Bergrin*, 650 F.3d at 265 (alteration in original) (quoting *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir. 1979)); *see also DeLaurentis*, 230 F.3d at 660–61 ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence. Federal Rule of Criminal Procedure 12(b)(2)

7

authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." (citations omitted)).

### III.    DECISION

#### A.    Defendant's Motion to Dismiss

Defendant argues Counts 1 through 4 of the Superseding Indictment must be dismissed for two main reasons: (1) those four counts do not sufficiently allege violations of the health care fraud statutes and therefore must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)[7] for failure to state an offense in that they fail to identify any misstatement or omission made by anyone and fail to state what specifically in the claims submitted to the insurance carrier was false and fraudulent; and (2) the health care fraud statutes alleged in those counts are unconstitutionally vague, as applied to the facts of this case, based on the vague, elastic term "medically unnecessary" in the Superseding Indictment. (ECF No. 22-1; *see also* ECF Nos. 30, 58.) Defendant contends it would not be premature for the Court to decide the void-for-vagueness issue now because a further factual record is not needed based on the speaking Superseding Indictment and the Government's "assertions that: (1) the insurance claims were 'false and fraudulent' because the medications were 'medically unnecessary'" and (2) the prescriptions were "medically unnecessary" due to the lack of a "doctor-patient relationship." (ECF No. 30 at 13–14.) Additionally, Defendant asserts the Government "has been unable to provide a[ny] definition of 'medically unnecessary' and/or 'medical necessity'" in the nearly three years since the return of the Superseding Indictment (ECF

---

[7] Federal Rule of Criminal Procedure 12(b)(3)(B) provides that a defect in the indictment—including "lack of specificity" and "failure to state an offense"—"must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(B).

8

No. 58 at 6–7) and that "nothing is going to change at the time of trial." (ECF No. 57 at 20).[8]

The Government argues Defendant's Motion to Dismiss should be denied because: (1) the Superseding Indictment sufficiently states an offense as it lays out the elements of the crime and states facts regarding the alleged healthcare fraud—*i.e.*, "that [Defendant] convinced Individual-1 to get prescriptions through bribes and secured Dr. Agresti's signature on those prescriptions without any doctor-patient relationship" and "caus[ed] fraudulent prescriptions to be submitted to an insurance company"—which is beyond what Federal Rule of Criminal Procedure 7(c)(1) requires; and (2) Defendant's as-applied void-for-vagueness challenge is premature at this stage because "it would require judicial review of a factual record which has not yet been created" and, in any event, Defendant's actions fall within the healthcare fraud statute's reach. (ECF No. 27 at 1–11; *see also* ECF No. 59.)

Section 1349 prohibits attempting or conspiring to commit health care fraud. 18 U.S.C. § 1349. To prove a violation of § 1349, "the government must show '(1) a conspiracy existed; (2) the defendant knew of it; and (3) the defendant knowingly and voluntarily joined it.'" *United States v. Savani*, No. 23-00016, 2024 WL 2383951, at *2 (E.D. Pa. May 23, 2024) (quoting *United States v. Scarfo*, 41 F.4th 136, 198 (3d Cir. 2022)). Relatedly, Section 1347 prohibits:

---

[8] At the April 10, 2024 oral argument, defense counsel also represented to the Court that they received from the Government three prescriptions from Dr. Agresti but have not received any insurance claims from the Government, nor will they ever receive the insurance claims because the Government does not have them. (ECF No. 57 at 7, 20–21.) At the October 25, 2022 oral argument, defense counsel stated they received from the Government "a spreadsheet of purported insurance claims that have been submitted"—"a spreadsheet purportedly from Express Scripts that says prescription date, prescription number, and paid on X date"—but that they have not received the insurance claims themselves or any other documents showing what claims were submitted to the Health Plan. (ECF No. 41 at 5, 34–35.) The Government stated they produced what they have and to the extent Defendant is looking for something other than that (*i.e.*, the spreadsheet and the prescriptions, but not the insurance claims themselves), the Government does not have it. (*Id.* at 36.)

> knowingly and willfully execut[ing], or attempt[ing] to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services[.]

