## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Brian R. Martinotti |
| | : | |
| v. | : | |
| | : | Criminal No. 21-576 |
| CARMINE A. MATTIA, JR. | : | |
| | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## THE GOVERNMENT'S MOTIONS *IN LIMINE*

---

ROBERT FRAZER
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

KELLY M. LYONS
JAKE A. NASAR
Assistant U.S. Attorneys

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND AND STATEMENT OF FACTS ........................................................ 1

LEGAL ARGUMENT ....................................................................................................... 4

I.    The Court Should Preclude Evidence and Argument Related to Jury
      Nullification, Punishment, and Individuals Who Might Have Been, But Were
      Not, Charged with Crimes. ............................................................................... 4

II.   The Court Should Preclude Defendant from Arguing or Introducing Evidence
      About His Lawful Behavior on Other Occasions. .......................................... 11

III.  The Court Should Admit Opinion Testimony of Dr. Robert Agresti as Lay
      Witness Testimony Under Rules 602 and 701. .............................................. 13

IV.   The Court Should Permit the Government to Elicit Background Evidence of
      the Conspiracy, as well as Evidence and Statements of the Co-Conspirators'
      Acts, That Were Reasonably Foreseeable and in Furtherance of the
      Conspiracy. ...................................................................................................... 16

      A.    Background Evidence of the Conspiracy Is Relevant and Should be
            Admissible at Trial. ............................................................................... 16

      B.    Statements of Co-Conspirators Should Be Admitted as Non-Hearsay
            at Trial. .................................................................................................. 21

V.    The Court Should Preclude Evidence or Argument Blaming the Victim for
      Failing to Discover the Fraudulent Scheme. .................................................. 25

VI.   The Court Should Require Defendant to Comply with Federal Rule of
      Evidence 613. ................................................................................................... 28

VII.  The Court Should Permit the Government to File Additional Motions *In
      Limine* as May Be Necessary .......................................................................... 31

CONCLUSION ............................................................................................................... 32

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Beavers v. Lockhart,*
  755 F.2d 657 (8th Cir. 1985)..................................................................... 10

*Bourjaily v. United States,*
  483 U.S. 171 (1987)........................................................................... 21, 24

*Delaware v. Fensterer,*
  474 U.S. 15 (1985).................................................................................. 31

*Delaware v. Van Arsdall,*
  475 U.S. 673 (1986)................................................................................. 9

*Fecho v. Eli Lilly & Co.,*
  914 F. Supp. 2d 130 (D. Mass. 2012)....................................................... 15

*Gov't of the V.I. v. Grant,*
  775 F.2d 508 (3d Cir. 1985) .................................................................... 13

*Herzog v. United States,*
  226 F.2d 561 (9th Cir. 1955).................................................................... 12

*In re High Fructose Corn Syrup Antitrust Litig.,*
  156 F. Supp. 2d 1017 (C.D. Ill. 2001) *rev'd on other grounds*, 295 F.3d 651
  (7th Cir. 2002). ...................................................................................... 30

*In re Japanese Elec. Prod. Antitrust Litig.,*
  723 F.2d 238 (3d Cir. 1983) .................................................................... 23

*Neder v. United States,*
  527 U.S. 1 (1999)..................................................................................... 26

*Pope v. United States,*
  298 F.2d 507 (5th Cir. 1962).................................................................... 11

*Rogers v. United States,*
  422 U.S. 35 (1975)................................................................................... 11

*Scarpa v. Dubois,*
  38 F.3d 1 (1st Cir. 1994) .......................................................................... 5

*Shannon v. United States,*
  512 U.S. 573 (1994)................................................................................. 11

*United States v. Adames,*
  56 F.3d 737 (7th Cir. 1995)................................................................................29

*United States v. Adams,*
  759 F.2d 1099 (3d Cir. 1985) .............................................................................17

*United States v. Ammar,*
  714 F.2d 238 (3d Cir. 1983) ...............................................................................23

*United States v. Bailey,*
  840 F.3d 99 (3d Cir. 2016) .................................................................................17

*United States v. Barile,*
  286 F.3d 749 (4th Cir. 2002)..............................................................................29

*United States v. Beno,*
  324 F.2d 582 (2d Cir. 1963) ...............................................................................12

*United States v. Bergrin,*
  682 F.3d 261 (3d Cir. 2012) ...............................................................................20

*United States v. Berrigan,*
  482 F.2d 171 (3d Cir. 1973) .................................................................................8

*United States v. Bobb,*
  471 F.3d 491 (3d Cir. 2006) .........................................................................21, 24

*United States v. Boone,*
  458 F.3d 321 (3d Cir. 2006) .................................................................................4

*United States v. Brown,*
  744 F.2d 905 (2d Cir. 1984) ...............................................................................10

*United States v. Bruce,*
  109 F.3d 323 (7th Cir. 1997)................................................................................4

*United States v. Butch,*
  256 F.3d 171 (3d Cir. 2001) ...............................................................................20

*United States v. Chavez,*
  979 F.2d 1350 (9th Cir. 1992)............................................................................29

*United States v. Chinasa,*
  789 F. Supp. 2d 691 (E.D. Va. 2011), *aff'd,* 489 F. App'x 682 (4th Cir. 2012) ........17

*United States v. Colton,*
  231 F.3d 890 (4th Cir. 2000)..............................................................................26

*United States v. Coyle,*
  63 F.3d 1239 (3d Cir. 1995) ........................................................................ 25

*United States v. Cruz,*
  910 F.2d 1072 (3d Cir. 1990) ...................................................................... 22

*United States v. Delgado,*
  903 F.2d 1495 (11th Cir. 1990) ..................................................................... 8

*United States v. DeMuro,*
  677 F.3d 550 (3d Cir. 2012) .......................................................................... 4

*United States v. Dubose,*
  639 F. Supp. 3d 503 (E.D. Pa. 2022) ................................................... 26, 27

*United States v. Duka,*
  671 F.3d 329 (3d Cir. 2011) ........................................................................ 22

*United States v. Ellis,*
  156 F.3d 493 (3d Cir. 1998) ........................................................................ 22

*United States v. El-Mezain,*
  664 F.3d 467 (5th Cir. 2011) ....................................................................... 23

*United States v. Emmanuel,*
  501 F. App'x 209 (3d Cir. 2012) .................................................................. 19

*United States v. Epstein,*
  91 F. Supp. 3d 573 (D.N.J. 2015) ................................................................. 5

*United States v. Fisher,*
  10 F.3d 115 (3d Cir. 1993) .......................................................................... 10

*United States v. Gibbs,*
  739 F.2d 838 (3d Cir. 1984) ................................................................... 22, 23

