# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA    :    Hon. Brian R. Martinotti

         :

v.          :

         :    Criminal No. 21-576

CARMINE A. MATTIA, JR.          :

         :

---

## MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE* AND RENEWED MOTION TO DISMISS

---

ROBERT FRAZER
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

KELLY M. LYONS
JAKE A. NASAR
Assistant U.S. Attorneys

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND AND STATEMENT OF FACTS ...................................................... 2

LEGAL ARGUMENT ............................................................................................... 6

I.     Mattia's Motion To Dismiss Counts One Through Four of The Superseding Indictment Because They Are Void for Vagueness Should Be Denied ............. 6

II.    Mattia's Requests For Rule 17(c) Subpoenas Should Be Denied Because They Are Not Relevant For Trial ................................................................................. 14

III.   Mattia's Motion For A Bill Of Particulars Should Be Denied Because It Is Unnecessary At This Stage of The Proceedings. ............................................. 18

IV.   Mattia's Discovery Requests For *Brady*, *Giglio*, and Expert Materials Should All Be Denied As Moot ..................................................................................... 24

V.    Mattia's Motion To Suppress Materials Obtained Pursuant To An 18 U.S.C. § 2703(d) Order Should Be Denied As Moot and On the Merits ......................... 25

VI.   Mattia's Motion For Grand Jury Materials Should Be Denied Because He Has Not Made A Preliminary Showing of Abuse Of The Grand Jury Process. ................................................................................................................ 26

VII.  Mattia's Motion to Strike Surplusage in the Superseding Indictment Should be Denied. ......................................................................................................... 29

CONCLUSION ....................................................................................................... 31

## TABLE OF AUTHORITIES

Page(s)

Cases

*Aiello v. City of Wilmington*,
  623 F.2d 845 (3d Cir. 1980) ...................................................................................... 9

*Bansal v. Russ*,
  513 F. Supp. 2d 264 (E.D. Pa. 2007) ...................................................................... 26

*Colautti v. Franklin*,
  439 U.S. 379 (1979) .................................................................................................. 8

*Colten v. Kentucky*,
  407 U.S. 104 (1972) .................................................................................................. 8

*In re Grand Jury Proc.*,
  632 F.2d 1033 (3d Cir. 1980) .................................................................................. 28

*Jersey Media Grp. Inc. v. United States*,
  836 F.3d 421 (3d Cir. 2016) .................................................................................... 23

*McFadden v. United States*,
  576 U.S. 186 (2015) ................................................................................................ 14

*San Filippo v. Bongiovanni*,
  961 F.2d 1125 (3d Cir. 1992) ................................................................................... 8

*United States v. Aldissi*,
  758 F. App'x 694 (11th Cir. 2018) ..................................................................... 9, 11

*United States v. Arberry*,
  No. 06-CR-278, 2007 WL 964354 (E.D. Wis. Mar. 27, 2007) ............................... 28

*United States v. Atwell*,
  Crim. No. 13-560, 2015 WL 2092687 (D.N.J. May 5, 2015) ............................ 21, 24

*United States v. Avenatti*,
  432 F. Supp. 3d 354 (S.D.N.Y. 2020) ..................................................................... 10

*United States v. Beech-Nut Nutrition Corp.*,
  659 F. Supp. 1487 (E.D.N.Y. 1987) ........................................................................ 22

*United States v. Bertram*,
  900 F.3d 743 (6th Cir. 2018) ................................................................................... 12

*United States v. Bissell*,
  954 F. Supp. 841 (D.N.J. 1996) .............................................................................. 28

*United States v. Boffa*,
  513 F. Supp. 444 (D. Del. 1980) ............................................................................. 23

*United States v. Bryant*,
  556 F. Supp. 2d 378 (D.N.J. 2008) ......................................................................... 10

*United States v. Budzanoski*,
  462 F.2d 443 (3d Cir. 1972) .................................................................................... 28

*United States v. Capozzi*,
  486 F.3d 711 (1st Cir. 2007) ................................................................................... 27

*United States v. Caruso*,
  948 F. Supp. 382 (D.N.J. 1996) .............................................................................. 22

*United States v. Chalker*,
   966 F.3d 1177 (11th Cir. 2020).................................................................... 13

*United States v. Coffey*,
   361 F. Supp. 2d 102 (E.D.N.Y. 2005) ......................................................... 21

*United States v. Cook*,
   2018 WL 1744682 (M.D. Pa. April 11, 2018) ............................................. 21

*United States v. Deerfield Specialty Papers, Inc.*,
   501 F. Supp. 796 (E.D. Pa. 1980) ............................................................... 19

*United States v. Delle Donna*,
   552 F. Supp. 2d 475 (D.N.J. 2008) .............................................................. 21

*United States v. Depiro*,
   2013 WL 663303 (D.N.J. Feb. 20, 2013) ..................................................... 21

*United States v. Diaz*,
   236 F.R.D. 470 (N.D. Ca. 2006) .................................................................. 27

*United States v. Ferriero*,
   Crim. No. 13-592, 2015 WL 225806 (D.N.J. Jan. 15, 2015) ................... 9, 14

*United States v. Fieger*,
   2007 WL 4098149 (E.D. Mich. 2007)........................................................... 27

*United States v. Flemmi*,
   245 F.3d 24 (1st Cir. 2001) ......................................................................... 28

*United States v. Fontaine*,
   697 F.3d 221 (3d Cir. 2012) .......................................................................... 9

*United States v. Garcia*,
   App. No. 21-1415, 2022 WL 1535378 (7th Cir. May 16, 2022)............... 13, 14

*United States v. Gibbons*,
    607 F.2d 1320, 1328 (10th Cir. 1979)………………………………………………28

*United States v. Giampa*,
   1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ................................................... 17

*United States v. Grasso*,
   173 F. Supp. 2d 353 (E.D. Pa. 2001) .......................................................... 23

*United States v. Klecker*,
   348 F.3d 69 (4th Cir. 2003)........................................................................... 14

*United States v. Knight*,
   2013 WL 3367259  (E.D.P.A. July 3, 2013)................................................. 21

*United States v. Kogan*,
   283 F. Supp. 3d 127 (S.D.N.Y. 2017)........................................................... 20

*United States v. Leung*,
   40 F.3d 577 (2d Cir. 1994) .......................................................................... 28

*United States v. Mattia*,
   157 F.4th 305 (3d Cir. 2025)....................................................................... 7, 8

*United States v. Mazurie*,
   419 U.S. 544 (1975).......................................................................................... 9

*United States v. McLean*,
   715 F.3d 129 (4th Cir. 2013)........................................................................ 12

