UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Brian R. Martinotti, U.S.D.J. |
| | : | |
| v. | : | |
| | : | Crim. No. 21-576 |
| CARMINE MATTIA, JR. | : | |

**MOTION OF THE UNITED STATES TO EXCLUDE DEFENSE EXPERT AND TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING WHETHER MEDICATIONS PRESCRIBED TO INDIVIDUAL-1 MAY HAVE BEEN MEDICALLY NECESSARY AND/OR BENEFICIAL.**

ROBERT FRAZER
United States Attorney
970 Broad Street
Newark, New Jersey

Jake A. Nasar
Kelly M. Lyons
Assistant United States Attorneys

# TABLE OF CONTENTS

BACKGROUND ........................................ 1

I. LEGAL STANDARD ........................................ 2

A. Rule 16 Requires a Complete Statement of the Opinions of a Proposed Expert and the Bases and Reasons for the Opinions ........ 2

B. Federal Rule of Evidence 702 Requirements: Fit, Reliability, and Qualification ........................................ 4

II. ARGUMENT ........................................ 7

A. The Court Should Exclude the Proposed Testimony of Defense Expert Dr. James Murphy ........................................ 7

1. Defendant's Expert Disclosures Are Deficient Under Federal Rule of Evidence Rule 16 ........................................ 7

2. Dr. Murphy's Testimony Should Be Excluded Under Federal Rule of Evidence 702 ........................................ 8

a. Dr. Murphy's Testimony Is Not Sufficiently Tied to the Facts of This Case ........................................ 9

b. Dr. Murphy's Opinions are Not Reliable ........................................ 15

B. The Court Also Should Preclude Evidence and Arguments that the Medications Prescribed to Individual-1 Could Have Been Medically Necessary ........................................ 16

CONCLUSION ........................................ 20

**BACKGROUND**

On August 20, 2026, pursuant to the Court's Scheduling Order, the defendant Carmine Mattia, Jr. sent the Government a disclosure statement for proposed expert Dr. James Murphy, attached as Exhibit A. In the disclosure statement, Defendant explains that Dr. Murphy intends to opine on the term "medical necessity" or "medically unnecessary" and how such terms are used by insurance companies to determine payment coverage with "elastic" meanings depending on the insurance companies' criteria. *See* Ex. A at 1. Dr. Murphy would further opine that the medications listed in the prescriptions for Individual-1 that will be the focus at trial "can be used to treat a number of illnesses or injuries," and that "[t]he context that may lead to a physician-patient relationship can vary." *Id.* at 2.

As explained below, this disclosure fails to adequately meet Rule 16 because it offers only generic and broad definitions of general terms without applying them to the current case or providing a sufficient basis for such opinions. Furthermore, Dr. Murphy's proposed opinions are not relevant or reliable. Even if all of Dr. Murphy's purported testimony was true and uncontested, said testimony would nevertheless fail to have any bearing on the issues the jury will be considering at trial. On the contrary, this testimony would only confuse and mislead the jury by attempting to insert ambiguity into unambiguous facts. Accordingly, the Court should exclude Dr. Murphy's testimony.

## I. <u>LEGAL STANDARD</u>

### A. Rule 16 Requires a Complete Statement of the Opinions of a Proposed Expert and the Bases and Reasons for the Opinions.

Rule 16 provides that a defendant's disclosure of proposed expert testimony "must contain a *complete statement of all opinions* that the defendant will elicit from the witness in the defendant's case-in-chief; [and] the *bases and reasons for them*[.]" Fed. R. Crim. P. 16(b)(1)(C)(iii) (emphasis added). The Rule requires "a summary of the expected testimony, not a list of topics," and must "identify what opinion the expert would offer." *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001). The expert disclosure must "provide the required level of detail as to the expert's opinions and the bases, reasons, and sources of those opinions." *United States v. Ulbricht*, 2015 WL 413318, at *5 (S.D.N.Y. Feb. 1, 2015), *aff'd*, 858 F.3d 71 (2d Cir. 2017).

