# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
ESTHER SALAS
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST.
ROOM 5076
NEWARK, NJ 07101
973-297-4887

June 4, 2024

# LETTER ORDER

**Re:** ***United States v. Marc Schessel,***
**Criminal Action No. 22-0374**

Dear counsel,

Before the Court is the Government's motion to exclude the expert testimony of Ernest E. Badway, Esq. (D.E. No. 235). The Court has considered the parties' submissions and decides the motion without oral argument under Local Civil Rule 78.1(b), which is applicable to criminal cases under Local Criminal Rule 1.1. For the forgoing reasons, the Court GRANTS the Government's motion to exclude the expert testimony of Ernest E. Badway, Esq.

## I. BACKGROUND[1]

On April 9, 2024, the Government filed as part of its omnibus motions *in limine* a motion to exclude the testimony of Ernest E. Badway, Esq., a partner at the law firm Fox Rothschild LLP and Defendant's proposed expert on advice-of-counsel issues. (*See* D.E. No. 217 at 1). The Government later filed a second motion to exclude Mr. Badway's testimony on April 22, 2024, after receiving updated expert disclosures from Defendant. (*See* D.E. No. 227). On May 3, 2024, the Court found Defendant's disclosures regarding Mr. Badway deficient under Federal Rule of Criminal Procedure 16 and ordered Defendant to provide the Government more fulsome disclosures. (D.E. No. 232 at 8–9). The Court directed the Government to file any renewed motion to exclude Mr. Badway's testimony after receiving the supplemental disclosures. (*Id.* at 9 n.6). Defendant sent the new disclosures to the Government and the Court via email on May 13, 2024. ("Defendant's May 13, 2024 Disclosures"). On May 14, 2024, the Government filed a third motion to exclude Mr. Badway's testimony. (D.E. No. 235 ("Mov. Br.")). Defendant opposed (D.E. No. 236 ("Opp. Br.")) and the Government filed a Reply (D.E. No. 237 ("Reply")).

According to Defendant's most recent disclosures concerning Mr. Badway, Mr. Badway is expected to testify on several topics, including: (i) "The role of securities counsel [in] advising publicly traded companies"; (ii) that "Mr. Nossiff was obligated to educate himself, or seek

[1] The parties are familiar with the facts and history of this case, so the Court does not recite them here.

subject-matter expertise, related to the regulation of COVID-19 test kits because such regulations constituted a material risk related to the Promedical / Rethink Transaction"; (iii) that "Mr. Nossiff should have included disclaimers in the April 13, 2020, Press Release, the April 15, 2020, Business Update Call, the April 16, 2020 Form 8-K, and the April 17, 2020, Press Release that were substantive and tailored to the specific contingent risks associated with the Promedical / Rethink transaction"; and (iv) that "Mr. Nossiff's compensation in the form of SCWorx stock, as well as the NASDAQ, SEC and Department of Justice's inquiries related to the probity of the Promedical / Rethink transaction and SCWorx's public disclosures, could have created a conflict of interest requiring disclosure to SCWorx." (Defendant's May 13, 2024 Disclosures at 1–7)

## II. LEGAL STANDARD

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). However, this gatekeeping function is a "flexible" one, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993), and "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Kannankeril*, 128 F.3d at 806. "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: [i] qualifications, [ii] reliability, and [iii] fit." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)).

*First*, "[t]he qualification prong of *Daubert* refers to the requirement that the witness possess specialized expertise." *MD Retail Corp. v. Guard Ins. Grp.*, No. 14-6589, 2017 WL 1164499, at *5 (D.N.J. Mar. 28, 2017). The Third Circuit has "interpreted Rule 702's qualification requirement liberally." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (first citing *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) and then citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)). A "broad range of knowledge, skills, and training qualify an expert as such." *Paoli*, 35 F.3d at 741.

*Second*, with respect to "reliability," the Third Circuit has found that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Pineda*, 520 F.3d at 244 (quoting *Paoli*, 35 F.3d at 742). The district court enjoys "considerable discretion" to "determine the criteria for judging reliability under the particular circumstances." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002). Generally, an expert's conclusion must rest upon "the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Daubert*, 509 U.S. at 590).

