**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CARMINE MATTIA, JR.,<br><br>Defendant. | Case No. 2:21-cr-00576 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two motions: (1) the United States of America's ("Government") motion to exclude Defendant Carmine Mattia's ("Defendant") proposed expert testimony and to preclude Defendant's introduction of evidence and argument on the medical necessity of medications prescribed to Individual-1 (ECF No. 97), which Defendant opposed (ECF No. 99); and (2) Defendant's motion to exclude a proposed Government witness's testimony and to strike language from the Superseding Indictment as surplusage (ECF No. 100), which the Government opposed (ECF No. 102). Having reviewed and considered the parties' submissions filed in connection with the motions and having declined to hold oral argument, for the reasons set forth below and for good cause having been shown, the Government's motion is **GRANTED** and Defendant's motion is **DENIED**.

## I. BACKGROUND

The Court incorporates by reference the underlying facts set forth in the Court's June 3, 2024 Opinion. (ECF No. 60.) On July 23, 2021, a grand jury returned an Indictment against Defendant, charging him with three counts of health care fraud and one count of conspiracy to

commit health care fraud. (ECF No. 1.) Subsequently, on April 8, 2022, a grand jury returned a Superseding Indictment against Defendant, charging him with six counts: one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1); three counts of health care fraud in violation of 18 U.S.C. § 1347 and § 2 (Counts 2 through 4); one count of witness tampering in violation of 18 U.S.C. § 1512(b)(3) (Count 5); and one count of obstruction of health care investigation in violation of 18 U.S.C. § 1518 (Count 6). (ECF No. 15.)[1]

On August 11, 2026, the Government provided Defendant with a summary of the background and anticipated testimony of its witness, a senior benefits manager named Black Stockwell ("Stockwell") who is employed at the company responsible for adjudicating and paying pharmacies for the claims for reimbursement involved in this case (the "Company"). (ECF No. 100-1 at 1, 2.) The Government's summary explained it expected Stockwell to testify as a fact witness but provided the summary in the event that this Court found Stockwell's testimony qualified as expert testimony. (*Id.* at 1.) The Government disclosed five topics about which it anticipated Stockwell would testify: (1) general information about the Company, (2) rules and regulations regarding coverage of claims, (3) the enrollment and claims submission process, (4) general information about compounded medications, and (5) relevant billing data. (*Id.* at 2–4.) For each topic, the Government provided the specific details Stockwell's testimony would include.

---

[1] On June 3, 2024, the Court granted Defendant's motion to dismiss Counts 1 through 4 of the Superseding Indictment. (ECF Nos. 60, 61.) The Court found the Superseding Indictment neither sufficiently alleged health care fraud nor a conspiracy to commit health care fraud because it did not identify any false or fraudulent statement, misrepresentation or omission by Defendant and failed to sufficiently allege a scheme to defraud. (ECF No. 60.) The Court denied the Government's motion for reconsideration of that decision. (ECF Nos. 65, 66.) The Government then appealed the Court's dismissal. (ECF No. 67.) In October 2025, The Third Circuit reversed this Court's Order dismissing Counts 1 through 4 of the Superseding Indictment. (ECF No. 75, 77.) In July 2026, Defendant filed a renewed motion to dismiss those counts. (ECF No. 87.) The Court denied Defendant's renewed motion. (ECF Nos. 95, 96.)

(*Id.*) The disclosure also included Stockwell's qualifications and an explanation of the basis for his proposed testimony. (*Id.* at 2, 4–5.)

On August 20, 2026, Defendant provided the Government with a summary of its expert's background and anticipated testimony. (*See* ECF No. 97-1.) Specifically, Defendant notified the Government its expert, Dr. Murphy ("Murphy"), would testify regarding: (1) who uses the terms "medically unnecessary," "medical necessity," and "medically necessary" and their uncertain meanings, (2) the medications in the prescriptions he has reviewed, and (3) how a physician-patient relationship commences and in what contexts. (ECF No. 97-1 at 2–3.) Defendant's notice to the Government also included a description of Murphy's qualifications, detailing his career and asserting the basis of his opinions. (*Id.* at 3–5.)