18 U.S.C. § 1347(a). "With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section." *Id.* § 1347(b). "[T]he crux of a violation [of 18 U.S.C. § 1347] is the defendant's acts of **misrepresentation** in connection with the delivery of, or payment for, health care benefits, items, or services." *United States v. McGill*, No. 12-00112, 2016 WL 8716240, at *11 (E.D. Pa. May 13, 2016) (emphasis added) (quoting *United States v. Jones*, 471 F.3d 478, 481–82 (3d Cir. 2006)). Additionally, the Third Circuit has stated a scheme to defraud "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978).[9] *See Jones*,

---

[9] *See also* Model Crim. Jury Instructions § 6.18.1347 (Health Care Fraud – Elements of the Offense (18 U.S.C. § 1347)), Comment, https://www.ca3.uscourts.gov/sites/ca3/files/2023Chap%206%20 Fraud%20Offenses%20final.pdf ("In addition to instructing the jury on the elements of the offense, the court should also give Instruction 6.18.1341-1 (Mail, Wire, or Bank Fraud – "Scheme to Defraud or to Obtain Money or Property" Defined)[.]"); *id.* § 6.18.1341-1 (Mail, Wire, or Bank Fraud – "Scheme to Defraud or to Obtain Money or Property" Defined) ("[A] 'scheme to defraud' is any plan, device, or course of action to deprive another of money or property *(or the intangible right of honest services)* by means of false or fraudulent pretenses, representations or promises reasonably calculated to deceive persons of average prudence. In this case, the indictment alleges that the scheme to defraud was carried out by making false *(or fraudulent)* statements *(representations) (claims) (documents)*. The representations which the government charges were made as part of the scheme to defraud are set forth in the indictment . . . . The government is not required to prove every misrepresentation charged in the indictment. It is sufficient if the government proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud. However, you cannot convict the defendant unless all of you agree as to at least one of the material misrepresentations. . . . The false or fraudulent representation *(or failure to disclose)* must relate to a material fact or matter. A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in

471 F.3d at 481–83 (holding the Government failed to establish the elements of health care fraud in violation of § 1347, and accordingly reversing conviction and vacating sentence where the Government "[did] not establish[], nor did it seek to establish, any type of misrepresentation by [the defendant] in connection with the delivery of, or payment for, health care benefits, items, or services"); *United States v. Paulus*, No. 15-00015, 2017 WL 908409, at *5 (E.D. Ky. Mar. 7, 2017), *rev'd in part, vacated in part, on other grounds*, 894 F.3d 267 (6th Cir. 2018) (stating that to convict the defendant under 18 U.S.C. § 1347 or § 1035, the Government had to prove, beyond a reasonable doubt, that the defendant's representation "constituted a false statement"; in other words, the Government had to "'identify a statement' that the defendant made 'which asserts a proposition that is subject to proof or disproof'" (citation omitted)).

Here, the Court finds the Superseding Indictment fails to sufficiently allege a conspiracy to commit health care fraud in violation of § 1349, and similarly fails to sufficiently allege health care fraud in violation of § 1347. The Superseding Indictment alleges that Defendant, a sales representative, knowingly and intentionally conspired and agreed with unidentified "others" to "knowingly and willfully execute a scheme and artifice to defraud a health care benefit program" and "to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property . . . in connection with the delivery of or payment for health care benefits, items and services." (ECF No. 15 at 3.) The Superseding Indictment further alleges that, as part of this conspiracy, or scheme, to defraud, Defendant: (1) bribed Individual-1 to get "medically unnecessary compounded medications"—namely, prescriptions filled on or about April 4, 2016, April 29, 2016, June 28, 2016 and July 25, 2016—by giving Individual-1 "cash and check payments"; (2) "secured and caused to be secured" Dr. Agresti's signature on prescription forms

---

making a decision *(describe relevant decision; e.g., with respect to a proposed investment)*.").