*United States v. Greer,*
  620 F.2d 1383 (10th Cir. 1980) ................................................................... 11

*United States v. Grimm,*
  568 F.2d 1136 (5th Cir. 1978) ............................................................... 12, 13

*United States v. Heatherly,*
  985 F.3d 254 (3d Cir. 2021) ........................................................................ 20

*United States v. Helmel,*
  769 F.2d 1306 (8th Cir. 1985) ............................................................... 21, 24

iv

*United States v. Holland,*
117 F.4th 1352 (11th Cir. 2024) ................................................................... 23

*United States v. Leadbeater,*
Crim. No. 12-121, 2015 WL 567025 (D.N.J. Feb. 10, 2015) ................................... 26

*United States v. Lopez,*
271 F.3d 472 (3d Cir. 2001) ..................................................................... 17

*United States v. Marks,*
816 F.2d 1207 (7th Cir. 1987)................................................................... 29

*United States v. McGlory,*
968 F.2d 309 (3d Cir. 1992) ...................................................... 21, 22, 24

*United States v. Moreno,*
809 F.3d 766 (3d Cir. 2016) ..................................................................... 30

*United States v. Oms-Rivera,*
422 F. Supp. 3d 482 (D.P.R. 2019) ........................................................... 14

*United States v. Onyenso,*
615 Fed. App'x 734 (3d Cir. 2015) ........................................................... 20

*United States v. Paradies,*
98 F.3d 1266 (11th Cir. 1996).................................................................... 6

*United States v. Perez,*
86 F.3d 735 (7th Cir. 1996).......................................................................5

*United States v. Reyes,*
798 F.2d 380 (10th Cir. 1986)................................................................... 22

*United States v. Rivera-Ortiz,*
14 F.4th 91 (1st Cir. 2021)...................................................................... 26

*United States v. Russo,*
302 F.3d 37 (2d Cir. 2002) ..................................................................... 23

*United States v. Saget,*
991 F.2d 702 (11th Cir. 1993)............................................................. 28, 29

*United States v. Salzano,*
Crim. No. 22-690, 2024 WL 866885 (D.N.J. Feb. 26, 2024) ................................ 26

*United States v. Santos,*
2022 WL 1698171 (D.N.J. March 22, 2022)................................................. 10

v

*United States v. Scarpa,*
  897 F.2d 63 (2d Cir. 1990) ............................................................... 12

*United States v. Schoenborn,*
  4 F.3d 1424 (7th Cir. 1993) ............................................................ 29

*United States v. Simmons,*
  679 F.2d 1042 (3d Cir.1982) ........................................................... 20

*United States v. Stimler,*
  864 F.3d 253 (3d Cir. 2017) ............................................................. 5

*United States v. Stirling,*
  571 F.2d 708 (2d Cir. 1978) ............................................................. 7

*United States v. Turner,*
  718 F.3d 226 (3d Cir. 2013) ................................................. 21, 22, 24

*United States v. Weaver,*
  507 F.3d 178 (3d Cir. 2007) ........................................................ 22, 23

*United States v. Weisz,*
  718 F.2d 413 (D.C. Cir. 1983) ......................................................... 24

*United States v. White,*
  Crim. No. 02-1111, 2003 WL 721567 (S.D.N.Y. Feb. 28, 2003) ................................ 9

*Wayte v. United States,*
  470 U.S. 598 (1985) ...................................................................... 8

*Weese v. Schukman,*
  98 F.3d 542 (10th Cir. 1996) .......................................................... 14

## Statutes

18 U.S.C. § 1347 ............................................................................ 4

18 U.S.C. § 1349 ............................................................................ 4

18 U.S.C. § 1512(b)(3) ...................................................................... 4

18 U.S.C. § 1518 ............................................................................ 4

## Rules

Fed. R. Evid. 401 ........................................................................ 5, 16

Fed. R. Evid. 403.................................................................................... 8, 12, 16, 20

Fed. R. Evid. 404(b) .......................................................................................... 20

Fed. R. Evid. 405............................................................................................ 12, 13

Fed. R. Evid. 405(a) ............................................................................................ 12

Fed. R. Evid. 602.................................................................................... 1, 13, 14, 15

Fed. R. Evid. 613.......................................................................................... passim

Fed. R. Evid. 613(a) ............................................................................................ 28

Fed. R. Evid. 613(b) ............................................................................................ 28

Fed. R. Evid. 701.................................................................................... 1, 13, 14, 15

Fed. R. Evid. 801................................................................................................. 30

Fed. R. Evid. 801(c)............................................................................................. 30

Fed. R. Evid. 801(d)(2) ........................................................................................ 23

Fed. R. Evid. 801(d)(2)(E) ....................................................................... 21, 22, 24, 25

## **Other Authority**

1A Fed. Jury Prac. & Instr. § 12:11 (6th ed.)............................................................. 7

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motions *in limine* to admit or exclude the following categories of evidence:

1. The Court Should Preclude Evidence and Argument Related to Jury Nullification, Punishment, and Individuals Who Might Have Been, But Were Not, Charged with Crimes.

2. The Court Should Preclude Defendant from Arguing or Introducing Evidence About His Lawful Behavior on Other Occasions.

3. The Court Should Admit Opinion Testimony of Dr. Robert Agresti as Lay Witness Testimony Under Rules 602 and 701.

4. The Court Should Permit the Government to Elicit Background Evidence of the Conspiracy, as well as Evidence and Statements of the Co-Conspirators' Acts, That Were Reasonably Foreseeable and in Furtherance of the Conspiracy.

5. The Court Should Preclude Evidence or Argument Blaming the Victim for Failing to Discover the Fraudulent Scheme.

6. The Court Should Require Defendant to Comply with Federal Rule of Evidence 613.

7. The Court Should Permit the Government to File Additional Motions *In Limine* as May Be Necessary.

For the reasons discussed below, the Court should grant the Government's motions in limine.

## BACKGROUND AND STATEMENT OF FACTS

Defendant Carmine A. Mattia, Jr. conspired with others to obtain bogus prescriptions for expensive medications so that he and his coconspirators could profit from the money that insurance reimbursed for these medications. After Mattia learned he was being investigated by law enforcement for his role in the conspiracy, he attempted to tamper with a witness whom Mattia knew could implicate him in the

criminal scheme. For his conduct, Mattia is charged with conspiracy to commit health care fraud, health care fraud, and witness tampering.

During the timeframe of the conspiracy, Mattia was an employee of a telecommunications company (the "Company") as well as a union representative for other employees of the Company. Sup. Ind. ¶ 1a. Mattia also worked as a sales representative through a marketing company for various compounding pharmacies that marketed and filled prescription compounded medications (the "Mattia Compounding Pharmacies"). *Id.* ¶ 4a.