*United States v. Milani,*
739 F. Supp. 216 (S.D.N.Y. 1990)..................................................................... 9

*United States v. Moyer,*
674 F.3d 192 (3d Cir. 2012) ............................................................................ 19

*United States v. Munoz,*
736 F. Supp. 502 (S.D.N.Y. 1990)................................................................... 21

*United States v. Nachamie,*
91 F. Supp. 2d 552 (S.D.N.Y. 2000)................................................................ 15

*United States v. Nelson,*
712 F.3d 498 (11th Cir. 2013)........................................................................... 9

*United States v. Nixon,*
418 U.S. 683 (1974).................................................................................... 14, 15

*United States v. Rosa,*
891 F.2d 1063 (3d Cir. 1989) .......................................................................... 19

*United States v. Sachakov,*
812 F. Supp. 2d 198 (E.D.N.Y. 2011) ............................................................. 13

*United States v. Sampson,*
2012 WL 214707 (M.D. Pa. Jan. 24, 2012) ..................................................... 21

*United States v. Shea,*
Crim. No. 20-412-4, 2022 WL 1443918 (S.D.N.Y. May 6, 2022) ..................... 9

*United States v. Skelos,*
Crim. No. 15-317, 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015)...................... 22

*United States v. Skilling,*
561 U.S. 358 (2010)..................................................................................... 9, 14

*United States v. Smith,*
123 F.3d 140 (3d Cir. 1997) ............................................................................ 26

*United States v. Smith,*
155 F.3d 1051 (9th Cir. 1998).......................................................................... 26

*United States v. Smith,*
776 F.2d 1104 (3d Cir. 1985) ..................................................................... 22, 23

*United States v. Smukler,*
330 F. Supp. 3d 1050 (E.D. Pa. 2018) ............................................................ 21

*United States v. Triumph Capital Grp., Inc.,*
211 F.R.D. 31 (D. Conn. 2002)........................................................................ 26

*United States v. Urban,*
404 F.3d 754 (3d Cir. 2005) ....................................................................... 18, 22

*United States v. Vaid,*
No. 16 CR. 763, 2017 WL 3891695 (S.D.N.Y. Sept. 5, 2017) ........................ 20

*United States v. Wabo,*
290 F. Supp. 2d 486 (D.N.J. 2003) .................................................................. 23

*United States v. Wadlington,*
233 F.3d 1067 (8th Cir. 2000).......................................................................... 28

*United States v. Zolp,*
659 F. Supp. 692 (D.N.J. 1987) ....................................................................... 19

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ........................................................................................ 13

Statutes

18 U.S.C. § 1347 ................................................................................... 4, 5, 11
18 U.S.C. § 1349 ...................................................................................... 4, 11
18 U.S.C. § 1512(b)(3) .................................................................................. 4
18 U.S.C. § 1518 ........................................................................................... 4
18 U.S.C. § 2703(d) .............................................................................. i, 1, 25
18 U.S.C. § 3771(a)(8) ................................................................................ 17

Rules

Federal Rule of Criminal Procedure 6(e) ............................................. 26, 27
Federal Rule of Criminal Procedure 17(c) ...................................... 14, 15, 17

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Carmine Mattia, Jr.'s motions filed on July 24, 2026. Specifically, on July 24, 2026, Mattia filed a single page letter in lieu of motions *in limine* requesting that the Court adopt his previously filed omnibus motions as his motions *in limine* and asked that these previously filed motions be "incorporated by reference in their entirety with the exception of the demand for Agent's rough notes which have been provided in discovery and the demand for disclosure of 404(b) evidence which is now covered by a scheduling order." Dkt. No. 86. Mattia's previously filed omnibus motions included the following requests: (1) for Rule 17(c) subpoenas; (2) for a bill of particulars; (3) to strike surplusage in the Superseding Indictment; (4) for *Brady* and *Giglio* material, Rule 404(b) disclosure, and agent notes; (5) for production of an expert witness report; (6) for suppression of material pursuant to a § 2703(d) Order; and (7) for production of grand jury materials. Dkt. No. 23. In a separate filing on July 24, 2026, Mattia also renewed his previously filed motion to dismiss Counts One through Four of the Superseding Indictment as unconstitutionally vague. Dkt. No. 87. As explained in more detail below, the Court should deny each of Mattia's motions as they are either moot, irrelevant to trial in this case, inappropriate at this stage of the proceedings, or contrary to established law, including precedent in this case.

## BACKGROUND AND STATEMENT OF FACTS

Defendant Carmine A. Mattia, Jr. conspired with others to obtain bogus prescriptions for expensive medications so that he and his coconspirators could profit from the money that insurance reimbursed for these medications. After Mattia learned he was being investigated by law enforcement for his role in the conspiracy, he attempted to tamper with a witness whom Mattia knew could implicate him in the criminal scheme. For his conduct, Mattia is charged with conspiracy to commit health care fraud, health care fraud, and witness tampering.

During the timeframe of the conspiracy, Mattia was an employee of a telecommunications company (the "Company") as well as a union representative for other employees of the Company. Dkt. No. 15 ("Sup. Ind.") ¶ 1a. Mattia also worked as a sales representative through a marketing company for various compounding pharmacies that marketed and filled prescription compounded medications (the "Mattia Compounding Pharmacies"). *Id.* ¶ 4a.

Compounded medications—such as scar creams, pain creams, and metabolic supplements—were generally prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient. *Id.* ¶ 1i. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. *Id.*

Mattia participated in this scheme as a sales representative who worked for the Mattia Compounding Pharmacies. *Id.* ¶ 4a. As part of this scheme, Mattia

2

received a commission for every prescription for a compounded medication that Mattia obtained, sent to the pharmacy, and generated a reimbursement. *Id.* ¶ 4c. The Mattia Compounding Pharmacies profited by receiving payment from the Company's health care plan, through a Pharmacy Benefits Management company ("PBM-1"), for the prescription medications that Mattia referred to the pharmacy. *Id.* ¶ 4b.

From April 2016 through July 2016, Mattia, Dr. Robert Agresti, and others conspired to cause the submission of false claims to the Company's health care plan that were based on fraudulent prescriptions for compounded medications so that Mattia and his co-conspirators could obtain a percentage of the reimbursement for those claims. *Id.* ¶ 3. In furtherance of the conspiracy, and to increase his commission from the Mattia Compounding Pharmacies, Mattia recruited Individual-1, a Company employee and union member represented by Mattia, to receive medically unnecessary compounded medications, including by paying him to receive those medications and in some instances, reimbursing Individual-1 for co-payments in connection with obtaining the prescriptions. *Id.* ¶ 4g.