The Third Circuit has explained that Rule 16's requirements are "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Hoffecker*, 530 F.3d 137, 185 (3d Cir. 2008). To better serve those goals, the Advisory Committee amended Rule 16 in 2022 and changed the required disclosure from "a written summary" of the expert's opinions to a "complete statement of all opinions." The Advisory Committee explained that it strengthened the Rule's disclosure requirements to "facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." Advisory Committee Notes to 2022 Amendment. And "if a defendant fails to

provide disclosures in accordance with Rule 16(b)(1)(C), the district court may exclude the expert's testimony at trial." *United States v. Kaufman*, 2021 WL 4084523, at *19 (S.D.N.Y. Sept. 8, 2021), *aff'd*, 2023 WL 1871669 (2d Cir. Feb. 10, 2023). The rule of exclusion for an expert who does not provide an adequate disclosure "is sensible because without the appropriate detail, a Court cannot possibly assess admissibility, an opposing party cannot prepare a response or for proper cross-examination, and a trial devolves into jungle warfare by ambush." *Ulbricht*, 2015 WL 413318, at *6.

District courts have not hesitated to exclude proffered expert testimony in criminal cases where, as here, the proponent fails to comply with Rule 16's disclosure requirements. In *United States v Bankman-Fried*, 2023 WL 6162865 *1-3 (S.D.N.Y. Sept. 21, 2023), for example, the court granted the government's motion to exclude several proposed experts because their disclosure statements failed to explain the substance of their opinions or articulate the bases and reasons for their opinions. Similarly, in *United States v. Ulbricht*, the court excluded expert testimony for failure to comply with Rule 16's disclosure requirements and listed numerous criminal cases in which courts precluded expert testimony for the same reason. 2015 WL 413318 at *5-6. The Second Circuit affirmed this decision because the disclosures were "plainly inadequate." 858 F.3d at 115. In *United States v. Kaufman*, 2021 WL 4084523, at *23, the court excluded an expert because, *inter alia*, the expert "never sufficiently and specifically articulated the substance of each of the opinions he would have given . . . ." In *United States v. Biden*, 2024 WL 3892606 at *3 (D. Del. June 2, 2024), the court found an expert disclosure inadequate and barred the expert because the disclosure

"leaves the government in the dark as to what his opinions about the facts of **this case** will be . . . ." (emphasis in original). And in *United States v. Dzionara-Norsen*, 2024 WL 191803 at *4 (2d Cir. Jan. 18, 2024) (summary order), the Second Circuit affirmed the exclusion of a proposed autism expert who gave only a "brief summary of the proposed testimony but failed to provide a full statement of [the expert]'s opinions and the reasons for them."

Recently, in *United States v. Schessel*, Crim. No. 22-374 (ES), D.E. 232 at 9 (D.N.J. May 3, 2024), Judge Salas found a defense expert disclosure inadequate because "the disclosure mostly consists of general topics to which [the proposed expert] will supposedly testify, with a few very vaguely described opinions without any basis given for those opinions. This is insufficient under Rule 16."[1] *See also, e.g., United States v. Hoffecker*, 530 F.3d at 187 (affirming exclusion of experts because notice was late and insufficient "because it did not include the experts' opinions and the bases and reasons for those opinions").

### B. Federal Rule of Evidence 702 Requirements: Fit, Reliability, and Qualification

Rule 702 governs the admissibility of expert opinion testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

[1] The defendant in *Schessel* subsequently provided a more extensive disclosure, which allowed the Court to perform its gatekeeping function to decide if the proposed testimony was relevant and reliable – exactly the purpose of Rule 16's disclosure requirements. The Court found that the testimony was not relevant and did not fit the case, and therefore excluded it. *United States v. Schessel*, Crim. No. 22-374 (ES), D.E. 239 (D.N.J. June 4, 2024) (attached as Exhibit B).

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Applying the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Third Circuit has explained that Rule 702 imposes "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A district court must act as a gatekeeper and prevent the opinion testimony from reaching the jury if any one of these three requirements is not met. *See Daubert*, 509 U.S. at 592.