*Third*, to satisfy the "fit" requirement, Rule 702 requires that an "expert's scientific, technical, or other specialized knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). To be helpful, expert testimony must be "sufficiently tied to the facts of the case [such] that it will aid the jury in resolving a factual dispute." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quotation marks and citation omitted). Conversely, "expert evidence which does not relate to an issue in the case is not

helpful." *United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (quotation marks and citation omitted).

Finally, for all evidence, to be admissible, the evidence must be relevant: it must have a "tendency to make a fact more or less probable than it would be without the evidence," and that fact must be "of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402. Even relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III. DISCUSSION

The Government argues that Mr. Badway's proposed testimony is irrelevant under Rule 402, lacks fit under Rule 702(a), and is excludable under Rule 403. (*See* Mov. Br. at 5–10 & 13–25). The Government asserts that "[w]hile expert testimony about a lawyer's duties and standards of care might be relevant in a legal malpractice case (or even a criminal or civil enforcement action against a lawyer stemming from his or her representation of a client), it is simply not relevant to the instant case. Whether or not Mr. Nossiff committed legal malpractice or fell below the standard of care is irrelevant to the criminal securities fraud with which the Defendant is charged." (*Id.* at 7). The Government adds that "whether Mr. Nossiff's work 'f[e]ll below the standard of care' is also irrelevant to an advice-of-counsel defense because reasonableness or accuracy of the advice rendered is not an element of that defense." (*Id.*). The Government further argues that such testimony would not assist the trier of fact because "consideration of whether the Defendant acted in good faith is within the common knowledge of the jurors." (*Id.* at 8). The Government adds that "the jury needs to determine whether the Defendant made misstatements irrespective of whether his attorney should have taken prophylactic steps to limit the damage flowing from those crimes." (*Id.* at 21). And the Government argues that testimony concerning Mr. Nossiff's potential conflict of interest is also wholly irrelevant to any issue in dispute. (*Id.* at 22). Finally, regarding Rule 403, the Government asserts that "Mr. Badway's testimony concerning the duty and standard of care owed by an attorney will confuse and mislead the jury with respect to the law as it relates to good faith and the advice-of-counsel defenses, particularly since Mr. Badway is a lawyer" and that "opinions regarding the standards and duties owed by Mr. Nossiff to SCWorx are designed to transfer blame for the transaction to Mr. Nossiff." (*Id.* at 13 & 15).

In response, Defendant argues that "Mr. Badway's testimony is directly related to the nature of the attorney-client relationship and duties of counsel in the securities context which bear on Mr. Schessel's legitimate expectations as a client and, as such, will assist the jury in evaluating his state of mind." (Opp. Br. at 6). Defendant adds that "in this case, Mr. Nossiff has testified on multiple occasions . . . that Mr. Schessel (1) did not seek his advice (2) for the purpose of securing advice on his possible future conduct," and thus Mr. Badway's testimony is relevant to the question of whether Defendant sought legal advice from Mr. Nossiff, an element of the advice-of-counsel defense. (*Id.* at 7–8). Defendant argues that he "does not seek to introduce expert testimony to disregard anything, but rather to explain that a securities attorney is not, as Mr. Nossiff would have it, a potted plant lacking agency simply transposing information from one

document to another." (*Id.* at 11). Regarding the proposed testimony concerning Mr. Nossiff's potential bias/conflict of interest, Defendant argues that "Mr. Badway's testimony on this point will assist the jury in understanding the nature of the attorney-client relationship and the duties of counsel." (*Id.* at 12).