On September 1, 2026, the Government brought a motion to exclude Murphy's testimony and preclude evidence and argument regarding the potential medical necessity of the medications prescribed to Individual-1. (ECF No. 97.) On September 13, 2026, Defendant responded by opposing the Government's motion (ECF No. 99) and filing its own motion to exclude Stockwell's testimony and to strike paragraph 4(d) as well as other references to the term "medically unnecessary" in the Superseding Indictment (ECF No. 100). On September 14, 2026, the Government filed an opposition. (ECF No. 102.)

## II. LEGAL STANDARD

District courts have "wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). The

Federal Rules of Evidence embody a "strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997). "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Supernus Pharms., Inc. v. Ajanta Pharma Ltd.*, Civ. A. Nos. 21-06964, 21-14268, 2023 WL 4866348, at *1 (D.N.J. July 31, 2023) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)).

A district court's ruling on a motion *in limine* is "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41–42 (1984). "A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *Supernus Pharms.*, 2023 WL 4866348, at *2 (quoting *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017)).

## III. DECISION

The Court addresses the Government's and Defendant's motions in turn.

### A. The Government's Motion

The Government asks the Court to exclude Murphy's testimony under either Federal Rule of Criminal Procedure 16 ("Rule 16") or Federal Rule of Evidence 702 ("Rule 702") and to preclude evidence and argument on whether the medications prescribed to Individual-1 could have been medically necessary under Federal Rule of Evidence 402 ("Rule 402") or 403 ("Rule 403").

#### 1. Admissibility of Murphy's Testimony

The Government argues the Court should exclude Murphy's proposed testimony for two reasons. First, it contends Defendant's expert disclosures are insufficient to satisfy Rule 16's requirements because they neither specify the opinions he will provide at trial nor iterate the bases and reasons for them. (ECF No. 97 at 9–10.) Second, it contends Murphy's proposed testimony does not meet Rule 702's requirements because it is neither helpful to the jury nor reliable. (*Id.* at 10–18.)

Defendant disputes both the Government's arguments. Regarding its disclosures, Defendant argues they satisfy Rule 16 because the depth of the Government's motion indicates it received the necessary information to understand the substance and limits of Murphy's proposed testimony. (ECF No. 99 at 9.) Regarding Murphy's testimony, Defendant argues it will help the jury by providing a framework for the jury to evaluate the evidence presented. (*Id.* at 6–8.) Defendant also argues Murphy's qualifications and experience demonstrate his testimony's reliability because his work encompasses the information he will testify about. (*Id.* at 8–9.)

The Court first addresses the Government's argument that Murphy's testimony does not satisfy Rule 702. While the Government contends the insufficiency of Defendant's Rule 16 disclosure permits exclusion, under Rule 16 the decision to exclude testimony for noncompliance is discretionary. *See* Fed. R. Crim. P. 16(d)(2) (empowering a court to enter any just order when a proponent fails to comply with its requirements, including precluding evidence). However, if expert testimony does not comply with Rule 702, then it cannot be admitted.

Rule 702 governs the admissibility of expert witness testimony. A witness is an expert if they are qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert can testify if the party offering the expert can demonstrate the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue,"

the testimony is "based on sufficient facts or data" and "is the product of reliable principles and methods," and the expert's opinion "reflects a reliable application of the principles and methods to the facts of the case." *Id.* The Third Circuit has held "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)).

Here, the Government challenges the fit and reliability of Murphy's testimony.