11

for Individual-1 even though (i) Individual-1 did not have a "doctor/patient relationship" with Dr. Agresti, (ii) Dr. Agresti did not determine Individual-1 had a "medical necessity" for the prescriptions, and (iii) Dr. Agresti did not examine Individual-1; and (3) caused "false and fraudulent insurance claims" to be submitted to the Health Plan for Individual-1's compounded prescription medications. (*See generally* ECF No. 15.) However, the Superseding Indictment does *not* allege: (1) any misrepresentation or false or fraudulent statement or omission by Defendant; (2) how the "false and fraudulent insurance claims" were "caused" to be submitted to the Health Plan and who submitted those claims; or (3) what, if any, false or fraudulent statements or misrepresentations appeared (or fraudulent omissions did not appear) on the "false and fraudulent insurance claims" that were purportedly submitted to the Health Plan, nor who made those statements, misrepresentations, or omissions. For example, the Superseding Indictment does *not* say Defendant falsely wrote or stated in the claim (or that Defendant bribed or forced Dr. Agresti to write or state in the claim) that the prescriptions for Individual-1 were "medically necessary" when they were not and then submitted that claim to the Health Plan for reimbursement. Other than tracking the language of § 1347 and § 1349, the Superseding Indictment does not even state more generally that a misrepresentation or omission was made to the Health Plan (or any other health care benefit program).

      The Government argues that "bribing a patient to receive medications and inducing a doctor to sign prescriptions[10] for those medications without (1) an exam; (2) any doctor-patient

---

[10] The Court notes the Superseding Indictment does not allege this fact—*i.e.*, that Defendant purportedly induced a doctor (whether Dr. Agresti or another unidentified doctor) to sign prescriptions. (*See generally* ECF No. 15.) Rather, it alleges that Defendant bribed Individual-1, not Dr. Agresti, and that Defendant "secured and caused to be secured the signature of [Dr.] Agresti[.]" (*Id.* at 5.) It does not allege any facts supporting that Defendant ever made any payments to, or otherwise bribed, Dr. Agresti or any other doctor in connection with the alleged health care fraud conspiracy.

relationship; or (3) any determination of medical necessity necessarily constitutes a 'fraudulent misrepresentation or omission' when the prescription is submitted to the insurer for reimbursement." (ECF No. 27 at 9.) The Government contends the Health Plan only paid for the prescriptions because of Defendant's "implicit representations that the prescriptions were legitimate[,] [b]ut those representations were false because they were based on bribes and bogus prescriptions." (*Id.*; *see also* ECF No. 59 at 5 ("In this case, [Defendant] facilitated false and fraudulent misrepresentations to the [Health Plan]. *Namely, those misrepresentations were that Dr. Agresti had examined Individual-1 and legitimately prescribed the compounded medication, when he had not done so, and that Individual-1 needed the medication*. . . . As a result, the [Health Plan] paid for the medication because of [Defendant's] fraudulent misrepresentations that the prescriptions were legitimate. Those representations were, of course, false because they were based on bribes and bogus prescriptions." (emphasis added)); ECF No. 57 at 14 (the Government arguing the fraud is "in the misrepresentation . . . to the insurance company" because Defendant bribed Individual-1 "to obtain a script from a doctor that he had no relationship with, never saw and never examined. It was never determined that he needed the pain cream or whatever kind of cream it was. That is the fraud."); *id.* at 15 (the Government contending "the fraud is in the misrepresentation to the insurance company through that prescription, which was filled and there was a reimbursement that was adjudicated before that"); *id.* at 23, 26 (the Government asserting "[t]he prescriptions themselves contain the fraudulent misrepresentation that Individual-1 needed this medication, because he never got a doctor to determine that he needed that medication. . . . [T]he misrepresentation [is] in the prescription saying that Individual-1 needs this medication. . . . That is where the fraud lies.").

Defendant, however, asserts that "nowhere in the Superseding Indictment, nor the

13

discovery provided, is there an allegation that [Defendant] made any representations, implicit or otherwise, that were transmitted to or relied upon by the insurance company." (ECF No. 30 at 6.[11]) Defendant also states "the Superseding Indictment does not allege, and nothing in the discovery provides, that prescriptions were ever submitted to the insurer." (*Id.* at 8.) Indeed, the Government does not contend that prescriptions were submitted to the Health Plan. Rather, as Defendant points out, the Superseding Indictment alleges that **"false and fraudulent insurance *claims*,"** not *prescriptions*, were submitted to the Health Plan. (*Id.*; ECF No. 15 at 3.)