Compounded medications—such as scar creams, pain creams, and metabolic supplements—were generally prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient. *Id.* ¶ 1i. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. *Id.*

Mattia participated in this scheme as a sales representative who worked for the Mattia Compounding Pharmacies. *Id.* ¶ 4a. As part of this scheme, Mattia received a commission for every prescription for a compounded medication that Mattia obtained, sent to the pharmacy, and generated a reimbursement. *Id.* ¶ 4c. The Mattia Compounding Pharmacies profited by receiving payment from the Company's health care plan, through a Pharmacy Benefits Management company ("PBM-1"), for the prescription medications that Mattia referred to the pharmacy. *Id.* ¶ 4b.

2

From April 2016 through July 2016, Mattia, Dr. Robert Agresti, and others conspired to cause the submission of false claims to the Company's health care plan that were based on fraudulent prescriptions for compounded medications so that Mattia and his co-conspirators could obtain a percentage of the reimbursement for those claims. *Id.* ¶ 3. In furtherance of the conspiracy, and to increase his commission from the Mattia Compounding Pharmacies, Mattia recruited Individual-1, a Company employee and union member represented by Mattia, to receive medically unnecessary compounded medications, including by paying him to receive those medications and in some instances, reimbursing Individual-1 for co-payments in connection with obtaining the prescriptions. *Id.* ¶ 4g.

As part of the scheme, Mattia and his co-conspirators secured Dr. Agresti's signature on the prescriptions for Individual-1 without Dr. Agresti and Individual-1 having a doctor-patient relationship, without Dr. Agresti determining that the compounded medications were medically necessary for Individual-1, and without Dr. Agresti conducting an examination of Individual-1. *Id.* ¶ 4f. Dr. Agresti was also being paid cash bribes in connection with this scheme, although not directly by Mattia.

Mattia's participation in the conspiracy caused significant loss of at least approximately $100,000 to the Company's health care plan. *Id.* ¶ 4i.

After Mattia learned that there was a federal criminal investigation into this fraudulent scheme, he directed Individual-1 to provide false information to federal agents in order to conceal Mattia's participation. *Id.* ¶ 4h. On or about July 17, 2019, Mattia directed Individual-1 to falsely tell federal agents that the payments that

3

Mattia had made to Individual-1 were for work that Individual-1 performed on Mattia's kitchen. In reality, and as Mattia knew, Individual-1 had never performed any work on Mattia's kitchen, and Mattia's payments to Individual-l were bribes to induce Individual-1 to obtain medically unnecessary prescriptions. *Id.*

As a result of this conduct, on July 23, 2021, a federal grand jury returned an Indictment charging Mattia with one count of conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, and three counts of substantive healthcare fraud. D.E. 1. Subsequently, on April 8, 2022, a federal grand jury returned a Superseding Indictment against Mattia, adding charges of witness tampering, in violation of18 U.S.C. § 1512(b)(3), and obstruction of a healthcare investigation, in violation of 18 U.S.C. § 1518. D.E. 15.

## LEGAL ARGUMENT

**I.    The Court Should Preclude Evidence and Argument Related to Jury Nullification, Punishment, and Individuals Who Might Have Been, But Were Not, Charged with Crimes.**

The Court should preclude Defendant from arguing for or otherwise presenting evidence or pursuing lines of inquiry designed to elicit jury nullification. It is well established that jury nullification—asking the jury to decide a case on extraneous matters—is "an aberration under our system." *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) (cleaned up); *see also United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (holding that district court properly excluded evidence that would have invited jury nullification). Because "jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role," *United States v. Boone*, 458

4

F.3d 321, 329 (3d Cir. 2006), any appeal to jury nullification is effectively "invit[ing] the jury to act lawlessly," *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996).

Moreover, evidence and argument directed toward jury nullification has no tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence and is therefore irrelevant under Federal Rule of Evidence 401. Thus, when the only purpose of evidence or argument is to encourage jury nullification, it should be excluded. *See United States v. Stimler*, 864 F.3d 253, 269 (3d Cir. 2017) (evidence or argument that "give[s] rise to the potential for jury nullification" is "substantially prejudicial" and should be excluded); *Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *see also United States v. Epstein*, 91 F. Supp. 3d 573, 597 (D.N.J. 2015) (excluding evidence of religious consent because its introduction "would open the door to jury nullification"). The Government seeks to exclude jury nullification in all its forms, including (1) evidence regarding practices in the health care industry generally, (2) argument related to other individuals in this case that have not been prosecuted, and (3) argument relating to punishment.

***First***, Defendant may seek to introduce evidence regarding the acts or conduct of others in the health care industry, in New Jersey and elsewhere, to argue that his conduct, for example, receiving commissions for referring prescriptions to a pharmacy, is routine conduct in the health care industry. Such evidence is irrelevant to the issues in this case and, if allowed, would distract and confuse the jury. The jury

5

should not be presented with evidence about whether others in the health care industry committed similarly improper acts. Nor should the Court permit argument about whether the conduct of others somehow excuses Defendant's alleged misconduct.

If Defendant concedes that he engaged in the conduct charged in the Indictment, but argues that, even if the conduct was illegal, it amounted to "standard operating procedure" in the health care industry, they would be seeking jury nullification. Thus, any such arguments should be barred. *See, e.g.*, *United States v. Paradies*, 98 F.3d 1266, 1285–86 (11th Cir. 1996) (defendant may act with requisite knowledge, willfulness, or specific intent even if he believed his "conduct was either religiously, politically, morally or otherwise required, or that ultimate good would result from [his] conduct").

In an analogous situation, the Second Circuit in *United States v. Stirling*, strongly denounced efforts to defend a securities fraud case on the basis of defense questioning which implied that the charged activities amounted to proper and routine business practice:

> [The defendants] argue that they were prejudiced by the district court's decision to bar questions put by them to their witnesses regarding the "normalcy" or "usualness" of certain Greater Gulf practices. The district court instructed counsel not to ask witnesses about "the legal consequences of things," such as whether activities were "wrong," "misleading," "proper," or "ethical." For example, in response to a question from counsel for the appellants, a state court judge from Mississippi testified that because prominent people with good reputations were involved in Greater Gulf, he assumed that it was "normal" for a non-profit corporation to be used to implement the project. Such testimony

6

> is not even arguably admissible. It would have been an abdication of responsibility if the trial judge had not interrupted, as he did, to instruct counsel not to ask such questions.

571 F.2d 708, 735–36 (2d Cir. 1978).

Accordingly, Defendant should be precluded from making arguments or presenting evidence regarding acts engaged in by past or present members of the health care industry or suggesting that their conduct was simply part of routine conduct in the health care industry.