As part of the scheme, Mattia and his co-conspirators secured Dr. Agresti's signature on the prescriptions for Individual-1 without Dr. Agresti and Individual-1 having a doctor-patient relationship, without Dr. Agresti determining that the compounded medications were medically necessary for Individual-1, and without Dr. Agresti conducting an examination of Individual-1. *Id.* ¶ 4f. Dr. Agresti was also being paid cash bribes in connection with this scheme, specifically by Mattia's co-conspirators, including Christopher Cuffari.

Mattia's participation in the conspiracy caused significant loss of at least approximately $100,000 to the Company's health care plan. *Id.* ¶ 4i.

After Mattia learned that there was a federal criminal investigation into this fraudulent scheme, he directed Individual-1 to provide false information to federal agents in order to conceal Mattia's participation. *Id.* ¶ 4h. On or about July 17, 2019, Mattia directed Individual-1 to falsely tell federal agents that the payments that Mattia had made to Individual-1 were for work that Individual-1 performed on Mattia's kitchen. In reality, and as Mattia knew, Individual-1 had never performed any work on Mattia's kitchen, and Mattia's payments to Individual-l were bribes to induce Individual-1 to obtain medically unnecessary prescriptions. *Id.*

As a result of this conduct, on July 23, 2021, a federal grand jury returned an Indictment charging Mattia with one count of conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, and three counts of substantive healthcare fraud. Dkt. No. 1. Subsequently, on April 8, 2022, a federal grand jury returned a Superseding Indictment against Mattia, adding charges of witness tampering, in violation of 18 U.S.C. § 1512(b)(3), and obstruction of a healthcare investigation, in violation of 18 U.S.C. § 1518. Dkt. No. 15.

On May 19, 2022, Mattia moved to dismiss Counts One through Four of the Superseding Indictment, primarily because the allegations therein purportedly failed to identify any misstatement or omission and were unconstitutionally vague as applied because they used the term "medically unnecessary." Dkt. No. 23. On June 3, 2024, the Court granted Mattia's motion, finding that the Superseding Indictment

4

did not allege any misrepresentation or false statement by Mattia, how the false claims were caused to be submitted to the health plan, and what false or fraudulent statements appeared on the claims that were submitted to the health plan. Dkt. Nos. 60-61. The Government appealed and on November 12, 2025, the Third Circuit Court of Appeals reversed and remanded the Court's decision dismissing Counts One through Four of the Superseding Indictment. Dkt. Nos. 75, 77.

The Third Circuit found that the Superseding Indictment clearly alleged an implicit fraudulent misrepresentation, which validly gives rise to charges under 18 U.S.C. § 1347: "A common sense reading of the Superseding Indictment makes it clear that the claims submitted to PBM-1 incorporated Dr. Agresti's prescriptions and that those prescriptions contained implicit misrepresentations." Dkt. No. 77-1 at 9. The Third Circuit explained that the Superseding Indictment properly alleged health care fraud claims because of the allegations therein that (1) a prescription is a required component and an "integral part" of a claim submitted to PBM-1, (2) Dr. Agresti's prescriptions that supported the false claims at issue in the Superseding Indictment were not "bona fide orders," due to the lack of a valid doctor-patient relationship, (3) these prescriptions therefore contained an implicit misrepresentation, and (4) the claims submitted to PBM-1, for which Mattia received a percentage of the reimbursement amount, were based on these fraudulent prescriptions. *Id.* at 9-11. Thus, the allegations in the Superseding Indictment were more than sufficient to "clear Rule 7(c)(1)'s low bar." *Id.* at 11.

5

The Third Circuit also held that the Superseding Indictment was more than sufficient notwithstanding its inclusion of the term "medically unnecessary," because a common-sense interpretation of the term in the context in which it is used in the Superseding Indictment informs Mattia what he needs to meet at trial. *Id.* at 12. Finally, the Third Circuit found that Mattia's arguments about the insufficiency of the Superseding Indictment's allegations regarding his knowledge of Dr. Agresti's prescribing practices were wrong because the Superseding Indictment does in fact allege in detail Mattia's "knowledge of the scheme's fraudulent nature," including the medically unnecessary nature of the prescriptions, and moreover, Rule 7(c) does not require more than what is included in the Superseding Indictment. *Id.* at 12-13.

On July 24, 2026, Mattia filed a renewed motion to dismiss the Superseding Indictment on vagueness grounds and instead of filing motions *in limine*, attempts to resurrect the pre-trial motions previously filed in this matter. Dkt. Nos. 86-87.

## LEGAL ARGUMENT

I.   **Mattia's Motion To Dismiss Counts One Through Four of The Superseding Indictment Because They Are Void for Vagueness Should Be Denied**

In lieu of filing motions *in limine*, Mattia filed a renewed motion to dismiss Counts One through Four of the Superseding Indictment, charging him with health care fraud and health care fraud conspiracy, as void for vagueness. Dkt. No. 87. As part of his argument, Mattia contends that the term "medically unnecessary" is not defined in the health care fraud statute, and therefore he could not have been on notice of what conduct is prohibited. *Id.* at 8-9. But this motion should be denied as

6

the Third Circuit already expressly ruled on this issue and found that the Superseding Indictment is not deficient for including the term "medically unnecessary," but rather alleges with more than sufficient detail a health care fraud claim and apprises Mattia of "what he needs to meet at trial." Dkt. No. 77-1 at 12.

Mattia argues in his motion that "the narrow question presented in this motion" regarding vagueness was expressly permitted by a footnote in the Third Circuit's decision reversing this Court's prior order of dismissal on sufficiency grounds. *Id.* at 1. That footnote specifically stated:

> The District Court suggested that the Superseding Indictment was unconstitutionally vague but did not rule on this aspect of Mattia's motion. ***Though we hold that the Superseding Indictment fairly apprises Mattia of what he needs to meet at trial despite its use of the term "medically unnecessary,"*** we leave the issue of unconstitutional vagueness to the District Court to address in the first instance.

Dkt. No. 77-1, *United States v. Mattia*, 157 F.4th 305, 312 n.4 (3d Cir. 2025) (emphasis added).