Expert testimony is admissible *only* if it is sufficiently tied to the facts of the case, such that it will aid the jury in resolving a factual dispute. In other words, the proposed testimony must "fit" the facts of the case. "Fit" is a question of relevance and "expert evidence which does not relate to an issue in the case is not helpful." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). The proposed testimony must be "sufficiently tied to the facts of the case that it will aid the jury." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). The Third Circuit has warned that district courts should "pay[] special attention to the relevance prong of *Daubert*" to

ensure that proposed expert testimony "speaks clearly and directly to an issue in dispute in the case, and . . . will not mislead the jury." *United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995)). And "an expert's testimony, like all other testimony, must be relevant to the matter at hand pursuant to FRE 401, and more probative than prejudicial or confusing pursuant to FRE 403." *United States v. Schiff*, 538 F. Supp. 2d 818, 833 (D.N.J. 2008); *see also Downing*, 753 F.2d at 1242 (while Rule 702 "incorporates to some extent a consideration of the dangers, particularly the danger of unfair prejudice," Rule 403 still independently applies to expert testimony).

To assess reliability, a court "must focus on the expert's methods and reasoning." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 Fed. Appx. 781, 788 (3d Cir. 2009). The Third Circuit has established an eight-part test for determining reliability:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error, (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id.*; *accord United States v. Mitchell*, 365 F.3d 215, 235 (3d Cir. 2004); *Schiff*, 538 F. Supp. 2d at 833. "While the reliability requirement may be adjusted depending on the content of the expert testimony (for example, it is applied more rigorously in instances where the expert testimony is 'scientific' or 'technical,' and less so in cases where the expert testimony is 'experience- based'), it does impose a minimum

standard." *Schiff*, 538 F. Supp. 2d at 833. The expert's opinion in all cases must be based on something more than the "subjective belief," *Schneider*, 320 F.3d at 404, or "*ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

To meet the qualification requirement, the witness must possess specialized expertise. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). The Third Circuit has "interpreted Rule 702's qualification requirement liberally." *Id.*

## II. <u>ARGUMENT</u>

### A. The Court Should Exclude the Proposed Testimony of Defense Expert Dr. James Murphy

The Court should exclude the proposed testimony of Dr. Murphy because Defendant's notice of Dr. Murphy's proposed testimony is wholly deficient under Rule 16 and moreover, the proposed testimony is neither reliable nor an appropriate fit to this case under Federal Rule of Evidence 702.

#### 1. Defendant's Expert Disclosures Are Deficient Under Federal Rule of Evidence Rule 16

The Court should exclude the testimony and opinions of Dr. Murphy because Defendant's expert disclosures fail to comply with Rule 16(b)(1)(C)(iii) in two crucial ways: (i) they did not sufficiently specify the opinions that the proposed expert will provide at trial; and (ii) they did not include the bases and reasons for each opinion.

Rather than setting forth the required "complete statement of all opinions" and the "bases and reasons for them," as required by Rule 16, Dr. Murphy's disclosure reads like the barebones lists of generic topics that courts have found to be inadequate to satisfy Rule 16. The disclosure statement does not contain any proposed opinions

about Individual-1, Verizon's health plan, Dr. Agresti's prescribing practices, or Express Scripts and therefore "leaves the government in the dark as to what his opinions about the facts of **this case** will be." *Biden*, 2024 WL 3892606 at *3. Instead, his proposed testimony is primarily about defining general topics such as "medical necessity" or "physician-patient relationship." There is no explanation of his methodology in reaching his opinions or the rationale for his opinions. Experts typically list the materials considered in reaching an opinion about the facts of this case; Dr. Murphy lists none outside of a broad reference to medications in the three prescriptions he reviewed, concluding broadly they could hypothetically "treat a number of illness or injuries," making no reference to the applicability to the facts of this case. His statement matches exactly Judge Salas's description of a similar disclosure statement in *Schessel*: "a few very vaguely described opinions without any basis given for those opinions." Judge Salas found that disclosure statement "insufficient under Rule 16," and this Court should reach the same conclusion about the Dr. Murphy disclosure statement.