The Court agrees with the Government: the proposed opinions are irrelevant, will not assist the trier of fact, and present a substantial risk of confusing the jury/unfair bias. All of Defendant's arguments as to the relevance of Mr. Badway's testimony relate to the advice-of-counsel defense. Pursuant to the advice-of-counsel defense, "if a defendant gives a 'full and honest disclosure of the material facts surrounding a possible course of action, [and] seek[s] and obtain[s] the advice of counsel on the potential legality of [his] actions,' then, in relying on counsel's advice, he 'lack[s] the requisite intent to violate the law.'" *United States v. Haisten*, 790 F. App'x 374, 377–78 (3d Cir. 2019) (quoting *United States v. Traitz*, 871 F.2d 368, 382 (3d Cir. 1989)) (alterations in original). It is "a species of good-faith defense," and is not an affirmative defense. *United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019). According to the proposed jury instructions submitted by the parties, the defense has four elements: (i) "Before taking action, [the Defendant] in good faith sought the advice of an attorney whom he considered competent to advise him on the matter"; (ii) "He consulted this attorney for the purpose of securing advice on the lawfulness of his possible future conduct"; (iii) "He made a full and accurate report to his attorney of all material facts that he knew"; and (iv) "He then acted strictly in accordance with the advice of this attorney." (Parties' Proposed Jury Instructions).

Here, almost all of the proposed testimony of Mr. Badway—and Defendant's arguments in opposition to the Government's motion—speaks to what Defendant's counsel, Mr. Nossiff, should have done or was required to do during the events at the center of this case. (*See, e.g.*, Defendant's May 13, 2024 Disclosures at 5 ("Mr. Badway will testify that in his opinion that when Mr. Schessel provided information to Mr. Nossiff, Mr. Nossiff should have interpreted that as a request for legal advice under Mr. Nossiff's engagement to represent SCWorx in corporate and securities matters. Mr. Badway will testify that Mr. Nossiff had a duty to investigate the factual and legal issues related to that information. Mr. Badway will testify that Mr. Nossiff was not entitled to merely rely on the representations of SCWorx when providing legal advice related thereto and that counsel is not simply a 'scrivener' for the client. Mr. Badway will testify that Mr. Nossiff had a duty to investigate the representations being made to him by SCWorx.")). However, as the Government argues (Mov. Br. at 7), those opinions are completely irrelevant in this case. The advice-of-counsel defense is only concerned with whether advice was actually given, with full knowledge of all material facts, and whether the defendant relied on that advice in good faith. It is simply irrelevant whether Mr. Nossiff should have given more or better advice—the question is whether he actually gave advice, after knowing all material information. And regarding the opinions about Mr. Nossiff's potential bias and their possible use as impeachment of Nossiff (*see, e.g.*, Defendant's May 13, 2024 Disclosures at 7), impeaching the credibility of witnesses is not an appropriate use of expert testimony, and the jury is perfectly able to make evaluations on conflict of interest without expert testimony. *See, e.g.*, *Nimely v. City of New York*, 414 F.3d 381, 397–98 (2d Cir. 2005) ("[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702.").

The evidence is thus excludable under Rule 402 for lack of relevance, and Rule 702(a) for lack of fit. *See United States v. West*, 22 F.3d 586, 599 (5th Cir. 1994) ("Because the typical juror is qualified to determine intelligently and to the best degree possible both the reasonableness of a client relying upon the advice of an attorney and accountant retained to render such advice and whether the client did so in good faith after making full disclosure, expert testimony as to the legal basis underlying the advice . . . would not have assisted the jury."); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 403 (S.D.N.Y. 1998) ("[W]hile a client . . . asserting a reasonable reliance defense[] may testify as to the disclosures it made to advisers, the advice it received and its reliance upon it, and the advisers may describe the advice they gave, questions of whether the client made full disclosure, and acted throughout in good faith or with malice, are for the jury to decide; and the jury is not assisted by expert opinion testimony about the reasonableness of the advice or the client's reaction to it."). And even if such opinions were minimally relevant in, perhaps, giving context to the jury about Defendant's expectations and the relationship between him and Mr. Nossiff, they would clearly merit exclusion under Rule 403. Such opinions pose a great danger of (i) confusing the jury about the applicable advice-of-counsel standard; and (ii) prejudicing the jury by leading the jury to "blame" Mr. Nossiff for Defendant's actions due to implications of malpractice, even if the advice-of-counsel defense has not been sufficiently proved and even though malpractice is not an element of the defense.