The fit requirement refers to Rule 702's mandate that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be helpful, expert testimony must be "sufficiently tied to the facts of the case [such] that it will aid the [factfinder] in resolving a factual dispute." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quotation marks and citation omitted). The Third Circuit has noted the standard for analyzing the fit of an expert's analysis is "not that high," but "higher than bare relevance." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

Defendant's disclosure of Murphy's anticipated testimony indicates he will opine on the meaning and use of the term "medical necessity," what the three prescriptions he has reviewed can be used for, and how and in what context a physician-patient relationship is created. (ECF No. 97-1 at 2–3.) The Government contends none of this testimony will be helpful to the jury and it will only confuse and mislead them. (ECF No. 97 at 15.) Defendant counters that this testimony is relevant to the issues the Government has placed in dispute. (ECF No. 99 at 6.) According to Defendant, Murphy's explanation that "medical necessity" has an indefinite and changing definition, paired with Murphy's opinion on the prescriptions' legitimate uses, will weaken the Government's ability to convey the prescriptions are obviously false. (*Id.* at 7.) Additionally,

Defendant argues Murphy's testimony regarding how physician-patient relationships can be created will assist the jury in evaluating the Government's argument that a physician-patient relationship did not exist between Individual-1 and Dr. Agresti. (*Id.* at 8.)

Murphy's proposed testimony does not help the jury resolve factual disputes. "[E]xpert evidence which does not relate to an issue in the case is not helpful." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). First, Murphy's testimony on the variability of the definition of medical necessity in the insurance industry does not provide the jury with context for why the prescriptions would or would not be approved by this insurer. Second, Murphy's opinion that some medications prescribed have legitimate uses does not help the jury decide whether Dr. Agresti determined there was a legitimate use for the medications he prescribed. Finally, Murphy's testimony on when and how physician-patient relationships form does not relate to the allegation that there was neither an evaluation nor encounter between Dr. Agresti and Individual-1 because he opines the relationship arises when "a physician begins to serve a patient's medical needs." (ECF No. 97-1 at 3.)

Accordingly, Murphy's testimony does not satisfy the fit requirement for expert testimony to be admissible and must be excluded.

Even if Murphy's testimony satisfied the fit requirement, it fails Rule 702's reliability requirement. "[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). Along with "any other [factors] that are relevant[,]" courts consider the following factors in determining the reliability of a proposed expert's testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the

> method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli*, 35 F.3d at 742 n.8 (citing *Daubert*, 509 U.S. at 591; *United States v. Downing*, 753 F.2d 1224, 1239 (3d Cir. 1985)); *Schneider ex rel Est. of Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003); *McGarrigle v. Mercury Marine*, 838 F. Supp. 2d 282, 290 (D.N.J. 2011).

The Government contends Murphy's proposed testimony is not reliable because there is neither an explanation of how Murphy's experience leads to his conclusions nor an application of the conclusions to the facts of the case. (ECF No. 97 at 18.) Defendant argues Murphy's opinions are reliable because he has "treat[ed] patients, prescrib[ed] medications, submit[ed] claims to multiple plans" and "has practiced medicine for decades, [] prescribed controlled substances and compounded agents, [] served as an independent physician reviewer determining medical necessity, and has taught prescribing principles[.]" (ECF No. 99 at 8–9.)

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendment. Murphy's proposed testimony meets none of these requirements: the proposed testimony states Murphy's experience and his testimony, but lacks any explanation of the bridge between the two or why the experience is sufficient. (*See* ECF No. 97-1 at 2–3.) For example, Murphy's experience includes determining "medical necessity of . . . prescriptions" as an independent patient reviewer and instructing students and physicians on the medical necessity of pain cure treatments, but he testifies there is not a coherent definition of

medical necessity. (*Id.* at 2, 5.) It is unclear how his experiences evaluating and teaching medical necessity would lead him to reason the definition of the term is uncertain.

Therefore, Murphy's testimony does not meet Rule 702's fit or reliability requirement and must be excluded. Because Rule 702 mandates exclusion, the Court need not decide whether to exercise its discretion to exclude Murphy's testimony under Rule 16.[2]

**2. Admissibility of Evidence and Argument on the Medical Necessity of Individual-1's Medications**

The Government argues the Court should preclude Defendant from introducing evidence or argument on whether the prescriptions to Individual-1 *could* have been medically necessary because it is not relevant and, even if the court finds it is relevant, its probative value is substantially outweighed by the dangers of prejudicial effects. (ECF No. 97 at 18–19.) The Government contends such evidence and argument is not relevant because potential reasons for medical necessity do not make it more or less probable that determinations of medical necessity were made. (*Id.* at 21.) If the Court finds otherwise, then, in the Government's view, the trial will become "a battle over medical necessity" and create a danger of confusing the jury and leading to a trial within a trial. (*Id.* at 20–21.)