Based on the foregoing, the Court finds the Superseding Indictment does not sufficiently allege a conspiracy to commit health care fraud nor substantive health care fraud. Specifically, the Superseding Indictment fails to sufficiently allege a scheme to defraud or health care fraud as it does not identify any false or fraudulent statement, misrepresentation, or omission by Defendant. The Government appears to argue the misrepresentation is an implicit false statement in the prescriptions reflecting that they were "medically necessary"[12] for Individual-1 when no doctor

---

[11] Defendant also asserts "the Government has failed to produce a single insurance claim, making it impossible to determine if there is, in fact, a statement or omission in the insurance claims that is false and fraudulent." (ECF No. 58 at 3.)

[12] The Court notes it is undisputed that "medically unnecessary" has no singular or static definition and accordingly appears to be a vague, elastic term that has different meanings based on context and other factors. For example, in *United States v. Merino*, the government alleged the object of the conspiracy "was a scheme to fraudulently bill Medicare for services not rendered or services that are not 'medically necessary.'" 846 F. App'x at 495. The *Merino* court noted that the government's contention that the defendant, "a 62-year-old woman who had no medical training, would have known which services were 'medically unnecessary'" was belied by its own Medicare witness's testimony, which "indicate[d] that detailed and complex regulations govern whether a service is 'medically necessary,' and even Medicare providers reasonably disagree about what those regulations require." *Id.* at 496. *See also* Nat'l Acad. for State Health Pol'y, *State Definitions of Medical Necessity under the Medicaid EPSDT Benefit* (Apr. 23, 2021), https://www.nashp.org/medical-necessity/ ("The federal statute does not define 'medical necessity' but rather describes a broad standard for coverage without providing a prescriptive formula for ascertaining necessity. . . . In March 2021, NASHP conducted a 50-state scan of

14

had determined that, but elsewhere the Government contends the misrepresentation was falsely implying the prescriptions for Individual-1 were legitimate when they were not; the misrepresentations "were that Dr. Agresti had examined Individual-1 and legitimately prescribed the compounded medication, when he had not done so, and that Individual-1 needed the medication"; there was a misrepresentation to the insurance company; and "[t]he prescriptions themselves contain the fraudulent misrepresentation . . . saying that Individual-1 needs this medication." (ECF No. 27 at 9; ECF No. 57 at 14–15, 23, 26; ECF No. 59 at 5.) However, even assuming, *arguendo*, these statements are true, the Superseding Indictment does not allege these facts and does not otherwise contain sufficient facts supporting these statements. For example, to the extent the Government contends health care fraud was sufficiently alleged because there was a false statement in the prescriptions themselves and/or the claims submitted to the Health Plan (or even a false *implicit* statement) stating that the prescriptions were "medically necessary" for Individual-1, that fact is not alleged in the Superseding Indictment. Additionally, there is unquestionably no singular or static definition for "medically unnecessary," rendering it a vague term, which can have different meanings depending on context. *See supra* n.12.

Instead, all the Superseding Indictment alleges is that Defendant bribed Individual-1 to get prescriptions that were allegedly "medically unnecessary," and separately somehow obtained Dr. Agresti's signature on those prescriptions, though it is unclear from the face of the Superseding Indictment when or how Dr. Agresti's signature came to appear on those prescriptions or whether Defendant even ever personally interacted or communicated with Dr. Agresti. Those facts, taken together, and absent additional facts, do not constitute a health care fraud conspiracy or health care

---

medical necessity definitions used by state Medicaid programs for their EPSDT benefit[.]"); *id.* (listing various definitions for the terms "medically necessary" and "medical necessity").

fraud as those facts do not sufficiently allege what the purported fraud was or how Defendant allegedly "caused false and fraudulent *claims*" (not *prescriptions*) to be submitted to the Health Plan. For instance, the Superseding Indictment does not allege that Defendant had any direct interaction or communication with Dr. Agresti, PBM-1, the Health Plan, or any other unidentified doctor, PBM, or health insurance company, and further does not allege Defendant made any false or fraudulent statement, misrepresentation, or omission to anyone.