**Second**, Defendant should be prevented from suggesting that other individuals in this case have not been prosecuted, or arguing that it was unfair to charge Defendant or find him guilty because those other individuals were not charged when they were equally or more culpable. Any arguments that other individuals have not been prosecuted, but should have been, or that Mattia is less culpable than others are inappropriate for several reasons.[1]

---

[1] A jury instruction in *United States v. Randal Wise*, states the following:

> You are here to determine whether the government has proven the guilt of the defendant for the charges in the Superseding indictment beyond a reasonable doubt. *You are not called upon to return a verdict as to the guilt or innocence of any other person or persons*. So, if the evidence in the case convinces you beyond a reasonable doubt of the guilt of the defendant for the crime charged in the indictment, you should so find, *even though you may believe that one or more other unindicted persons are also guilty*. But if any reasonable doubt remains in your minds after impartial consideration of all the evidence in the case, it is your duty to find the defendant not guilty.

Crim. No. 20-102 (MAS) (D.N.J.) (emphasis added); *see also* FED-JI § 12:11, 1A Fed. Jury Prac. & Instr. § 12:11 (6th ed.).

The Government's charging determinations are unsuitable for review by a jury. The Supreme Court has held that "the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quotation omitted). The Court recognized that "the decision to prosecute is particularly ill-suited" to external review because "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.*; *see United States v. Berrigan*, 482 F.2d 171, 180 (3d Cir. 1973) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made.") (quotation omitted). Because the Government's charging decisions with respect to third parties are irrelevant to the issues in the trial, evidence regarding those decisions is inadmissible.

In addition, apart from being irrelevant, evidence of the Government's charging decisions with respect to third parties is inadmissible under Rule 403. The question at trial is whether Defendant is guilty of the charged offense, not whether others may also be guilty of those offenses. Thus, allowing Defendant to elicit testimony or make arguments about charging decisions regarding other individuals/entities would do nothing more than "open the door to evidence on collateral issues that would likely confuse the jury." *Delgado*, 903 F.2d at 1499. The Court should therefore exclude any such evidence to prevent the trial from devolving

8

into a sideshow on matters not germane to the central issues in the case. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude . . . to impose reasonable limits on . . . interrogation that is repetitive or only marginally relevant.").

Evidence or argument by Defendant that the Government's charging decisions with respect to third parties demonstrate that any one defendant was singled out for prosecution is a way of arguing selective prosecution. At trial, "[t]he issue to be determined is whether [the defendant] committed the crimes charged; not whether others may have committed uncharged crimes." *United States v. White*, Crim. No. 02-1111, 2003 WL 721567, at *7 (S.D.N.Y. Feb. 28, 2003) ("If one were to permit the introduction of such evidence, then in a trial for rape, the jury would waste time trying to ascertain why there are unsolved sexual crimes instead of determining whether Defendant perpetrated the crime charged."). Accordingly, evidence or argument concerning what other people have or have not been charged with is a "waste of time and thus is totally irrelevant." *Id.* In any event, as explained above, claims of selective prosecution are never properly before a jury; any statements by defense counsel regarding the exercise of prosecutorial discretion in this case have no probative value and are only meant to prejudice the jury.

Accordingly, the Court should bar Defendant from making this type of argument to the jury at any time and in any manner during the trial.

***Third***, the Court should preclude Defendant from referring—directly or indirectly—to issues concerning possible punishment should Defendant be convicted

9

on any or all of the counts in the Indictment. This preclusion should extend to discussion or mention of possible collateral consequences, such as potential impact on Defendant's livelihood. This preclusion should apply to opening and closing statements, cross-examination of Government witnesses, direct examination of defense witnesses, documentary exhibits, and any statements made in open court before the jury.

The jury's sole function is to determine guilt or innocence. "[A] non-sentencing jury should not hear evidence about 'what the consequences of its verdict might be.'" *United States v. Santos*, 2022 WL 1698171, \*5 (D.N.J. March 22, 2022) (quoting *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993), and granting government's motion *in limine* precluding defendants from introducing "evidence or argument pertaining to their potential punishments"). Evidence regarding punishment or the effects of conviction is irrelevant and inadmissible before the jury. The punishment provided by law upon conviction is a matter exclusively within the province of the Court and should never be considered by the jury in any manner in arriving at their verdict as to guilt or innocence. *See Beavers v. Lockhart,* 755 F.2d 657, 662 (8th Cir. 1985) ("Historically, the duty of imposing sentence has been vested in trial judges."); *United States v. Brown*, 744 F.2d 905, 909 (2d Cir. 1984) ("The numerous decisions entitling a defendant to an opportunity to contest disputed factual matters relevant to sentencing implicitly and properly assume that, once the jury has determined guilt on a particular offense, the sentencing function may constitutionally be discharged solely by the trial judge.").

The presentation or insinuation of such information to the jury creates a substantial danger that the jury will consciously or subconsciously allow knowledge of such punishment to impact their deliberations. "The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." *Shannon v. United States*, 512 U.S. 573, 579 (1994). Providing jurors with information regarding sentencing or collateral consequences of conviction "invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*; *see also Pope v. United States*, 298 F.2d 507, 508 (5th Cir. 1962); *Rogers v. United States*, 422 U.S. 35, 40 (1975); *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir. 1980) (noting that, "[a]bsent a statutory requirement that the jury participate in the sentencing decision, nothing is left for jury determination beyond the guilt or innocence of the accused" (internal quotation marks omitted)).

Evidence which relates to the issue of punishment upon conviction of a criminal offense has no bearing on the only question that the jury will be called upon to decide at trial: Defendant's guilt or innocence. Thus, any evidence or insinuation as to punishment or collateral consequences should be barred at trial.

## II. The Court Should Preclude Defendant from Arguing or Introducing Evidence About His Lawful Behavior on Other Occasions.

The Government moves to exclude all evidence of Defendant's lawfulness or status as a "law-abiding citizen" or non-corrupt conduct unrelated to the charge in this case, except reputation or opinion evidence offered by character witnesses in

11

conformity with the limitations of Federal Rule of Evidence 405(a). Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), no such evidence is admissible.[2] "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity). Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. *See United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them); *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955) ("A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions.").