But Mattia misconstrues the Third Circuit's holding generally and this footnote specifically. Indeed, the Third Circuit already considered whether the inclusion of the term "medically unnecessary" renders the Superseding Indictment void and expressly held that it does not because "the Superseding Indictment fairly apprises Mattia of what he needs to meet at trial ***despite its use of the term 'medically unnecessary.'***" *Id.* (emphasis added); *see also* Dkt. No. 87 at 4 (acknowledging in his renewed motion to dismiss that the Third Circuit "did not share

Mr. Mattia's vagueness concerns"). The Third Circuit reached this holding after applying "a fair, holistic, and common-sense interpretation of [medically unnecessary] in the context in which [it is] used in the Superseding Indictment." *Mattia*, 157 F.4th at 312. Indeed, the Third Circuit already found that Mattia's vagueness claim does not provide a basis for dismissing the Superseding Indictment because the allegations therein sufficiently allege health care fraud charges such that Mattia is apprised of what he needs to be prepared to defend against at trial. Rather, the only issue that the Third Circuit left for the Court to consider is whether the allegations in the Superseding Indictment are vague as applied to the facts of this case, which as discussed below, is premature at this stage of the case. Thus, Mattia's motion to dismiss should be denied based on the Third Circuit's controlling ruling.

Even absent the Third Circuit's opinion, Mattia's motion should otherwise be denied because Mattia is asking the Court to rule in a manner contrary to established law.

A criminal statute is void for vagueness if it "'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' or is so indefinite that 'it encourages arbitrary and erratic arrests and convictions.'" *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal citations omitted); *see also San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (explaining that a criminal statute need only provide "fair warning" that particular conduct is prohibited to survive a vagueness challenge) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)). However, this doctrine "does not mean that [a] statute must define

8

every factual situation that may arise." *United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013). Indeed, "[a] challenge for vagueness will fail where a defendant's actions 'clearly fall within the intended reach of the . . . statute.'" *United States v. Aldissi*, 758 F. App'x 694, 704 (11th Cir. 2018). In analyzing a vagueness challenge, a "statute's *mens rea* requirement further blunts any notice concern." *United States v. Skilling*, 561 U.S. 358, 412 (2010). "The party bringing the vagueness challenge bears the burden of demonstrating that the statute is vague as applied to him or her." *United States v. Ferriero*, Crim. No. 13-592, 2015 WL 225806, at *17 (D.N.J. Jan. 15, 2015) (citing *Aiello v. City of Wilmington*, 623 F.2d 845, 850 (3d Cir. 1980)).

As an initial matter, this type of "as-applied" challenge is premature at the pre-trial motion stage. This is because an as-applied challenge must be reviewed in light of the specific conduct and facts of the case. *United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes … must be examined in the light of the facts of the case at hand."); *United States v. Fontaine*, 697 F.3d 221, 226 (3d Cir. 2012) (same). Given that trial in this case has not yet occurred, Defendant's motion is necessarily premature because the factual record has not yet been created. *See, e.g., Mazurie*, 419 U.S. at 550; *United States v. Shea*, Crim. No. 20-412-4, 2022 WL 1443918, at *5 (S.D.N.Y. May 6, 2022) ("Because it is assessing an as-applied challenge, the Court must determine what [the defendant] did before determining whether the statute fairly apprised him that his conduct was prohibited" and therefore the Court "must await conclusion of the trial" to determine whether the statute was vague as applied) (internal quotation marks omitted); *United*

*States v. Milani*, 739 F. Supp. 216, 218 (S.D.N.Y. 1990) ("On the issue of whether the statute might be unconstitutional as applied in a particular case, we must await conclusion of the trial."); *see also United States v. Avenatti*, 432 F. Supp. 3d 354, 366 (S.D.N.Y. 2020) (denying vagueness as-applied motion as premature when made before trial). The Court should summarily deny the motion on this basis alone.

Mattia's reliance on *United States v. Bryant*, 556 F. Supp. 2d 378, 432-33 (D.N.J. 2008) does not save his argument.  In *Bryant*, the district court ruled on an as applied vagueness challenge pretrial only because the mail fraud charge at issue turned on the definition of "what 'little or no legitimate and meaningful work' mean[t]," which was a determination only Bryant's employer, not the Government, Court, or jury, could make, and "the Indictment [did] not allege what quantity or quality of work [Bryant's employer] agreed or expected that Bryant would perform." *Id.* In other words, the court in *Bryant*—unlike in this case—had everything it needed to decide the as applied challenge simply by referring to the allegations in the Indictment.  The Court in *Bryant* went on to reject that same vagueness challenge for several other mail fraud counts in the Indictment that did not turn solely on the definition of "little or no meaningful work." *Id.* at 433-34. Unlike the terminology at issue in *Bryant*, and as made clear in the numerous examples cited below, the terms "medical necessity" or "medically unnecessary" are often used in charging instruments for health care fraud cases and must be viewed in light of the facts of the specific case at issue. Accordingly, the Court should deny Mattia's motion as

10

inappropriate at this stage in the proceedings when a full factual record has not yet been established at trial.

Even if the Court were to consider Mattia's vagueness challenge pretrial, it should nevertheless deny the motion as the Superseding Indictment's allegations clearly put Mattia "within the intended reach" of the health care fraud statutes. *See Aldissi*, 758 F. App'x at 704. A person commits a crime under 18 U.S.C. § 1349 if the following two elements are met: (1) two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime (such as healthcare fraud); and (2) the defendant knew the unlawful purpose of the plan and willfully joined in it. *See* Third Circuit Model Crim. Jury Instr. 6.18.1347 (§ 1349 "makes it a crime to attempt or conspire to commit any of the federal fraud offenses"). The health care fraud statute further makes it a crime to "knowingly and willfully execute[ ] . . . a scheme . . . (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent . . . representations . . . any of the money . . . [of] any health care benefit program . . . in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347.

Mattia's actions alleged in the Superseding Indictment fall squarely within these statutes. Specifically, the Superseding Indictment alleges that Mattia recruited Individual-1 to obtain compounded medication prescriptions that the Company's health care plan was billed for by paying Individual-1 to obtain the medications and by securing a signature from Dr. Agresti on the prescriptions: "(a) without Robert Agresti and Individual-1 having a doctor/patient relationship, (b) without Robert

11

Agresti determining that Individual-1 had a medical necessity for the compounded medications selected, and (c) without Robert Agresti conducting an examination of Individual-1." Sup. Ind. ¶¶ 4(f)-(g). Mattia and his co-conspirators then caused the Company's health care plan to be billed for the bogus prescriptions. *Id.* at ¶ 4(d). As made clear by these allegations, Mattia induced Individual-1 to obtain prescriptions from a provider that Individual-1 had no doctor/patient relationship with for medications Individual-1 was never evaluated for. Furthermore, the Superseding Indictment alleges that Mattia often paid Individual-1 bribes to obtain the prescriptions, Sup. Ind. ¶ 4g, and proceeded to instruct Individual-1 to lie to federal agents about those payments, *see* Counts 5-6. There is no ambiguity or vagueness that a provider's representation that prescriptions are "medically necessary" is false if the provider never evaluated or even met the patient," particularly where, as here, the patient was paid bribes in exchange for even agreeing to obtain the medicine and then instructed to lie about those bribes to cover it up.