**2. Dr. Murphy's Testimony Should Be Excluded Under Federal Rule of Evidence 702**

Even assuming Defendant's disclosures satisfy Rule 16, which they do not, Dr. Murphy's testimony should also be excluded as unfit and unreliable and thus impermissible expert testimony under Rule 702.

### *a. Dr. Murphy's Testimony Is Not Sufficiently Tied to the Facts of This Case.*

As noted, it is fundamental that expert testimony is not admissible unless it is sufficiently tied to the facts of the case, so that it will aid the jury in resolving a factual dispute. In other words, the proposed testimony must "fit" the facts of the case. "Fit" is a question of relevance and "expert evidence which does not relate to an issue in the case is not helpful." *In re TMI Litig.*, 193 F.3d at 670. The Third Circuit has warned that district courts should "pay[] special attention to the relevance prong of Daubert" to ensure that proposed expert testimony "speaks clearly and directly to an issue in dispute in the case, and [will] . . . not mislead the jury." *Ford*, 481 F.3d at 219 n.6 (quoting *Daubert*, 43 F.3d at 1321 n.17) (emphasis added).

Dr. Murphy's proposed testimony should also be excluded because his opinions are limited to matters that are not relevant to this case, and therefore his testimony does not "fit" this case. Under Rule 702, the operative question for the Court to decide in exercising its gatekeeping function under *Daubert* is whether the expert's testimony is relevant—or helpful—to the jury's deliberation of the material issues and facts in dispute at trial. The disputed question ***in this particular case*** is whether Mattia knew that Dr. Agresti issued the prescriptions in this case (GX 101, 102, and 103) to Individual-1 without having the requisite doctor-patient relationship and without examining Individual-1. As detailed below, general testimony concerning medical necessity, drug efficacy, and insurance regulations do not bear at all on that question. Without a much more direct link to the issues in this case, Dr. Murphy's testimony should be excluded as irrelevant under Rule 702.

Per the disclosure attached as Exhibit A, Dr. Murphy intends to describe general principles such as "medical necessity" and "physician-patient relationship," and opine that the medications prescribed in this case can treat various illnesses. These topics completely miss the mark on the issue before the jury at this trial. Specifically, the Government expects the evidence to show Mattia's involvement in a conspiracy to commit health care fraud whereby Mattia's coconspirators paid Dr. Robert Agresti to write prescriptions for Individual-1. Thus, Dr. Agresti signed these prescriptions because he was bribed to do so and not on the basis of any medical evaluation of Individual-1 or consideration of whether Individual-1 needed or would benefit from the medications that were prescribed. Put plainly, this case does not turn on the need or the efficacy of the medications prescribed but rather on bogus prescriptions written ***without regard to their medical necessity***. Thus, any opinions about the efficacy or hypothetical use of these prescriptions is entirely irrelevant in this case because this case is plainly not about medical necessity and thus the jury does not need to consider it. In other words, the prescriptions in this case (i.e., GX 101, 102, and 103) were *per se* medically unnecessary because Dr. Agresti did not meet or otherwise examine Individual-1 prior to issuing them and only signed them because he was financially induced to do so. The Government's theory is that Mattia conspired to obtain prescriptions for expensive medications through bribes so that he could profit from implicitly false claims, based on the lie that these prescriptions were in fact the result of an examination by a doctor, that were submitted to the health plan.

Even if every opinion offered by Dr. Murphy was correct, such opinions would nevertheless be of no value to the jury.

***First***, the Government disagrees with Dr. Murphy's definition of medical necessity as an "elastic term" considering it is well defined in health care regulations, insurance policies, and by the American Medical Association. However, even if Dr. Murphy's opinion was correct, his description of medical necessity used by insurance companies generally in the industry is not helpful as it does not speak to determining coverage of the particular prescriptions at issue in this case. This is especially true considering the fact that the jury will hear from a representative of the actual Plan Benefits Manager who will testify as to what medications and circumstances would qualify for coverage ***as pertains to this particular case***. Dr. Murphy's proposed testimony as to practices of the insurance industry generally or the practices of one insurance company over another that are not tied to the particular insurance contracts, insurance company, or claims at issue in this case, would therefore not be helpful to the jury in reaching the ultimate issue of whether Defendant committed fraud; it would instead be as useful as expert testimony about the entire firearms industry in a gun possession trial.