The Court therefore excludes the bulk of Mr. Badway's proposed testimony due to sheer irrelevance and lack of fit under Rule 402 and Rule 702(a), as well as the danger of unfair prejudice substantially outweighing any potential probative value under Rule 403. This ruling extends to (i) all proposed opinions speaking to what Mr. Nossiff was expected to have done or what Mr. Nossiff should have done, including any testimony as to the standard of care Mr. Nossiff owed Defendant and any applicable ethical or professional standards or duties Mr. Nossiff was obliged to follow or perform; (ii) any testimony about the role Mr. Nossiff was "meant" to play as securities counsel; and (iii) the proposed opinions that "Mr. Nossiff was obligated to educate himself, or seek subject-matter expertise, related to the regulation of COVID-19 test kits because such regulations constituted a material risk related to the Promedical / Rethink Transaction"; "Mr. Nossiff should have included disclaimers in the April 13, 2020, Press Release, the April 15, 2020, Business Update Call, the April 16, 2020 Form 8-K, and the April 17, 2020, Press Release that were substantive and tailored to the specific contingent risks associated with the Promedical / Rethink transaction"; and "Mr. Nossiff's compensation in the form of SCWorx stock, as well as the NASDAQ, SEC and Department of Justice's inquiries related to the probity of the Promedical / Rethink transaction and SCWorx's public disclosures, could have created a conflict of interest requiring disclosure to SCWorx." (Defendant's May 13, 2024 Disclosures at 1–7).

The only proposed opinions within the May 13, 2024 Disclosures which bear some connection to the elements of the advice-of-counsel defense are (i) that "Mr. Nossiff should have interpreted [Defendant providing information to Mr. Nossiff] as a request for legal advice under Mr. Nossiff's engagement to represent SCWorx in corporate and securities matters"); and (ii) that "Mr. Nossiff's provision of various comments or communications with SCWorx related to the Promedical/Rethink transaction constituted legal advice." (*Id.* at 5). The first opinion speaks—albeit obliquely—to the question of whether Defendant in fact sought legal advice from Mr. Nossiff, which is an element of the defense. However, the probative value of this opinion is minimal. Whether Mr. Nossiff *should* have viewed the sharing of information as a request for

legal advice is a different question from whether he *did* view Defendant as requesting legal advice—and consequently provided said advice; and it is a different question from whether Defendant himself intended to ask for legal advice. The information is thus only minimally relevant. And, as with the rest of Mr. Badway's proposed testimony, the testimony presents a substantial danger of confusing the jury about the advice-of-counsel standard and leading to a decision on an improper basis (a perception of Mr. Nossiff as a "bad" attorney). The Court therefore excludes the opinion under Rule 403, as the probative value is substantially outweighed by the danger of confusing and unfairly prejudicing the jury. Regarding the second opinion—that Mr. Nossiff provided legal advice—"legal advice" in the advice-of-counsel context does not appear to be a term-of-art; all that is required is that the advice relates to "the potential legality" of Defendant's actions. *Haisten*, 790 F. App'x at 377–78. The jury is perfectly capable of ascertaining for itself, without expert testimony, whether any particular piece of advice relates to the potential legality of Defendant's actions. *Cf. West*, 22 F.3d at 599; *Kidder*, 14 F. Supp. 2d at 403. This opinion therefore will not assist the trier of fact and is thus excluded under Rule 702(a).[2]

## IV. CONCLUSION

Therefore, for the reasons set forth above,

**IT IS** on this 4 day of June, 2024,

**ORDERED** that the Government's motion to exclude the testimony of Ernest E. Badway (D.E. No. 235) is **GRANTED**.

**SO ORDERED.**

/s/Esther Salas
**Esther Salas, U.S.D.J.**

[2] Because the Court excludes Mr. Badway's proposed testimony for irrelevance and lack of fit, the Court declines to address the Government's additional arguments in favor of exclusion.