Defendant argues the evidence and argument the Government seeks to preclude is necessary to rebut the Government's allegation that he caused Individual-1 to receive medically

[2] Even if the Court were to reach Rule 16, a Rule 16 analysis would mirror the Court's Rule 702 reliability analysis. Rule 16 imposes disclosure requirements on the Government and criminal defendants with respect to expert witnesses. Rule 16(b)(1)(C) requires a defendant to disclose in writing "a complete statement of all opinions that the defendant will elicit from the witness . . . ; the bases and reasons for them; the witness's qualifications . . . ; and a list of all other cases, during the previous 4 years, the witness has testified as an expert at trial or by deposition" at a time "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C). As the Court has explained with respect to its Rule 702 reliability analysis, Defendant's disclosure entirely omits the reasoning that led to Murphy's opinions.

unnecessary medications. (ECF No. 99 at 11.) Specifically, Defendant contends evidence and argument on the actual medical necessity of the medications prescribed to Individual-1 could be a defense to Defendant's alleged knowledge of lack of medical necessity. (*Id.* at 11–12.) Defendant also argues the Government's motion is overbroad and premature. (*Id.* at 11.) Defendant contends precluding evidence and argument on this issue would: (1) grant the Government "a pretrial determination that the prescriptions were 'illegally prescribed,' 'bogus,' or 'per se medically unnecessary,'" (2) assumes the Government has proven the medical necessity of the medications is irrelevant, and (3) prevents Defendant from responding to potential arguments the Government or its witnesses may make. (*Id.* at 12.)

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence and argument on whether the medications prescribed to Individual-1 could have been medically necessary is not irrelevant. Defendant correctly contends such testimony could make it more probable that Defendant himself believed the medications were medically necessary.

However, courts can exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the danger of confusing the issues and misleading the jury substantially outweighs the potential probative value to Defendant.

At trial, the Government intends to prove "Dr. Agresti signed [] prescriptions because he was bribed to do so and not on the basis of any medical evaluation of Individual-1 or consideration" of medical necessity. (ECF No. 97 at 12.) As this Court previously held, "[t]he jury [here] is not

being asked to determine whether they would have prescribed the same compound medications to Individual-1 if they were doctors." *United States v. Mattia*, No. 2:21-CR-00576, 2026 WL 2566437, at *6 (D.N.J. Aug. 31, 2026). Introducing and arguing hypothetical reasons why the medications could be seen as medically necessary would invite the jury to justify the alleged scheme here as an improper means to a proper end. *See United States v. Greenspan,* 923 F.3d 138, 151 (3d Cir. 2019) (determining a doctor's proposed medical necessity testimony's failed Rule 403 because it "would have been calculated to invite the jury to acquit [him] because he performed good works and somehow deserved a break") (internal quotation marks omitted). It would also distract the jury by preoccupying it with whether a determination of medical necessity could have been properly made, rather than the issue before it of whether Dr. Agresti failed to make such a determination because he received a bribe.

Accordingly, the Court finds evidence on whether the medications could have been medically necessary should be excluded. The Court has the discretion to alter this ruling if the Government "opens the door" to this testimony at trial. *See Luce*, 469 U.S. at 41–42.

### B. Defendant's Motion

Defendant asks the Court to exclude Stockwell's testimony under either Rule 702 or 403 and to strike alleged surplusage in the Superseding Indictment under Federal Rule of Criminal Procedure 7(d) ("Rule 7(d)").