At the April 10, 2024 oral argument, the Government stated the doctor writes the script for the prescription and then the doctor or the pharmacy (*i.e.*, not Defendant) submits a claim to the PBM, which subsequently submits a claim (*i.e.*, not a prescription) to the insurance company for adjudication. (ECF No. 57 at 15–16.) Notably missing from this chain of events is Defendant. Indeed, the Government conceded at oral argument that Defendant did not submit any claims himself. (*Id.* at 18.) *See United States v. Jackson*, 220 F. App'x 317, 322–24 (5th Cir. 2007) (reversing the defendant's conviction of health care fraud in violation of 18 U.S.C. § 1347 based on insufficiency of the evidence, finding "the government wholly failed to present evidence that [the defendant] engaged in a scheme to defraud Medicare by submitting claims for services that were never performed"; and noting, among other things, that although the government established a clinic "routinely billed Medicare for unperformed services after [defendant's] consultation services for [the clinic] were completed, the government never linked [the defendant] to such billing at [the clinic]"). Therefore, the Court finds the Superseding Indictment fails to sufficiently allege a violation of § 1347 because it fails to allege any false or fraudulent statement, misrepresentation, or omission, and it similarly fails to allege a violation of § 1349 as it fails to sufficiently allege a scheme to defraud "in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347(a).

As Defendant argues, the Court acknowledges that in certain contexts, bribing someone to obtain a "medically unnecessary" prescription may be a violation of some other statute (*e.g.*, the Anti-Kickback statute[13]) but is not, in and of itself, a violation of § 1347 or § 1349.[14] *See United States v. Merino*, 846 F. App'x 494, 495–97 (9th Cir. 2021) (reversing convictions of one count of conspiracy to commit health care fraud, in violation of § 1349, and eight counts of health care fraud, in violation of § 1347, where the evidence was insufficient to support same but rather showed the defendant "knew she was accepting kickbacks—which is in violation of the Title 42 anti-kickback statutes—for recruiting patients to [co-defendant] Glazer's clinic, not that she knew Glazer was billing Medicare fraudulently" and showed the defendant's "deceptive behavior [wa]s consistent with that of an individual who believe[d] herself to be engaged in an unlawful kickback scheme, [but] not enough to sustain her fraud convictions"); *United States v. Medina*, 485 F.3d 1291, 1298 (11th Cir. 2007) (holding, based on the facts of the case, that "paying kickbacks alone

---

[13] The Anti-Kickback statute, 42 U.S.C. § 1320a–7b(b), criminalizes the receipt and the payment "of money 'in return for referring an individual to a person for the furnishing . . . of any item or service for which payment may be made in whole or in part under a Federal health care program.'" *United States v. Moran*, 778 F.3d 942, 962 (11th Cir. 2015) (quoting 42 U.S.C. § 1320a–7b(b)(1) and (2)).

[14] At the April 10, 2024 oral argument, Defendant argued that if this case involved a federal health care program (*e.g.*, Medicare or Medicaid), "then perhaps the [G]overnment could have tried to charge this as an anti-kickback statute case. But that's not what we have here. We have a private insurance company, and so there can be no anti-kickback statute violation." (ECF No. 57 at 13.) In response, the Government stated that "this is not an anti-kickback case and [] was . . . never intended to be." (*Id.* at 14; *see also id.* at 11–14; ECF No. 41 at 11–14; ECF No. 22-1 at 14–15 (Defendant contending that paying kickbacks alone is insufficient to establish health care fraud (citing *Medina*, 485 F.3d at 1298), and that "it is well-established that paying a patient to receive medications, even if true, does not constitute a violation of 18 U.S.C. § 1347 or 18 U.S.C. § 1349"); ECF No. 30 at 15–16 (Defendant stating that "while allegations of paying monies to patients may violate the Anti-Kickback Statute, it alone cannot serve as the basis for a conspiracy to commit health care fraud or health care fraud violation."); ECF No. 58 at 4 (Defendant arguing "the Superseding Indictment's allegations regarding kickbacks received or paid by [Defendant] are not sufficient to form the basis for a health care fraud charge or a conspiracy to commit health care fraud charge.").)

is not sufficient to establish health care fraud . . . without someone making a knowing false or fraudulent representation to Medicare"); *Moran*, 778 F.3d at 960 n.7 (same); *United States v. Balotin*, No. 19-00191, 2023 WL 5607587, at *5 (M.D. Fla. Aug. 30, 2023) ("While the payment or receipt of a health care kickback can be a crime, *see* 42 U.S.C. § 1320a–7b(b), the mere payment or receipt of a kickback is not health care fraud."). Therefore, while bribery may be sufficient for an anti-kickback case, that is not this case as the Superseding Indictment does not contain any alleged violations of the Anti-Kickback statute, nor could it since the facts of this case do not involve any "Federal health care program." *See supra* n.14.