To permit otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See United States v. Beno*, 324 F.2d 582, 584, 586 (2d Cir. 1963). Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" that would inevitably ensue if Defendant was

---

[2] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct. It is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplate[s] that testimony of specific instances is not generally permissible on the direct examination of an ordinary opinion witness to character. . . . Opinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, *i.e.*, be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

allowed to pursue this irrelevant line of inquiry. As the Advisory Committee on Rules of Evidence concluded, proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Fed. R. Evid. 405, Advisory Committee Notes; *see also Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

Such evidence is not relevant to the charges pending against Defendant and would be offered solely to dissuade the jury from convicting him because he appears to be "a good person." *See Gov't of the V.I. v. Grant*, 775 F.2d 508, 513 (3d Cir. 1985) (upholding trial court's refusal to admit evidence that defendant had no prior arrests). Any such evidence also risks diverting the jury's focus away from the issues and raises the danger of a verdict that is based on events other than those related to the crimes charged. Thus, Defendant's character evidence at trial should be appropriately tailored to the Federal Rules of Evidence governing the same.

### III. The Court Should Admit Opinion Testimony of Dr. Robert Agresti as Lay Witness Testimony Under Rules 602 and 701.

The Government intends to elicit factual testimony from Dr. Robert Agresti, a medical professional, about his prescribing of medications generally and compounded medications specifically, under Rules 602 and 701, both of which are topics well within Dr. Agresti's personal knowledge. Rule 602 provides that "a witness may testify to a matter only if . . . the witness has personal knowledge of the matter." Under Rule 701, a lay witness may provide opinion testimony if it is "(a) rationally

13

based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of the fact in issue, and (c) not based on scientific, technical, or other specialized knowledge."

Here, the testifying witness is a medical doctor who prescribed compounded medications for years. Through this experience, he learned about the procedures surrounding prescribing compounded medications, including the FDA's rules and the pharmacists' practices. Dr. Agresti will thus be testifying about facts based on his personal knowledge, which is clearly permitted under Rules 602 and 701. *See, e.g., Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996) (defendant physician in medical malpractice action arising from treatment for carbon monoxide poisoning, who admitted he was not an expert on carbon monoxide poisoning, could nonetheless testify as lay witness regarding standard of care and causation; any opinions offered by physician were based on his experience as physician and were clearly helpful to an understanding of his decision-making process in the situation, thus meeting standard for admissibility of lay witness testimony); *United States v. Oms-Rivera*, 422 F. Supp. 3d 482, 486 (D.P.R. 2019) (in criminal prosecution arising out scheme to defraud the Social Security Administration (SSA), proffered testimony from SSA program specialist regarding SSA regulations, template analysis, and loss calculations, and from private insurance representatives regarding billing practices, medical provider contracts, Medicare regulations, and fraud detection, was admissible as lay opinion testimony; testimony did not involve scientific, technical, or other specialized knowledge, but was based on applying familiar reasoning processes

14

to witnesses' job experiences); *Fecho v. Eli Lilly & Co.*, 914 F. Supp. 2d 130, 140 (D. Mass. 2012) (finding surgeon's lay opinion testimony about the standard medical practices in community of sharing warnings with patients could be admissible as habit evidence to show the practice of the small group of doctors in the local community).

The Government also will elicit testimony from Dr. Agresti about why he signed prescriptions for Individual-1, namely, because he was paid to do so and not because he made any determination of medical necessity. This testimony of Dr. Agresti's motivation for signing prescriptions is squarely within the witnesses' personal knowledge and does not go to any specialized knowledge. Such testimony is also particularly helpful in showing a central fact at issue, *i.e.*, that Mattia and his co-conspirators obtained fraudulent prescriptions from Dr. Agresti in furtherance of the conspiracy, considering the doctor that Mattia and his co-conspirators referred beneficiaries to would write these prescriptions only because he was paid to do so without regard to any examination of the beneficiaries. Thus, the Court should admit Dr. Agresti's factual testimony regarding prescribing medications under Rules 602 and 701.

15

**IV.   The Court Should Permit the Government to Elicit Background Evidence of the Conspiracy, as well as Evidence and Statements of the Co-Conspirators' Acts, That Were Reasonably Foreseeable and in Furtherance of the Conspiracy.**

**A.   Background Evidence of the Conspiracy Is Relevant and Should be Admissible at Trial.**

The Government intends to elicit testimony about Defendant's conspiracy to commit healthcare fraud by submitting claims based on medically unnecessary prescriptions for Individual-1 to the Company's health plan so that Defendant and his co-conspirators could profit from the reimbursement. This evidence includes testimony from Dr. Agresti and representatives of the marketing company who operated as the middle-men between Mattia and the Mattia Compounding Pharmacies about how the scheme to defraud worked, including that Defendant and his co-conspirators obtained compounding medication prescriptions through bribes, the Mattia Compounding Pharmacies' paid Defendant and other co-conspirators based on the number of prescriptions he brought in, and the Mattia Compounding Pharmacies' process for submitting the fraudulent claims for compounding medications to the Company's health plan and obtaining reimbursement. This testimony is also expected to show how Mattia and other relevant co-conspirators, such as Dr. Agresti, became involved in the scheme. Such evidence of the scheme is directly relevant to Defendant's agreement with others to obtain bogus and medically unnecessary compounded medication prescriptions for Individual-1 so that the conspirators could profit from the reimbursement for those prescriptions from the Company's health plan and is admissible under Rules 401 and 403.

16

This is true even if Defendant was not involved in a specific act in furtherance of the scheme, as it would nonetheless be admissible pursuant to Third Circuit conspiracy law. In the Third Circuit, a defendant is liable for acts in furtherance of the conspiracy as long as they were reasonably foreseeable. *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) (holding that "the *Pinkerton* doctrine permits the government to prove the guilt of one defendant through the acts of another committed within the scope of and in furtherance of a conspiracy of which the defendant was a member, provided the acts are reasonably foreseeable as a necessary or natural consequence of the conspiracy."); *United States v. Bailey*, 840 F.3d 99, 112-13 (3d Cir. 2016) (evidence properly admitted in conspiracy case because it met standard for co-conspirator liability); *see also United States v. Chinasa*, 789 F. Supp. 2d 691, 695 (E.D. Va. 2011), *aff'd*, 489 F. App'x 682 (4th Cir. 2012) (affirming judgment because a reasonable jury could have found that the defendant "knowingly joined the conspiracy in which wire fraud or mail fraud was a foreseeable act in furtherance of the conspiracy"). "The Government, moreover, is not required to prove every defendant had "[k]nowledge of all the particular aspects, goals, and participants of a conspiracy . . . to sustain a conviction." *United States v. Adams*, 759 F.2d 1099, 1114 (3d Cir. 1985).