Courts have routinely rejected vagueness challenges to the healthcare fraud statute, including those revolving around a lack of medical necessity. *See, e.g., United States v. Bertram*, 900 F.3d 743, 747 (6th Cir. 2018) (upholding conviction of five defendants who ran a urinalysis testing company because a "reasonable jury could find that the defendants violated the health care fraud statute by requesting reimbursement for tests that were not medically necessary"); *United States v. McLean*, 715 F.3d 129, 136-37 (4th Cir. 2013) ("Although the statute does not enumerate every possible fraud scheme, an average person would understand that"

12

billing for medically unnecessary care "is prohibited."); *see also United States v. Garcia*, App. No. 21-1415, 2022 WL 1535378, at *1 (7th Cir. May 16, 2022) (finding that vagueness challenge to healthcare fraud counts would have been "frivolous" because a practical reading of "the indictment here—alleging separate counts for specific executions of a single scheme, specifying precise dates and Medicare beneficiaries, and asserting that [the defendant] 'knowingly and willfully' participated in the scheme—amply apprised [the defendant] of the charges against him" even though the indictment did not define the term "medically necessary"); *United States v. Chalker*, 966 F.3d 1177, 1191 (11th Cir. 2020) (rejecting vagueness challenge to indictment alleging defendant was engaged in healthcare fraud conspiracy to bill medically unnecessary compounded drugs and finding that evidence at trial was sufficient to support defendant's involvement in a scheme to defraud insurers by filling "medically unnecessary" prescriptions for patients who neither wanted nor needed them).

The statute's scienter requirement—that the defendant's conduct be knowing and willful—itself avoids criminalizing innocent errors caused by a mistaken interpretation of the definition of "medical necessity," minimizing any vagueness concern. *See United States v. Sachakov*, 812 F. Supp. 2d 198, 212-13 (E.D.N.Y. 2011) (rejecting claim that the statute, as applied, was vague because it incorporated Medicare rules and definitions); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the

complainant that his conduct is proscribed.") (footnote omitted); *Garcia*, 2022 WL 1535378, at *1 (finding that vagueness challenge to healthcare fraud counts would have been "frivolous" based in part on allegation the defendant acted "knowingly and willfully"); *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("[An] intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement.") (citation omitted) *overruled on other grounds McFadden v. United States*, 576 U.S. 186, 195 (2015); *Ferriero*, 2015 WL 225806, at *20 (finding that a bribery statute was not vague in part because its scienter requirement "blunt[ed] any notice concerns.") (quoting *Skilling*, 561 U.S. at 412).

Accordingly, this Court should follow the established precedent cited above and the Third Circuit's holding in this case and deny Mattia's motion to dismiss.

## II.   Mattia's Requests For Rule 17(c) Subpoenas Should Be Denied Because They Are Not Relevant For Trial.

Mattia next argues for the issuance of Rule 17(c) subpoenas to obtain Individual-1's medical and mental health records. Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas *duces tecum* in federal criminal proceedings. *United States v. Nixon*, 418 U.S. 683, 697–98 (1974). The Court should deny that request as well.

To obtain a Rule 17(c) subpoena, the requesting party must show relevancy, admissibility, and specificity. *Id.* at 700. Specifically, the requestor must demonstrate that: (1) "the documents are evidentiary and relevant"; (2) the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence"; (3)

14

the defendant "cannot properly prepare for trial without such production and inspection in advance of trial and that the failure" to obtain the documents may "unreasonably delay the trial"; and (4) "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id*. at 699-700. When a defendant makes an application for a Rule 17(c) subpoena on a third party, the subpoena must be "(1) reasonab[ly] construed using the general discovery notion of 'material to the defense;' and (2) not unduly oppressive for the producing party to respond." *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000).

Here, the documents requested are utterly irrelevant and not evidentiary. This case involves the procurement of bogus prescriptions for compounded medications where there was no interaction whatsoever between Individual-1 and the doctor who signed the prescriptions, Dr. Robert Agresti. The Government's theory is simple and straightforward: Dr. Agresti's prescription implicitly represented that he examined Individual-1 and determined that he needed the medication, and that prescription, and the claim made to the PBM for that prescription, was fraudulent because Dr. Agresti never examined Individual-1 and never determined that he had a medical necessity for the medication. *See* Dkt. No. 77-1 at 10. Whether Individual-1 (1) had an underlying medical condition that theoretically might have benefited from one of the medications that Dr. Agresti prescribed, (2) had ever been prescribed similar medications in the past, or even (3) used the medications he received and found some of the prescriptions effective, is entirely irrelevant to rebut the Government's fraud

15

theory because Dr. Agresti never examined Individual-1 and never determined the prescription was medically necessary.

Mattia incredibly argues that "[a]bsent any medical records for Individual-1, it is impossible for Mr. Mattia to challenge the Government's assertion that the compounded medications prescribed to Individual-1 were 'medically unnecessary.'" Dkt. No. 23 at 7-8. Again, the Government's assertion is that the prescriptions fraudulently represented that Dr. Agresti examined Individual-1 and determined that Individual-1 had a medical necessity for the medications. Mattia can challenge that assertion by proving that Dr. Agresti actually examined Individual-1 and made a medical necessity determination or that he believed such happened.  But he cannot rebut that fraudulent representation that an examination happened by theorizing about what might have occurred if Dr. Agresti had examined Individual-1. Whether a hypothetical doctor could make a hypothetical determination that Individual-1 could have hypothetically benefitted from some of the medications prescribed is a complete side show that would only confuse the jury and should be nipped in the bud.

Second, the request for mental health records of Individual-1 to determine his "memory" is nothing more than the kind of fishing expedition barred by *United States v. Nixon* and should likewise be denied. *See* Dkt. No. 23 at 19-20. This information does not even pass Rule 403's balancing test. Under Federal Rule of Evidence 403, the court may exclude evidence during trial, including during cross examination, if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

16

wasting time, or needlessly presenting cumulative evidence. Evidence of Individual-1's mental health records has no probative value and would only confuse or mislead the jury.

Mattia attempts to justify this request based on the fact that "Individual-1 has taken an inordinate amount of medical leave from his job over the past decade." *Id.* at 19. With no proof of any memory loss, mental health condition, or other memory-related issue,[1] Mattia seemingly attempts to use a Rule 17(c) subpoena to fish around for and invent possible ways he could impeach Individual-1. This is inappropriate, would deter victims and witnesses from reporting crimes,[2] and is irrelevant to this case. Diving into Individual-1's mental health records would create a prejudicial side-show at trial, to the extent this evidence is even admissible, and there is no basis in law to do so. *United States v. Giampa*, 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (holding Government had standing to move to quash Rule 17(c) subpoenas to a non-party witness based on the Government's "interest in preventing . . . any prejudicial over-emphasis on [the witness's] credibility"). Further, Individual-1's testimony at

---

[1] The Government is aware of its obligations to produce any materials under *Giglio* that go to Individual-1's or any other witness's credibility, including potential memory issues. The Government has complied with this obligation and will continue to comply to the extent it obtains any materials going forward.