The example provided in Dr. Murphy's expert notice regarding factors that could be included in whether a medication is "medically necessary" perfectly illustrates why Dr. Murphy's testimony is a poor fit for this case. Dr. Murphy explains that a physician could prescribe something because he or she believes it to be medically appropriate, but an insurance company could deny the claim as medically

unnecessary because the medication was too expensive, or not an approved formula. But here, no doctor ever made a determination that the prescriptions were appropriate because Dr. Agresti did not make any determination regarding necessity at all, rather he signed the prescriptions because he was paid. And the insurance company paid the claims based on the implicit lies on which they were based, namely that a physician had determined the medications to be medically necessary and the prescriptions were based on a valid doctor-patient relationship. Thus, Dr. Murphy's opinion that the term medical necessity could potentially vary across insurance companies is of no matter here.

***Second***, even if Dr. Murphy's general assertion is correct that a physician-patient relationship could exist in a variety of contexts when "a physician begins to serve a patient's medical needs," such a broad statement with no anchor to the actual facts of this case has no bearing on the complete lack of a relationship between Dr. Agresti and Individual-1 here. Dr. Murphy cannot take his opinion so far as to say that a doctor who wrote a script for a patient they never evaluated or met, based instead on an illegal payment, could qualify as such a physician-patient relationship. If Dr. Murphy would opine to the contrary then the Government would object to the qualification or reliability of such an assertion as preposterous on its face.

***Finally***, even if the medications prescribed to Individual-1 were effective to treat "a number of illnesses or injuries," such effectiveness is not relevant to the reason why the medications here were prescribed. Again, the Government does not need to prove or even address whether or not the compound medications prescribed

in this case ***could*** in theory be appropriately applied to a properly evaluated patient because that is not part of the Government's theory. Here, the evidence will show that Dr. Agresti prescribed the medications to Individual-1, and Individual-1 requested the medications, because they were both induced by payments to do so by Mattia and Mattia's co-conspirators. This has nothing to do with the effectiveness of the medications prescribed. Even if these medications have proper applications for certain ailments or illnesses for hypothetical patients, or even if the medications could have hypothetically helped Individual-1 with an ailment or injury does not make it more or less likely that Mattia agreed with others to commit fraud by obtaining prescriptions for these medications based on bribes and then submitting claims to Verizon's health plan based on the implicit lie that a doctor had prescribed these medications to Individual-1 because they were necessary, and not because everyone in the conspiracy was making a profit off of that doctor doing so.

As demonstrated above, these unhelpful and mostly uncontroversial, albeit vague, opinions Dr. Murphy intends to offer will only confuse and mislead the jury away from the ultimate issue of the trial, namely, that Mattia and others fraudulently billed Verizon's health plan for bogus prescriptions signed by Dr. Agresti connected to Individual-1. Moreover, Defendant's expert disclosure makes clear that confusing the jury is exactly what Dr. Murphy intends to do by attempting to insert ambiguity into terms such as "medical necessity" and "physician-patient relationship" by broadly defining them as "elastic" or applying in "various circumstances," without being able to speak to the particular circumstances in this case or causing confusion

by talking about the effectiveness of the medications, which is not at issue. *See Ford*, 481 F.3d at 220 n.6 (explaining how district courts should "pay[] special attention" to the relevance prong of *Daubert* to make sure the expert testimony "will not mislead the jury."). Therefore, Dr. Murphy's testimony should be excluded.