#### 1. Admissibility of Stockwell's Testimony

Defendant presents several arguments for excluding Stockwell's proposed testimony. The Defendants' arguments are, (1) Stockwell's proposed testimony is expert testimony that is neither

relevant, reliable, nor properly disclosed, and (2) the probative value of the testimony is substantially outweighed by the danger of unfair prejudice.[3]

The Government disputes each of Defendant's arguments.

**a. Whether Stockwell's Testimony is Expert Testimony**

Defendant argues Stockwell's proposed testimony amounts to an expert opinion because the opinions he will offer require specialized knowledge. Specifically, Defendant contests Stockwell's opinions on whether the prescriptions at issue are medically necessary, whether the Company would have paid for the prescriptions, and whether a submitted pharmacy claim implicitly communicates a representation. (ECF No. 100 at 8–9.)

The Government argues Defendant misconstrues Stockwell's proposed testimony and the proposed testimony is not expert testimony. The Government contends Stockwell will not testify to the topics Defendant contends he will: namely, the facts concerning the prescriptions in this case and their corresponding reimbursements from the Company. (ECF No. 102 at 4.) Instead, the Government argues, Stockwell will testify generally about prescriptions and reimbursements, and the rules and policies he will testify to are within his personal knowledge from his work at the Company employing those rules and policies. (*Id.* at 7–8.)

The Court agrees Defendant misconstrues the substance of Stockwell's proposed testimony. The Government's disclosure of topics Stockwell will testify to does not include the

[3] The Court reserves its judgment on Defendant's argument that Stockwell's proposed testimony will usurp the jury's role by instructing it on both the meaning of the law and its application (ECF No. 100 at 13) because the testimony about which Defendant raises this concern is not testimony the Government proposed Stockwell will offer (*see* ECF No. 102-1 at 3–5). If the Government does offer testimony through Stockwell, or another witness, that amounts to legal conclusions such as stating the insurance claims are "false, fraudulent, illegal, material, kickback tainted, or legally nonpayable" or the Defendant "caused false claims, intended to defraud the plan, or violated [the relevant statutes]" as Defendant fears, the Court will make a ruling then. (ECF No. 100 at 13, 19.)

opinions Defendant argues require specialized knowledge. Instead, Stockwell's proposed testimony includes general information about the Company, rules and regulations for pharmacy claim submissions and the Company's claim payments, how the Company reviews and adjudicates claims from pharmacies, what a compound medication is and how that relates to reimbursements, and an authentication and summary of billing data. (ECF No. 100-1 at 2–4.) Therefore, the Court will analyze the opinions disclosed by the Government to determine whether Stockwell's testimony should be excluded. The Court reserves a decision on those opinions Defendant thinks the Government will offer or mistakenly believes the Government has said it will offer until when and if the Government offers them at trial.[4]

Under Federal Rule of Evidence 602, "a witness may testify to a matter only if . . . the witness has personal knowledge of the matter." If a witness is not testifying as an expert, Federal Rule of Evidence 701 governs their ability to provide opinion testimony. Non-expert witnesses can provide testimony in the form of an opinion if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. If a witness is testifying as an expert, they must be qualified "by knowledge, skill, experience, training, or education," Fed. R. Evid. 702, and their testimony must meet Rule 702's requirements of qualifications, reliability, and fit. The Government must also

---

[4] This reservation includes Defendant's argument that Stockwell's proposed testimony amounts to improper hypothetical testimony on what the Company would have done under circumstances that did not occur. (ECF No. 100 at 10–11.) The Government purports Stockwell will neither opine on the facts of the case nor how the Company would have behaved in particular circumstances, but rather will present a description of the Company's rules guiding its decisions. (ECF No. 102 at 9.) Therefore, the jury will be left to apply the rules to the facts presented. (*Id.*) Defendant can renew its argument with the Court if the witness does in fact offer this testimony.

make a disclosure to Defendant under Rule 16 if it plans to offer expert testimony. *See* Fed. R. Crim. P. 16(a)(1)(G).