While "detailed allegations" are not required, more is needed in the Superseding Indictment to sufficiently allege health care fraud, in violation of § 1347, and a conspiracy to commit health care fraud, in violation of § 1349, as it relates to Defendant. *See United States v. Jackson*, No. 19-00207, 2022 WL 2643584, at *6–7 (M.D. Fla. July 8, 2022) (finding an indictment[15] failed to sufficiently allege health care fraud where it did "not contain the language of the substantive health care fraud statute," it did "not set forth any facts suggesting a scheme or artifice to defraud," and it did not "indicate the manner and means of a conspiracy to defraud Tricare" but rather required the defendant "to speculate as to the scheme to defraud he purportedly conspired to commit"; the court noted that "[a]lthough the acts alleged might well further a conspiracy to pay or receive

---

[15] In *Jackson*, the indictment alleged that: (1) person 1 and person 2 were patient recruiters for certain pharmacies, and the defendant was a patient recruiter for person 2; (2) the defendant, person 1, and person 2 "purportedly recruited Tricare beneficiaries and directed them to physicians . . . to obtain prescriptions for compounded creams"; (3) "co-conspirator physicians used 'preprinted prescriptions featuring compounded creams with high rates of reimbursement'" and routed them through certain pharmacies to be filled; (4) once Tricare paid the pharmacies for the compounded creams, the "[d]efendants received illegal kickbacks based on the number of prescriptions they directed to the conspirator pharmacies"; and (5) "[d]efendants allegedly used these proceeds to pay illegal kickbacks to [the doctor] in the amount of $100 per patient." *Jackson*, 2022 WL 2643584, at *1.

18

illegal kickbacks, nowhere in the [i]ndictment [we]re there any factual allegations that the [d]efendants defrauded a health care benefit program by performing such acts"). The cases to which the Government cites in support of their arguments to the contrary are factually distinguishable from the facts here and/or were decided on other grounds.[16] Accordingly, the Court finds the Superseding Indictment fails to sufficiently allege a violation of § 1347 or § 1349 because it does not "sufficiently apprise[] [Defendant] of what he must be prepared to meet" and the specific facts alleged "fall beyond the scope of" 18 U.S.C. § 1347 and § 1349 "as a matter of statutory interpretation." *See Bergrin*, 650 F.3d at 264–65; *see also Jones*, 299 F. App'x at 189.

Therefore, Defendant's Motion to Dismiss Counts 1 through 4 of the Superseding Indictment (ECF No. 22) is **GRANTED**.[17]

B.    **Defendant's Omnibus Motion**

Given the Court's decision on Defendant's Motion to Dismiss, Defendant's Omnibus Motion (ECF No. 23) is **DENIED WITHOUT PREJUDICE** and with leave to refile as applicable and in accordance with this Opinion.

---

[16] For example, in support of its argument that "numerous defendants in this District [] have been similarly charged, and ultimately convicted, of health care fraud conspiracy and substantive health care fraud for participating in schemes to cause prescriptions for medically unnecessary compounded medications to be filled," the Government cites to *United States v. Matthew Puccio*, No. 21-00157, and *United States v. Thomas Sher*, No. 19-00191, (*see* ECF No. 59 at 4), but both of those cases are factually distinguishable from the facts here, and also appeals in both of those cases remain pending.

[17] Given the Court's decision herein, the Court does not reach Defendant's other argument that the health care fraud statutes are unconstitutionally vague, as applied to the facts of this case, based on the vague term "medically unnecessary" in the Superseding Indictment. (*See generally* ECF Nos. 22, 30, 58.)

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 22) is **GRANTED**, Counts 1 through 4 of the Superseding Indictment (ECF No. 15) are **DISMISSED WITHOUT PREJUDICE**, and Defendant's Omnibus Motion (ECF No. 23) is **DENIED WITHOUT PREJUDICE** and with leave to refile as applicable and in accordance with this Opinion. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated: June 3, 2024