Here, the Government will seek to introduce evidence that Defendant agreed with others, including Dr. Agresti, Christopher Cuffari (another marketer or sales representative), and others to recruit Individual-1 to obtain compounded medications that Individual-1 did not need in order to increase Defendant and others' respective

commissions, which were directly tied to the number of prescriptions the conspirators generated. This evidence includes testimony and documents showing that (1) Dr. Agresti signed prescriptions because he was paid bribes to do so, and not because he made a determination of medical necessity, (2) Dr. Agresti often did not meet with or examine patients before signing compounding prescriptions, and (3) the Compounding Pharmacies billed the Company's health care plan for medically unnecessary compounded medication prescriptions so that they could profit from the reimbursement. Because Defendant knowingly joined in this conspiracy, acts of his co-conspirators in executing the fraudulent scheme that were reasonably foreseeable and in furtherance of this agreement are attributable to Defendant and therefore admissible.

For instance, testimony from Dr. Agresti that he signed the prescriptions for Individual-1 and others because he was paid cash to sign prescriptions for compounding medications, even if not directly by Defendant, is admissible since it was reasonably foreseeable to Defendant and, as noted above, also explains why Dr. Agresti signed the fraudulent prescriptions for Individual-1 that Defendant agreed with others to obtain. Defendant cannot argue that the cash payments to Dr. Agresti by other individuals were beyond the scope of the conspiracy when the evidence will establish that Defendant conspired with individuals that paid Dr. Agresti to sign the prescriptions, Defendant directed Individual-1 to obtain the prescription from Dr. Agresti and paid Individual-1 to do so, Individual-1 informed Defendant that he did not actually meet with Dr. Agresti, and Defendant was paid by the Mattia

18

Compounding Pharmacies for Individual-1's prescriptions that Dr. Agresti signed. Dr. Agresti's testimony about the cash payments is directly relevant to the conspiracy and makes it more likely that the prescriptions, which Defendant recruited Individual-1 to obtain, were medically unnecessary and fraudulent.

Indeed, the Government should not be limited to the testimony about only events that Defendant was present for or things he knew about. Rather, the Government should be permitted to introduce evidence of all aspects of the conspiracy that were reasonably foreseeable, even if Defendant was not a participant in those events or potentially did not know about them. *E.g.*, 3d Cir. Model Crim. Jury Instruction 7.03.

Similarly, the facts alleged in the Indictment outlining the broader scheme are likewise admissible. These facts include the following: (1) Mattia sold compounded medications for the Mattia Compounding Pharmacies through his work as a representative affiliated with a marketing company; (2) the Mattia Compounding Pharmacies obtained payment from the Company's health plan, through PBM-1, for the compounded medications ordered by individuals that Defendant recruited; and (3) the Mattia Compounding Pharmacies paid Defendant a percentage of the adjudication or reimbursement amount for each prescription for compounded medication that Defendant caused to be billed to a paying health plan.

Like the evidence described above, these broader allegations fall directly within the scope of the conspiracy and therefore are admissible. *United States v. Emmanuel*, 501 F. App'x 209, 213 (3d Cir. 2012) (not precedential) ("Evidence of overt

19

acts in furtherance of the conspiracy committed by one's co-conspirators is admissible evidence in one's own trial"). This type of background information is also admissible to aid the jury's understanding of the relationships between various co-conspirators, including the doctors, marketing companies, and pharmacies involved in the scheme. *See United States v. Onyenso*, 615 Fed. App'x 734, 736 (3d Cir. 2015) (not precedential) (affirming district court admitting background information of a kickback conspiracy). This testimony will come in through Defendant's co-conspirators, including employees of the marketing company and pharmacies. *See United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982) ("testimony of . . . a co-conspirator . . . could be considered relevant to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme."); *see also United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (affirming district court's decision to admit co-conspirator's testimony under Rule 404(b) because it was "logically relevant to explain his role in the criminal enterprise" and because it "would give the jury a complete story of the crime by explaining the circumstances of the alleged relationship between the alleged conspirators").

Finally, this evidence is not unfairly prejudicial to Defendant. All evidence that goes to a defendant's guilt is prejudicial. What Rule 403 aims to exclude is only "*unfair* prejudice", that is, "prejudice based on something other than [the evidence's] persuasive weight." *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (emphasis added); *see United States v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021)

20

(Rule 403 "does not protect defendants from devastating evidence in general").  This proposed evidence describes the scheme that Defendant participated in and goes directly to the conspiracy to profit from fraudulent claims for medically unnecessary compounding prescriptions. There is nothing unduly prejudicial about it.

**B.    Statements of Co-Conspirators Should Be Admitted as Non-Hearsay at Trial.**

Similarly, the Court should admit co-conspirator statements by Dr. Agresti, Cuffari, and other co-conspirators as evidence of the broader conspiracy. Pursuant to Federal Rule of Evidence 801(d)(2)(E), an out-of-court statement is admissible as non-hearsay when the Government demonstrates by a preponderance of the evidence that: (1) a conspiracy existed when the statement was made; (2) both the declarant and the defendant against whom the statement is offered were members of that conspiracy; and (3) the statement was made during the course of, and in furtherance of, the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013); *United States v. Bobb*, 471 F.3d 491, 498–99 (3d Cir. 2006).

In determining the admissibility of co-conspirator statements under this rule, the Court may consider the statements themselves, if they are corroborated by independent evidence. *Bourjaily*, 483 U.S. at 180–81; *Turner*, 718 F.3d at 231; *United States v. McGlory*, 968 F.2d 309, 333–34 (3d Cir. 1992). Even a statement by an anonymous declarant may be admissible if "the [G]overnment [can] show that the unknown declarant was more likely than not a coconspirator." *Id.* at 335 (quoting

21

*United States v. Helmel*, 769 F.2d 1306, 1313 (8th Cir. 1985)). "Statements are admissible under this Rule even if the basis for admission is a conspiracy different from the one charged." *Turner*, 718 F.3d at 231 (cleaned up).

As to the first two elements, the Court need only find, by a preponderance of the evidence after considering the statement itself and other evidence at trial, that a conspiracy existed and that the declarant was more likely than not a coconspirator. *See McGlory*, 968 F.2d at 333-36; *United States v. Cruz*, 910 F.2d 1072, 1080-83 (3d Cir. 1990). "[O]nce the Government establishes a defendant's involvement in an ongoing conspiracy, the burden shifts to the defendant to prove by affirmative acts inconsistent with the object of the conspiracy that he withdrew." *United States v. Gibbs*, 739 F.2d 838, 845 (3d Cir. 1984). "The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment." *United States v. Ellis*, 156 F.3d 493, 497 (3d Cir. 1998).