[2] 18 U.S.C. § 3771(a)(8), governing crime victims' rights, affords a victim "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." Allowing Mattia to obtain and pore over Individual-1's medical and mental health records would be unfair to him and disrespect his dignity and privacy. Further, it is not clear that the records themselves would even be admissible at trial given the protections of HIPAA regulations, the therapist-patient privilege, and other privacy concerns.

trial will be corroborated from multiple other sources, including testimony of other witnesses and documentary evidence, including a check corroborating that Mattia paid him to obtain fraudulent prescriptions. Each of Mattia's requests for subpoenas should therefore be denied.

### III.    Mattia's Motion For A Bill Of Particulars Should Be Denied Because It Is Unnecessary At This Stage of The Proceedings.

Approximately two months before trial, and one month before the Government's exhibit list deadline, Mattia seeks a bill of particulars, and requests more details about the prescriptions, false claims, bribes, and co-conspirators, and asks for a definition of "medical necessity." But the Superseding Indictment is detailed and apprises him of the facts he must be prepared to defend against at trial, Mattia has received voluminous discovery and disclosures from the Government, and there are upcoming deadlines for exhibit lists, witness lists, and 404(b) materials that will identify exactly what the Government's case in chief at trial will look like.

Mattia has not met the high burden necessary for a bill of particulars, which is required only when an indictment is too vague to permit the defendant to (a) understand the charges and prepare a defense, (b) avoid unfair surprise, and (c) assert a claim of double jeopardy where appropriate. *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005). "Only where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,]' will we find that a bill of particulars should have been issued." *Id.* (internal citations omitted). As long as the

18

indictment enables the defendant to understand the accusations against him and the central facts that the Government will present at trial, a bill of particulars is unwarranted. *See United States v. Rosa*, 891 F.2d 1063, 1066-67 (3d Cir. 1989); *United States v. Zolp*, 659 F. Supp. 692, 706 (D.N.J. 1987); *United States v. Deerfield Specialty Papers, Inc.*, 501 F. Supp. 796, 809-10 (E.D. Pa. 1980).

Here, the Superseding Indictment goes well beyond what is required of a charging document and is sufficiently detailed for Mattia to understand the charges against him and prepare a defense. As discussed at length above, it provides a detailed overview of the compounding fraud conspiracy and describes Mattia's role in it. Sup. Ind. ¶¶ 2-4. The Superseding Indictment also contains details regarding the victim health benefit programs, specifies the time period of the conspiracy, defines key medical and healthcare industry terminology, and identifies the manner and means of the conspiracy through which Mattia, Dr. Agresti, and others obtained fraudulent compounded prescriptions. *Id.* ¶¶ 1-4. Thus, "the specificity with which" the Superseding Indictment identifies the time period, events, and transactions at issue make it "highly unlikely" that Mattia might be "unfairly surprised with . . . unfamiliar" allegations at trial. *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012).

Indeed, the Government has provided very clear details concerning the false claims and underlying prescriptions, including allegations in the Superseding Indictment that Dr. Agresti did not determine that the prescriptions at issue were medically necessary and that they are thus "false and fraudulent." *See* Sup. Ind. ¶

19

4(g) (listing prescriptions filled on April 4, 2016, April 29, 2016, June 28, 2016, and July 25, 2016). The Government also produced the underlying prescriptions for these precise claims. Mattia is not entitled to any additional information concerning the Government's theory of the case. *See United States v. Kogan*, 283 F. Supp. 3d 127, 133 (S.D.N.Y. 2017) ("Because the [charging instrument] and discovery provide a clear explanation of the fraudulent schemes with which the Defendants are charged, ordering a bill of particulars is not necessary."). As for the "specific amounts and dates on which he paid bribes to Individual-1," the Government has already produced in discovery at least one example of a monetary payment made by Mattia to Individual-1. Nothing else is required by law. *United States v. Vaid*, No. 16 CR. 763, 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017) (denying defendants' request for the amount of money allegedly paid as kickbacks and the date of each payment because they impermissibly seek evidentiary detail or an attempt to use the bill of a particulars as a general investigative tool).

Mattia also seeks the identity of all persons alleged to have participated in the conspiracy with him. Dkt. No. 23 at 30-32. Virtually all of this information is contained in the thorough and organized discovery that has already been produced. Those materials include FBI reports of interview that provide the unredacted names of potential witnesses. Additionally, to the extent that not all of the co-conspirators are identified through the discovery already produced, the law does not require such information in a bill of particulars. "'It is well settled that courts are 'highly reluctant to require a bill of particulars when defendants have asked for specific identities of

20

coconspirators.'" *United States v. Smukler*, 330 F. Supp. 3d 1050, 1066 (E.D. Pa. 2018) (citation omitted). Numerous courts in this circuit have denied requests that the government identify unindicted co-conspirators or persons identified as "others" in the indictment. *See, e.g., United States v. Cook*, 2018 WL 1744682, at *2 (M.D. Pa. April 11, 2018) ("We find that from the indictment, the defendant knows fully, directly and expressly, without any uncertainty or ambiguity . . . all the elements necessary to constitute the offence intended to be punished" and denying defendant's request for the identities of co-conspirators) (internal quotation marks omitted); *Atwell*, 2015 WL 2092687, at *5; *United States v. Depiro*, 2013 WL 663303, at *5 (D.N.J. Feb. 20, 2013) (declining request for "the identity of all unindicted co-conspirators and aiders and abettors"); *United States v. Knight*, 2013 WL 3367259, at *4-5  (E.D.P.A. July 3, 2013) (rejecting request to identify co-conspirators and persons identified as "others" in the indictment); *United States v. Delle Donna*, 552 F. Supp. 2d 475, 498 (D.N.J. 2008) (declining request for bill of particulars identifying all persons who participated in the offenses); *United States v. Sampson*, 2012 WL 214707, at *3 (M.D. Pa. Jan. 24, 2012) (denying request because defendant had witness interviews and plea agreements of several co-conspirators); *see also United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others involved."). Thus, Mattia has been put on notice of his alleged conduct.