Judge Salas's opinion in *Schessel* is once again instructive. *See* Ex. B. There, the defendant sought to introduce testimony of a "legal expert" who would opine on the "nature of the attorney-client relationship and duties of counsel in the securities context which bear on [defendant's] legitimate expectations as a client and, as such, will assist the jury in evaluating his state of mind." Defendant argued that this would assist the jury evaluate whether defendant had a legally cognizable advice-of-counsel defense based on his reliance on counsel. Judge Salas found that such generalized testimony was inadmissible under Rule 702 because it concerned what defendant's lawyer "should have done or was required to do" and not what the lawyer actually did in the case at issue. Ex. B at 4. Judge Salas concluded that generalized testimony about legal standards untethered to the particular facts of the case was irrelevant to the question of "whether [the lawyer] actually gave advice, after knowing all material information" under the law. *Id.*

The Court should apply Judge Salas's logic and exclude Dr. Murphy's testimony in this case. Like the expert in *Schessel*, Dr. Murphy's purported opinions boil down to generalities and hypotheticals, neither of which will assist the jury evaluate the evidence in this case in any meaningful way. Indeed, there is little substantive difference between the expert's opinions in *Schessel* concerning what a

hypothetical lawyer "should have done" and Mattia's proposed expert's opinion concerning what a hypothetical doctor or insurance company *would have done* in different circumstances. Thus, the Court should follow suit and preclude Dr. Murphy's testimony as irrelevant and inadmissible under Rule 702.

***b. Dr. Murphy's Opinions Are Not Reliable.***

Dr. Murphy also fails to provide any support showing that his opinions are reliable. Under *Daubert*, an expert's testimony has to be reliable in that it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 590). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee notes. Mattia has entirely failed to meet this criteria.

Indeed, Dr. Murphy's disclosure fails to explain how he has familiarized himself with the facts of this case, other than reviewing copies of the three prescriptions for Individual-1, what methods he used to reach his opinions, why his experience as a pain management doctor is sufficient bases for his opinions, or how he applied his experience to the specific facts of this case in reaching his conclusions.

An expert who has not taken these basic steps to explain how their experience leads to the conclusions reached and how their experience has been applied to the case at hand plainly is not reliable. Mattia's notice for Dr. Murphy nowhere explains how he applied his experience as a pain management physician and "his knowledge of this case" to opine that the terms medically necessity and medically unnecessary are "vague" and "elastic" and that the medications prescribed in this case, specifically erectile dysfunction cream, scar cream, and a vitamin pill, could be used to treat unspecified "illnesses or injuries." Ex. A at 1-2. The Court should therefore find Dr. Murphy's opinions unreliable under Rule 702 and *Daubert*. *See United States v. Schneider*, No. CRIM.A. 10-29, 2010 WL 3734055, at *5 (E.D. Pa. Sept. 22, 2010) (excluding proposed expert as unreliable where the expert did not identify specific bases for her opinions and did provide any explanation of how she had applied her clinical experience to the specific facts of the case in reaching her conclusions and therefore her opinions could not "be reasonably assessed for reliability").

### B. The Court Also Should Preclude Evidence and Arguments That the Medications Prescribed to Individual-1 Could Have Been Medically Necessary.

For many of the reasons discussed above, the Government also moves to preclude Defendant from offering evidence, eliciting testimony, or arguing that the prescriptions that Dr. Agresti issued to Individual-1 could have been medically necessary if Dr. Agresti had seen or examined Individual-1 prior to issuing them—which he did not—and did not accept kickbacks in exchange for doing so—which he did. Whether or not the prescriptions could have theoretically been medically

necessary or useful for Individual-1 does not have any tendency to make a fact of consequence in this case "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence cannot be admitted. Fed. R. Evid. 402. Further, even if this argument or evidence had some limited probative value, it would be substantially outweighed by a danger of confusion, misleading the jury, undue delay, and wasting both the Court's and the jury's time. Fed. R. Evid. 403. Any evidence or argument that the medications prescribed in this case could hypothetically have been medically necessary plainly fails the Rule 403[2] balancing test because whatever its limited probative value concerning the central issue in this case—which the Government submits is zero—is sharply outweighed by the real and serious prejudicial effect it will have by confusing the jury and causing needless delay.