Stockwell's proposed testimony is based on his personal knowledge rather than specialized knowledge within the scope of Rule 702. In his thirteen-year tenure at the Company, Stockwell has remained employed in the Company's fraud and investigations division. (ECF No. 102-1 at 3.) Stockwell's work in the fraud and investigations division has included investigating and auditing pharmacies for fraud and reviewing claims the Company receives for compliance with governing laws, rules, and regulations. (*Id.*) The Court is assured these experiences provide Stockwell with personal knowledge about the Company generally, the rules and regulations for claim coverage at pharmacies and the Company, how the Company determines whether to pay for a claim for a prescription, and how claims are submitted to the Company. As for Stockwell's testimony on what compound medications are and how pharmacies are reimbursed for those medications, the Court views the above experience combined with Stockwell's ten-year tenure as a pharmacy technician to be sufficient to provide him with the personal knowledge to speak to these issues. (*Id.*)

Accordingly, the Court finds Stockwell's proposed testimony is not expert testimony and therefore not subject to Rule 702's requirements. As a result of this finding, the Court need not address Defendant's claims that the testimony fails to meet Rule 702's requirements of fit and reliability or that the Government's gratuitous notice of the proposed testimony does not comply with Rule 16.

**b. Whether Stockwell's Testimony is Admissible**

Defendant argues the probative value of Stockwell's testimony—that "we would not have paid"—is substantially outweighed by the danger of creating a collateral trial and misleading the

jury into believing the Government established the claims were fraudulent and Defendant had an intent to defraud. (ECF No. 100 at 13–14.)

The Government argues Defendant's alleged dangers are unfounded and, nevertheless, the probative value of Stockwell's testimony is not substantially outweighed by the danger of any unfair prejudice. The Government contends the proposed testimony does not risk a collateral trial or misleading the jury because Stockwell will not testify about whether the claims were fraudulent, whether Defendant intended to defraud the plan, or the issues Defendant alleges would be the subject of a collateral trial. (ECF No. 102 at 13.) As for the probative value of Stockwell's testimony on what types of claims the Company would pay, the Government argues information about the Company's claims approval rules is necessary to provide for the jury to determine whether the misrepresentations the Government alleges led to the Company's decision to pay for the claims. (*Id.* at 10–11.) The Government contends it must provide this information because the Company's rules tend to make it more or less likely that the alleged misrepresentations were material, which the Government is required to establish. (*Id.*)

First, it appears Defendant's argument for exclusion is based in part on his misunderstanding of Stockwell's proposed testimony. The disclosure notice does not propose Stockwell will testify that the Company now disapproves of the claims it previously approved, or that Stockwell will opine the Company "would not have paid" for those claims here. (ECF No. 100 at 13.) Instead, the disclosure provides Stockwell will testify to types of claims, in his experience, the Company generally will not pay. (ECF No. 102-1 at 4.)

Second, the probative value of Stockwell's proposed testimony on the kind of information that causes the Company to deny a claim is not substantially outweighed by the danger of unfair prejudice. This information, as the Government alleges, makes it more or less likely that the alleged

misrepresentations were material to the Company in adjudicating the claim. The danger of this testimony improperly misleading the jury to believe the Government has proven the claims were fraudulent and Defendant had an intent to defraud is minimal. Stockwell will only testify about the information that would defeat a claim generally, rather than opining on the alleged facts (ECF No. 102-1 at 4); the jury will have to apply the information Stockwell provides to the facts of the case themselves.

Accordingly, Rule 403 does not require exclusion of Stockwell's testimony.

**2. Relevance of "Medically Unnecessary" Language in the Superseding Indictment**

Defendant argues paragraph 4d of the Superseding Indictment[5] and the term "medically unnecessary" in paragraphs 4(g)[6] and 4(i)[7] of the Superseding Indictment should be stricken because the language is both irrelevant and prejudicial. (ECF No. 100 at 14–15.) Defendant contends the Government conceded the irrelevance of the language because in its motion to exclude Defendant's expert it claimed the trial is not about medical necessity and argued evidence

---

[5] Paragraph 4(d) of the Superseding Indictment reads as follows: "In order to increase his profits as a sales representative for the Mattia Compounding Entities, defendant Carmine A. Mattia, Jr. caused Individual-1 to receive medically unnecessary compounded medications. The Company's health care plan was then billed for Individual-1's medically unnecessary compounded medications, and defendant Carmine A. Mattia, Jr. received a percentage of the amount that the Company's health care plan paid for the medically unnecessary medications."