As to the third and final element, the Third Circuit has explained that "[t]he threshold for establishing that a statement was made in furtherance of a conspiracy is not high." *United States v. Duka*, 671 F.3d 329, 348 (3d Cir. 2011). Additionally, the "in furtherance of" requirement has been given "a broad interpretation." *United States v. Weaver*, 507 F.3d 178, 183 (3d Cir. 2007) (*quoting Gibbs*, 739 F.2d at 845). For example, statements are made in furtherance of the conspiracy where they are directed to the purpose of the conspiracy, "intended to promote the conspiratorial objectives of the conspiracy," *Weaver*, 507 F.3d at 184 (*quoting United States v. Reyes*,

22

798 F.2d 380, 384 (10th Cir. 1986)), or intended to conceal the conspiracy so that the conspiracy can continue, in which case the hearer need not be a coconspirator. *Weaver*, 507 F.3d at 181–87; *United States v. Ammar*, 714 F.2d 238, 253 (3d Cir. 1983).  Moreover, discussions among co-conspirators about prior events still meet the "in furtherance of" requirement when the statements form the basis for informing co-conspirators about the overall status of the conspiracy. *Weaver*, 507 F.3d at 184. Similarly, statements are admissible when a co-conspirator keeps other co-conspirators "abreast of developments to induce their continued participation" in the conspiracy. *Gibbs*, 739 F.2d at 846.

Importantly, to satisfy Rule 801(d)(2), the Court need not find that the conspiracy in question was unlawful or criminal in nature or is the same as the charged conspiracy. "[I]n order to admit coconspirator statements it is necessary to show by independent evidence that there was a combination between them, . . . but it is not necessary to show by independent evidence that the combination was criminal or otherwise unlawful." *In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238, 262 (3d Cir. 1983), *rev'd sub nom. on other grounds by Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal quotation marks and citation omitted).  The Court needs to find only that there was "an arrangement to work together toward a shared goal." *United States v. Holland*, 117 F.4th 1352, 1356 (11th Cir. 2024) (district court erred by determining that a conspiracy needed to be unlawful to introduce coconspirator statements under the Federal Rules of Evidence); *see also United States v. Russo*, 302 F.3d 37, 45 (2d

Cir. 2002) (stating that "[t]he objective . . . need not be criminal at all"); *United States v. El-Mezain*, 664 F.3d 467, 502 (5th Cir. 2011) (holding that "a statement may be admissible under Rule 801(d)(2)(E) if it is made in furtherance of a lawful joint undertaking"), as revised (Dec. 27, 2011); *United States v. Weisz*, 718 F.2d 413, 433 (D.C. Cir. 1983) (holding that "Rule 801(d)(2)(E) . . . is not intended to limit applicability of the doctrine to unlawful combinations").

In making a factual determination of the admissibility of co-conspirator statements under this rule, the Court may consider the statements themselves, if they are corroborated by independent evidence. *Bourjaily*, 483 U.S. at 180–81; *Turner*, 718 F.3d at 231; *United States v. McGlory*, 968 F.2d 309, 333–34 (3d Cir. 1992). Even a statement by an anonymous declarant may be admissible if "the [G]overnment [can] show that the unknown declarant was more likely than not a coconspirator." *Id.* at 335 (quoting *United States v. Helmel*, 769 F.2d 1306, 1313 (8th Cir. 1985)). "Statements are admissible under this Rule even if the basis for admission is a conspiracy different from the one charged." *Turner*, 718 F.3d at 231 (cleaned up).

As described in detail above, Defendant participated in an extensive scheme involving numerous co-conspirators acting in furtherance of the conspiracy to defraud the Company's health plan. At trial, the Government will make the requisite showing, by a preponderance of the evidence, that the statements of co-conspirators fall under Rule 801(d)(2)(E), as they were made during a conspiracy by declarants who were

24

members of the same conspiracy as Defendant and were made during the course, and in furtherance, of that conspiracy. *See Bobb*, 471 F.3d at 498–99.

Here, the statements the Government will seek to introduce at trial and on which the Government seeks a pretrial ruling include electronic communications sent and statements made by Defendant's co-conspirators. These statements include, but are not limited to: (1) emails and text messages between Cuffari and another co-conspirator marketer about Mattia's commission for sending compounded prescriptions to the Mattia Compounding Pharmacies sent in furtherance of the conspiracy; and (2) statements by Cuffari to Dr. Agresti about the scheme, including statements showing that Cuffari paid Dr. Agresti to sign prescriptions even when Dr. Agresti did not examine or even meet with patients. These statements were made by and between co-conspirators during and in furtherance of the conspiracy. Accordingly, the Court should find that the statements of Defendant's co-conspirators are admissible at trial as non-hearsay under Rule 801(d)(2)(E).

## V.   The Court Should Preclude Evidence or Argument Blaming the Victim for Failing to Discover the Fraudulent Scheme.

At trial, Defendant may argue or suggest that their conduct was lawful because the PBM and health plan continued to pay for and did not question or stop coverage of the compounded medication prescriptions at issue during the relevant period. At times, the insurance payors paid for compounded medications even after auditing the prescriptions. However, such arguments that "blame the victim" are irrelevant to the issues at trial and would mislead the jury.

25

It is well-established that "[t]he negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct." *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995); *United States v. Salzano*, Crim. No. 22-690, 2024 WL 866885, *16 (D.N.J. Feb. 26, 2024) (granting government's motion *in limine* to preclude a "blame the victim" defense); *United States v. Dubose*, 639 F. Supp. 3d 503, 508-09 (E.D. Pa. 2022) (same, referring to the theory as "legally unsustainable").

For example, in *United States v. Leadbeater*, Crim. No. 12-121, 2015 WL 567025, at *8–9 (D.N.J. Feb. 10, 2015), a mortgage fraud case, the defendants sought to argue at trial that their conduct was lawful because the victim lenders failed to scrutinize the loan applications at issue and did not stop the conduct. *Id*. at *8. The court rejected the defendants' argument and precluded them from suggesting at trial that the lenders "were not sufficiently careful or prudent in protecting themselves from fraud." *Id*. at *9. In so doing, the court recognized that "how closely the victim lenders scrutinized the loan applications" was irrelevant at trial and that the relevant inquiry instead was whether "the defendants had an agreement to defraud." *Id*. (citing *Neder v. United States*, 527 U.S. 1, 24-25 (1999)). Thus, the court barred this irrelevant and misleading "blame the victim" argument. *Leadbeater*, 2015 WL 567025, at *9; *see also United States v. Rivera-Ortiz,* 14 F.4th 91, 101-02 (1st Cir. 2021) ("the district court repeatedly justified its exclusionary ruling based on a concern that [the defendant], in drawing attention to the lack of action by the relevant agencies, might be suggesting a kind of 'blame-shifting' defense that would confuse jurors"); *Salzano*, 2024 WL 866885, *16 (observing that "[t]he susceptibility of the

26

victim of the fraud . . . is irrelevant to the analysis" (quoting *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000)).