Furthermore, the Third Circuit has emphasized that a bill of particulars is unnecessary in those cases where, as here, the Government supplements a detailed

charging document with substantial discovery. *Urban*, 404 F.3d at 772; *see also United States v. Munoz*, 736 F. Supp. 502, 504 (S.D.N.Y. 1990) (provision of substantial discovery weighs against ordering bill of particulars). Where, as here, "discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines." *United States v. Caruso*, 948 F. Supp. 382, 393 (D.N.J. 1996); *United States v. Beech-Nut Nutrition Corp.*, 659 F. Supp. 1487, 1499-1500 (E.D.N.Y. 1987) (extensive discovery "must have answered a great many, if not all, of defendants' requests" for discovery and a bill of particulars).

Discovery in this case has been extensive, well beyond what is required by Rule 16, and "provided in an organized and comprehensible fashion." *United States v. Skelos*, Crim. No. 15-317, 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015). The discovery here has included, among other categories of information: (1) Individual-1's prescriptions; (2) records showing a monetary payment made by Mattia to Individual-1; and (3) subpoena returns indicating the timing of the prescriptions procured by Mattia and the amount that was paid by insurance. In addition, the Government has provided Mattia with over 30 different summaries of witness statements ("302s") and agent notes of those interviews. These 302s and corresponding agent notes are *Jencks* and *Giglio* material and are generally not produced until immediately preceding trial. Nonetheless, the Government produced these documents with its Rule 16 discovery to permit Mattia to better understand the extent of the investigation and evidence against him. Mattia thus has more than "'that minimum amount of information necessary'" for his "'own investigation'" such that "there is no need to order the bill of

particulars requested by Defendant." *United States v. Grasso*, 173 F. Supp. 2d 353, 367 (E.D. Pa. 2001) (quoting *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985)). Thus, Mattia need not rely solely on the allegations in the Superseding Indictment to prepare his defense; he can use the extensive discovery that the Government has furnished.

In addition, the deadline for the Government's exhibit list is August 21, 2026, more than thirty days prior to trial, and the Government's witness list is due September 14, 2026. The exhibit and witness lists will further inform Defendant of exactly what the Government's case in chief will be and precisely which allegations the Government intends to prove at trial. And the Government's notice under Rule 404(b) is due on September 14, 2026, which will provide Mattia with information regarding any additional allegations and evidence outside of the Superseding Indictment that the Government plans to use at trial.

A bill of particulars is not only unnecessary, it may have a detrimental effect on the Government's proofs. A bill of particulars potentially "narrows the government's case at trial in the same way as the formal charging document: 'there can be no variance between the notice given in a bill of particulars and the evidence at trial.'" *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016) (quoting *Smith*, 776 F.2d at 1111). As a result, district courts are understandably reluctant at the pretrial stage to "unduly freeze [the government] to its proofs at trial." *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980).

The Superseding Indictment, discovery, and information to be provided pursuant to upcoming trial deadlines provide "sufficient factual and legal information for the defense to prepare its case." *United States v. Wabo*, 290 F. Supp. 2d 486, 490 (D.N.J. 2003); *see also United States v. Atwell*, Crim. No. 13-560, 2015 WL 2092687, at \*5 (D.N.J. May 5, 2015) (Wolfson, J.) ("[D]iscovery, combined with the sufficiency of the allegations contained in the Superseding Indictment, negates the need for a bill of particulars."). Thus, Defendant's request should be denied.

## IV.   Mattia's Discovery Requests For *Brady*, *Giglio*, and Expert Materials Should All Be Denied As Moot

In his letter adopting the omnibus motion, Mattia acknowledged that "the demand for Agent's rough notes which have been provided in discovery and the demand for disclosure of 404(b) evidence which is now covered by a scheduling order" are both moot. Dkt. No. 86. However, the omnibus motion also included demands for *Brady* and *Giglio* material that are similarly moot as *Giglio* materials will be produced pursuant to the Scheduling Order, Dkt. No. 83, and the Government has already produced Rule 16 discovery in this case, including anything in its possession that could arguably be considered *Brady* material. Should any additional exculpatory material come into the Government's possession, it will be disclosed promptly. Accordingly, an order for *Giglio* or *Brady* materials is unnecessary and Mattia's motion should be denied.

Similarly, Mattia in his omnibus motion requested that the Court order the Government to identify proposed experts and to provide an expert report for Dr.

24

Agresti. These requests are also moot as the Government will provide its expert disclosure in line with the August 7, 2026 deadline set by the Court in the Scheduling Order. *See* Dkt. No. 83. Furthermore, as discussed at length in the Government's motion *in limine*, the Government intends to offer Dr. Agresti as a fact witness—*not an expert witness*—and has asked that the Court rule in favor of the Government on that point. *See* Dkt. No. 85 at 13-15. For the reasons stated in that motion, the Court should rule that Dr. Agresti is a fact witness and deny Mattia's motion as moot.

**V.     Mattia's Motion To Suppress Materials Obtained Pursuant To An 18 U.S.C. § 2703(d) Order Should Be Denied As Moot and On the Merits.**

In the omnibus motion readapted as a motion *in limine*, Mattia moves to suppress evidence obtained pursuant to an 18 U.S.C. § 2703(d) order by alleging the Government failed to provide "specific and articulable facts" in its application for the order based primarily on the return's date range spanning from May 2005 through June 2019. Dkt. No. 23 at 13, 44-46. The parties have conferred and the Government relayed that, while it intends to offer email communications with Mattia into evidence, it does not intend to introduce any evidence obtained from the 18 U.S.C. §2703(d) order at trial. This argument is therefore moot to any issue before this Court pertaining to trial. Defense counsel represented to the Government his concurrence that this issue is moot. The Court should therefore deny Mattia's motion.

To the extent the Court does not agree that the issue is moot, Mattia's motion should nevertheless be denied on the merits as discussed extensively in the Government's opposition to Mattia's omnibus motion. Dkt. No. 27 at 29-31. In

summary, there is no basis in law to suppress the evidence obtained from the § 2703(d) order because: (1) the Government provided specific and articulable acts justifying the order, including that Mattia was paying individuals for prescriptions they did not need so he could submit the bogus prescriptions to the Company's insurance and that one of the individuals paid by Mattia sent his insurance card to Mattia at the email relevant to the § 2703(d) order; (2) a magistrate judge agreed and signed the order; and (3) even if there was a violation, suppression is not a remedy, *see United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (noting that the Stored Communications Act expressly rules out exclusion as a remedy); *Bansal v. Russ*, 513 F. Supp. 2d 264, 282 (E.D. Pa. 2007) ("[T]he exclusionary rule is not a remedy provided for by the [Store Communications] Act"); *see also United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 38 (D. Conn. 2002) ("A temporal limitation in a warrant is not an absolute necessity but is only one indicia of particularity."). Therefore, Mattia's motion to suppress should be denied.