The Third Circuit has often excluded evidence when it is at most minimally relevant, but also would require an evidentiary sideshow to explain what the evidence means, thereby causing a delay, confusing the issues, and directing the jury's focus away from the major issues in the case. For example, in *United States v. Greenspan*, 923 F.3d 138, 151-52 (3d Cir. 2019), the defendant in a healthcare kickback and fraud case argued that the district court should have let him introduce at trial expert testimony to show that the blood tests he ordered were medically necessary because

---

[2] Rule 403 states, in pertinent part, that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

such evidence was relevant to disproving his criminal mental state. The Third Circuit upheld the district court's decision to exclude the expert testimony regarding medical necessity of lab tests that was at most "marginally relevant" to the crime charged because the evidence had no bearing on the Government's theory of the case and would have confused and distracted the jury from issues that had to be considered, namely whether the defendant knowingly referred tests, medically necessary or not, to a lab because he was paid illegal bribes to do so. *Id.*; *see also United States v. Fernandez*, 389 F. App'x 194, 200 (3d Cir. 2010) (not precedential) (affirming the district court's exclusion of audiotapes regarding a bribery scheme, which tapes were proffered by a defendant charged with perjury as they were largely irrelevant, did not "tend to negate the Government's theory" of the charged crime, and a potential for obfuscation existed); *United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (district court properly excluded evidence of an unrelated investigation of the bank that was defrauded by defendant because the evidence was of marginal relevance and there was "the risk of delay and confusion created by a mini-trial to explain the evidence").

As discussed, Dr. Murphy's expert disclosure makes clear that Defendant is trying to make this case a battle over medical necessity. But that is not what this case is about. Whether a hypothetical doctor could make a hypothetical determination that Individual-1 could have hypothetically benefitted from some of the medications prescribed is a complete side show that does not meet Rule 403's balancing test as it does not make any fact in this case more or less likely and it would only confuse the jury and waste the Court's time. If Defendant is permitted to shoehorn this irrelevant

evidence into the trial, the Government will be required to engage in a lengthy cross-examination of Defendant's proposed expert or any other defense witness that is permitted to go down this line of irrelevant testimony. The Government likely may have to call additional witnesses to rebut this evidence, including potentially its own expert witness, thereby creating the exact trial within a trial that Rule 403 prohibits as prejudicial, confusing, and a waste of time.

As noted extensively above, the Government's theory is that the prescriptions for Individual-1 fraudulently represented that Dr. Agresti examined Individual-1 and determined that Individual-1 had a medical necessity for the medications and that Mattia conspired with others to lie to Verizon's health plan about the medical necessity of these prescriptions so that they could make money. Mattia can challenge that assertion by proving that Dr. Agresti actually examined Individual-1 and made a medical necessity determination or that Mattia believed such a thing happened. But he cannot rebut that fraudulent representation that an examination happened by theorizing about what ***might*** have occurred if Dr. Agresti or another doctor had actually examined Individual-1 and made determinations that Individual-1 would benefit from the prescriptions, or even more broadly and beside the point, whether the medications prescribed to Individual-1 could help some patients or be medically necessary in a general sense. Such argument or evidence is entirely irrelevant to the central question for the jury to decide in this particular case and should be precluded under Rules 401, 402, and 403 as having limited to no probative value, but ample opportunity for delay, confusion, and misleading the jury.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motions, exclude Defendant Mattia's proposed expert, and preclude Defendant from presenting any argument or evidence that the medications that were illegally prescribed here could hypothetically be prescribed in a medically necessary manner for Individual-1 or some other patient in some other context.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

By: Jake A. Nasar
Kelly M. Lyons
Assistant United States Attorneys

Dated: September 1, 2026

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this day I caused to be served, via the Court's Electronic Filing System ("ECF"), a copy of the Motion of the United States to Exclude Defense Expert.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

By: Jake A. Nasar
Kelly M. Lyons
Assistant United States Attorneys

Dated: September 1, 2026