[6] Paragraph 4(g) of the Superseding Indictment reads as follows: "Defendant CARMINE A. MATTIA, JR., while in New Jersey, gave Individual-l cash and check payments to induce Individual-1 to obtain medically unnecessary compounded medications that were filled by the Mattia Compounding Pharmacies, including, but not limited to, prescriptions that were filled on or about April 4, 2016, April 29, 2016, June 28, 2016 and July 25, 2016."

[7] Paragraph 4(i) of the Superseding Indictment reads as follows: "As a result of defendant CARMINE A. MATTIA, JR.'s participation in the scheme to bill the Company's health care plan for medically unnecessary compounded medications for Individual-1, defendant CARMINE A. MATTIA, JR. caused a loss to the Company's health care plan of at least approximately $100,000.00."

showing the medications could have helped Individual-1 is irrelevant. (*Id.* at 12–19.) Defendant argues the language is also prejudicial because it instructs the jury that the prescriptions lacked medical value which invites the jury to infer fraudulent intent. (*Id.* at 17.)

The Government disputes both of Defendant's arguments. The Government contends the "medically unnecessary" language is relevant to the crimes charged because the Government has alleged the prescriptions procured could not have been medically necessary given an improper process was used to procure them. (ECF No. 102 at 16.) It refutes Defendant's arguments of concession as a mischaracterization, explaining the Government has repeatedly contended arguments on whether the medications could have been medically necessary if a different process were used to prescribe them are irrelevant to the case, but not that medical necessity is irrelevant to guilt. (*Id.* at 16–17.) Therefore, according to the Government, the prejudice Defendant purports is associated with the language does not substantially outweigh its relevance to the Government's case. (*Id.* at 17.)

Rule 7(d) permits a court to strike surplusage from an indictment upon a defendant's motion. "[M]otions to strike surplusage are rarely granted." *United States v. Depiro*, Crim. A. No. 10-851, 2013 WL 663303, at *14 (D.N.J. Feb. 20, 2013) (citing *United States v. Alsugair*, 256 F. Supp. 2d 306, 317 (D.N.J. 2003)). To prevail on such a motion, "the defendant must show that the challenged language is both irrelevant (or immaterial) to the charged offenses and prejudicial." *United States v. Taylor*, Crim. A. No. 23-477, 2025 WL 2017122, at *16 (D.N.J. July 18, 2025) (citing *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006)). The standard for striking surplusage is an "exacting" one. *Taylor*, 2025 WL 2017122, at *16 (quoting *Alsugair*, 256 F. Supp. 2d at 317).

Here, Defendant is unable to meet the rigorous standard to prevail on his motion. Defendant's argument for the irrelevance of "medically unnecessary" rests only on a mischaracterization of the Government's previous arguments and is therefore unavailing. The Government's repeated contention is that evidence, testimony, and arguments that the medications could have been determined medically necessary for Individual-1 are irrelevant, not that medical necessity is altogether irrelevant. The Government has never argued the actual medical necessity of the medications under the circumstances that took place in this case "has no bearing on guilt" (ECF No. 100 at 15); it has only argued that theories concerning the potential medical necessity of those medications divorced from those circumstances are irrelevant (*Id.* at 14).

"[I]nformation that is prejudicial, yet relevant to the [Superseding] [I]ndictment, must be included for any future conviction to stand[.]" *Hedgepeth*, 434 F.3d at 612. Because Defendant cannot show the language is irrelevant, the Court declines to rule on whether the "medically unnecessary" language is prejudicial.

## IV. CONCLUSION

For the reasons set forth above, the Government's motion is **GRANTED** and Defendant's motion is **DENIED**. An appropriate order follows.

**Date: September 22, 2026**

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**