In this case, just as in *Leadbeater* and *Rivera-Ortiz*, the issue of whether the insurance payors should have discovered Defendant's fraudulent scheme or stopped payment for claims sooner than they actually did is not relevant. Rather, what the jury must and solely should consider is evidence relevant to, among other things, whether: (1) two or more persons agreed to commit health care fraud; (2) Defendant was a party to or member of that agreement; and (3) Defendant joined the agreement knowing of its objective to commit health care fraud and intended to join together with at least one co-conspirator to achieve that objective. *See, e.g.*, Third Circuit Model Jury Instructions § 6.18.371A. Blaming the victim or suggesting that Defendant's conduct was lawful because the insurance payors continued to cover the compound medications would significantly confuse the issues at trial and mislead the jury. *See, e.g., Dubose*, 639 F. Supp. 3d at 508 (granting government's motion *in limine* and precluding defense argument that no fraud occurred because the victim failed to identify claims submitted by defendants as fraudulent, because "to allow defendants to refer to [the argument] during the trial risks confusing the jury").

Accordingly, the Court should preclude Defendant from arguing or suggesting at trial that the insurance payors' continued payment of claims or failure to timely identify the fraud are a defense to their conduct.

27

## VI.    The Court Should Require Defendant to Comply with Federal Rule of Evidence 613.

Some of the witnesses who may testify at trial were interviewed by law enforcement agents. The Court should preclude Defendant from misusing memoranda of these interviews during cross-examination by requiring compliance with Fed. R. Evid. 613. Rule 613 governs the examination of witnesses with respect to prior statements. Rule 613(a) permits a party to examine "a witness about the *witness's* prior statement;" Rule 613(b) permits a party to introduce "[e]xtrinsic evidence of" such a statement, but "only if the witness is given an opportunity to explain or deny the statement." Fed. R. Evid. 613(a), (b) (emphasis added). Although Rule 613(a) eliminated the common-law requirement that the impeaching party show the witness the statement before questioning him or her about it, the highlighted language confirms that the statement must, in fact, be a prior statement of the witness before it may be used for impeachment purposes. A memorandum by a law enforcement agent summarizing an interview of the witness does not qualify as such a statement of the witness, and an attorney's out-loud quotation of the contents of an interview memorandum is not the "extrinsic evidence" to which the rule refers.

In *United States v. Saget*, 991 F.2d 702 (11th Cir. 1993), the Eleventh Circuit "conclude[d] that a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own." *Id.* at 710. The court interpreted Rule 613(b) as imposing "procedural requirements" for "establishing the

28

proper foundation." *Id.*; *see United States v. Adames*, 56 F.3d 737, 744–45 (7th Cir. 1995) (noting that the "district court did not abuse its discretion by insisting that impeachment be in accordance with the Federal Rules of Evidence" after witness refused to adopt statements contained in FBI summary); *see also United States v. Schoenborn*, 4 F.3d 1424, 1429 n.3 (7th Cir. 1993); *United States v. Chavez*, 979 F.2d 1350, 1355 (9th Cir. 1992); *United States v. Barile*, 286 F.3d 749, 757–58 (4th Cir. 2002).

The construction of Rule 613 adopted by the Fourth, Seventh, Ninth and Eleventh Circuits precludes parties from confusing witnesses and misleading juries:

> the prosecution was concerned that the jury, seeing Marks' lawyer reading from [an FBI 302], would infer that if the witness denied having made the statement read by the lawyer, the witness must be lying, though in fact the FBI agent who had made the report might have gotten the witness's story down wrong and might have failed to ask the witness to read and sign the statement. . . . [S]ince a statement appearing in an interview report could easily be garbled, yet seem authoritative when read from a paper that the jury would infer was an official FBI document, the judge was reasonable in insisting that the witness be allowed to examine his purported statement before being impeached by it.

*United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987).

This Court should preclude defense counsel from suggesting to the jury that a witness made statements attributed to him or her in a report of the witness's earlier interview when questioning the witness. Counsel can ask the witness about whether he previously made statements about particular matters contained in the report, but may not reference the report or its contents. If the witness denies making the

29

statement, defense counsel may not use an agent's report to further question the witness on that point. If the witness fails to recall whether or not he made the statement, defense counsel may attempt to refresh the witness's recollection by showing the witness the report without indicating to the jury that he is showing the witness a report that purports to summarize the interview. If the document does not refresh the witness's recollection, that should be the end of the inquiry. Counsel similarly should be precluded from suggesting in any way that the statement is contained in the memorandum. Policing compliance with Rule 613 will prevent defense counsel from reading the contents of reports into the record through the examination of witnesses.

In addition, an interview report is hearsay under Federal Rule of Evidence 801(c) because it is an out-of-court assertion by the author of the report to the effect that "this is what the witness told me." *See In re High Fructose Corn Syrup Antitrust Litig.*, 156 F. Supp. 2d 1017, 1027 (C.D. Ill. 2001) ("The FBI 302 reports are clearly hearsay under Rule 801 of the Federal Rules of Evidence since they are out-of-court assertions."), *rev'd on other grounds*, 295 F.3d 651 (7th Cir. 2002). In *United States v. Moreno*, 809 F.3d 766 (3d Cir. 2016), the Third Circuit held that it violated the Confrontation Clause to allow a cooperating witness to read to the jury excerpts from memoranda written by a law enforcement agent memorializing that agent's interviews of the witness. *Id.* at 774. The witness was recounting what an out-of-court declarant—the agent—was saying the witness had said. *Id.* Thus, the declarant's statement—his report—was being offered for the truth of the matter asserted—that

30

the witness had actually said those things when interviewed. Accordingly, in addition to violating Rule 613, reading aloud the contents of an interview report violates the hearsay prohibition.

"[T]he Confrontation Clause guarantees an opportunity for effective examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). Accordingly, the Court should require Defendant to abide by the procedures discussed above when cross examining witnesses who were previously interviewed by law enforcement.

## VII.    The Court Should Permit the Government to File Additional Motions *In Limine* as May Be Necessary.

As trial preparation progresses, additional evidentiary issues may surface. In that event, the Government respectfully requests leave to file additional *in limine* motions addressing those issues rather than delay their resolution to trial, which could inconvenience the Court and the jury.

31

## CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to grant

its various motions *in limine* for the reasons stated in each individual section above.


Respectfully submitted,

ROBERT FRAZER
United States Attorney

By: _Kelly Lyons_____

Kelly M. Lyons
Jake A. Nasar
Assistant United States Attorneys

Dated: July 24, 2026
     Newark, New Jersey

32