**VI.    Mattia's Motion For Grand Jury Materials Should Be Denied Because He Has Not Made A Preliminary Showing of Abuse Of The Grand Jury Process.**

Mattia next argues that the Government abused the grand jury process and therefore seeks disclosure of otherwise protected grand jury material as well as suppression of materials obtained "in violation of the grand jury process." Dkt. No. 23 at 46-49. In particular, Mattia notes that there was a grand jury subpoena issued to Verizon Wireless on July 22, 2021, with a return date of July 30, 2021. The Indictment in this matter was returned on July 26, 2021. However, as discussed in

26

greater detail below, this subpoena was sent for the investigation related to obstruction charges, which were added to a Superseding Indictment in April 2022. Therefore, this was a proper use of the grand jury process.

The longstanding rules preserving grand jury secrecy are well established. *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997). Federal Rule of Criminal Procedure 6(e) prohibits the disclosure of any information that would reveal "matters occurring before the grand jury or other grand-jury matters." Rule 6(e) does not cover all information developed during the course of a grand jury investigation, but only information that would reveal the strategy or direction of the investigation or the nature of the evidence produced before the grand jury. *Id*. This includes subpoenas issued to Government witnesses and third parties. *See United States v. Fieger*, 2007 WL 4098149, *2 (E.D. Mich. 2007) (defendants' discovery demand for grand jury subpoenas issued to banks denied because they were matters occurring before grand jury, and, thus, disclosure controlled by Rule 6(e) and defense made no showing of a "particularized need"); *United States v. Diaz*, 236 F.R.D. 470, 480 (N.D. Ca. 2006) (defendant not entitled to copy of subpoenas for documents because they were "matters occurring before the grand jury").

Under Rule 6(e)(3)(E)(ii) a court may allow the disclosure of matters occurring before a grand jury if a defendant shows that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, a presumption of regularity attaches to grand jury proceedings. *United States v. Capozzi*, 486 F.3d 711, 726-27 (1st Cir. 2007). Thus, a defendant must establish a

27

particularized need for disclosure of grand jury records. *See United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972) (permitting grand jury disclosures only when relating to dismissal of the indictment "or upon a showing of substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury"); *United States v. Arberry*, No. 06-CR-278, 2007 WL 964354, at \*4 (E.D. Wis. Mar. 27, 2007) (holding that a "strong showing of particularized need" is needed to overcome grand jury secrecy and that the party seeking disclosure "must show necessity to prevent injustice."). Abuse of the grand jury occurs when evidence is obtained "for the primary purpose of strengthening the government's case on a pending indictment or as a substitute for discovery." *United States v. Gibbons*, 607 F.2d 1320, 1328 (10th Cir. 1979). A defendant claiming grand jury abuse bears the burden of demonstrating "that the sole or dominant purpose of seeking the evidence post indictment is to prepare for the pending trial." *United States v. Bissell*, 954 F. Supp. 841, 877 (D.N.J. 1996), *aff'd*, 142 F.3d 429 (3d Cir. 1998) (quoting *In re Grand Jury Proc.*, 632 F.2d 1033, 1041 (3d Cir. 1980)). However, the grand jury may be used if its investigation is related to a superseding indictment of additional defendants or additional crimes by an indicted defendant. *Id*. If the sole or dominant purpose of a post-indictment grand jury subpoena is proper, *i.e.,* to obtain evidence against uncharged persons or of uncharged crimes, evidence produced pursuant to the subpoena can be used at trial to prove the charges contained in the original indictment. *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001); *see also United States v. Wadlington*, 233 F.3d 1067, 1074 (8th Cir. 2000); *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994).

28

Mattia's argument rests on the faulty assumption that the subpoena issued with the return date of July 30, 2021, was for the primary purpose of strengthening the already pending indictment. But the primary purpose of the July 30 subpoena was for a superseding indictment on the obstruction-related charges, specifically that Mattia instructed Individual-1 to lie to federal agents about the reason that Mattia paid him the bribes for prescriptions as alleged in Counts 5 and 6 of the Superseding Indictment. Sup. Ind. at 8-9. Specifically, the subpoena requested records limited to the date range from September 2016 to September 2019, months after the last prescription was filled on the underlying health care fraud charges. Thus, there was no abuse of the grand jury process, and Mattia has failed to meet his burden of showing any particularized need for the requested disclosure.

## VII. Mattia's Motion to Strike Surplusage in the Superseding Indictment Should be Denied.

Finally, Mattia seeks to strike the following language from the Superseding Indictment: (1) references to "others"; (2) references to cash payments and any check payments not specifically identified; and (3) references to any individuals beyond Individual-1 who Mattia recruited to obtain compounded medications. Dkt. No. 23 at 9-10. Again, this motion should be denied.

Motions to strike surplusage are rarely granted. *United States v. Alsugair*, 256 F. Supp. 2d 306, 317 (D.N.J. 2003); *see also United States v. Pharis*, 298 F.3d 228, 248 (3d Cir. 2002) (Cowen, J., dissenting) ("[T]he scope of a district court's discretion to strike material from an indictment is narrow." (internal quotation marks omitted)).

29

Only in extremely rare instances where language is both irrelevant and immaterial, may a district court strike it. *See United States v. Hedgepeth*, 434 F.3d 609, 611-12 (3d Cir. 2006).

None of Mattia's requests meet the Third Circuit's standard to strike information from a charging document. First, as noted above, this information is probative of and relevant to the health care fraud conspiracy and Mattia's participation therein. And there will be evidence at trial sufficient to support each of the following contentions: (1) that Mattia worked with other unnamed co-conspirators, (2) that Mattia made multiple payments to Individual-1; and (3) that Mattia obtained a commission on any medications ordered by individuals he recruited. As to #3, the Government does not allege in the Superseding Indictment that Mattia engaged in the charged fraud scheme with respect to other individuals. However, the payment structure he had with the Mattia Compounding Pharmacies was not dependent on only his recruitment of Individual-1 and therefore the paragraphs outline that structure more generally and refer to "individuals" as plural. This language is not prejudicial or irrelevant, but rather is probative information of how the conspiracy operated and Mattia's role therein, and thus should not be stricken. *Alsugair*, 256 F. Supp. 2d at 317 ("The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment.").

30

## CONCLUSION

For the foregoing reasons, the Government respectfully asks that the Court deny Mattia's omnibus motions and renewed motion to dismiss in their entirety.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

By:  *Kelly Lyons*

Kelly M. Lyons
Jake A. Nasar
Assistant United States Attorneys

Dated: August 5, 2026
     Newark, New Jersey

31